**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

PHILIP GOLDSON,
Plaintiff,

v.

JPMORGAN CHASE BANK, N.A.,
Defendant.

**Case No. 2:24-cv-10869-SDW-JRA**

# PLAINTIFF'S MOTION FOR LEAVE TO FILE MOTION FOR SANCTIONS BASED ON PERJURY, FALSE DECLARATION, DISCOVERY GAMESMANSHIP, AND CORPORATE RATIFICATION OF LITIGATION MISCONDUCT

## INTRODUCTION

Plaintiff Philip Goldson respectfully requests leave to file a Motion for Sanctions against Defendant JPMorgan Chase Bank, N.A. ("Chase"), its outside counsel Christopher Turcotte, Esq., and its corporate representative Robert J. Wilkins.

On December 11, 2025, Plaintiff deposed Mr. Wilkins in his capacity as Chase's Rule 30(b)(6) corporate representative. The deposition revealed a **pattern of coordinated misconduct** involving perjury, false declarations, document withholding, and discovery gamesmanship orchestrated by defense counsel.

During that deposition:

1. **Mr. Wilkins committed perjury** by testifying falsely under oath at least ten times that "Chase does not report charge-off dates to credit bureaus," then reversing his testimony when confronted with documentary proof;
2. **Mr. Wilkins admitted that defense counsel Christopher Turcotte drafted his October 17, 2025 declaration**, which Mr. Wilkins signed under penalty of perjury claiming "personal knowledge" he did not possess;

3. **Mr. Wilkins admitted that documents Plaintiff requested were in Chase's possession for 107 days** while Chase claimed they could not be located, despite normal document retrieval at Chase taking only 48 hours;
4. **Defense counsel Mr. Turcotte endorsed the false testimony on the record**, stating "He answered that 10 times already," and made false statements himself when confronted with documentary proof;
5. **Chase's Assistant General Counsel attended the deposition via Zoom and personally witnessed all of this misconduct**, yet took no action to stop or correct the false testimony; and
6. **The day after the deposition, Chase filed a discovery dispute letter attacking Plaintiff's discovery compliance** rather than addressing its own misconduct—a transparent attempt to deflect from the deposition disaster.

Plaintiff filed an initial Motion for Sanctions on December 13, 2025, based on events witnessed during the deposition. Plaintiff now has the **certified deposition transcript**, which confirms every allegation and reveals the full scope of Mr. Turcotte's discovery gamesmanship throughout this litigation.

The transcript evidence is devastating. It proves a coordinated effort to obstruct discovery, present false testimony, and mislead the Court. Good cause exists to grant leave. The misconduct is serious, ongoing, and directly relevant to the merits of Plaintiff's FCRA claims.

## STATEMENT OF FACTS

### A. Background

Plaintiff filed this action alleging that Chase violated the Fair Credit Reporting Act ("FCRA") by reporting inaccurate credit information and failing to properly investigate Plaintiff's disputes.

Specifically, Chase's own August 9, 2024 letter confirmed that Plaintiff's account "was charged off on March 31, 2022." Yet Chase continued reporting April 2022 as the charge-off date to credit bureaus for over 15 months after confirming the correct date.

Chase received at least five disputes regarding this inaccuracy and made no corrections. Chase has admitted in its Responses to Requests for Admission that its November 3, 2024 letter to Plaintiff **"mistakenly states"** false information.

**B. The December 11, 2025 Deposition**

On December 11, 2025, Plaintiff deposed Robert J. Wilkins, Chase's Vice President and Business Analysis Manager, in his individual capacity and as Chase's Rule 30(b)(6) corporate representative.

Chase's Assistant General Counsel attended the first approximately 45 minutes of the deposition via Zoom, personally witnessing the events described herein.

The following is based on the certified deposition transcript, attached as Exhibit A.

## EVIDENCE OF MISCONDUCT

### I. MR. TURCOTTE'S PATTERN OF DISCOVERY GAMESMANSHIP

The December 11, 2025 deposition was not an isolated incident. It was the culmination of a **pattern of discovery gamesmanship** orchestrated by defense counsel throughout this litigation. The transcript and case record reveal:

***A. Drafting a False Declaration***

On October 17, 2025—exactly on this Court's deadline after threatening sanctions—Chase produced documents accompanied by a declaration from Mr. Wilkins stating: "I, Robert J. Wilkins, declare under penalty of perjury... **I make this Declaration based upon my personal knowledge**."

At the deposition, Mr. Wilkins admitted the truth:

> **Q:** "Did you personally draft this declaration?"
> **A: "I did not."**
> **Q:** "Who drafted it?"
> **A: "Chase's legal drafted it along with counsel."**
> *(Wilkins Dep. 12:18-24)*

Mr. Turcotte drafted a declaration for his witness to sign under penalty of perjury claiming "personal knowledge" when Mr. Wilkins:

- Did not draft the declaration;

- Did not personally conduct any document searches;
- Does not know who conducted searches;
- Does not know when searches were conducted; and
- Cannot say whether anyone checked the secondary repository before October.

**This is subornation of perjury.** Under 18 U.S.C. § 1622, whoever procures another to commit perjury is guilty of subornation of perjury.

### *B. Orchestrating 107-Day Document Withholding*

The timeline of document production reveals deliberate obstruction:

- **June 30, 2025:** Plaintiff served discovery requests
- **June - September 2025:** Chase claimed documents could not be located
- **October 8, 2025:** This Court ordered production by October 17, 2025 or face sanctions
- **October 17, 2025:** Documents suddenly "found" and produced—exactly on the deadline

That is **107 days** from request to production.

Mr. Wilkins testified about Chase's normal document retrieval time:

> **A: "We typically respond to legal requests within 24 to 48 hours."**
>
> *(Wilkins Dep. 85:25-86:1)*

107 days is **55 times longer** than the 48-hour norm. Mr. Wilkins admitted the documents existed in Chase's repository the entire time:

> **Q:** "Did the secondary repository exist on June 30th, 2025, when documents were first requested?"
>
> **A: "It did."**
>
> **Q:** "So Mr. Wilkins, these documents were in Chase's possession on June 30th, 2025, correct?"
>
> **A: "Yes."**
>
> *(Wilkins Dep. 19:13-20:3)*

The only explanation is **intentional withholding** orchestrated by Mr. Turcotte until this Court threatened sanctions.

### *C. Endorsing and Facilitating Perjury*

During the deposition, Mr. Turcotte actively endorsed Mr. Wilkins's false testimony. After Mr. Wilkins testified falsely approximately ten times that Chase does not report charge-off dates, Mr. Turcotte stated on the record:

> **MR. TURCOTTE: "He answered that 10 times already."**
> *(Wilkins Dep. 91:7)*

By confirming that Mr. Wilkins had given this testimony "10 times already," Mr. Turcotte:

- Locked in the false testimony;
- Prevented any later claim that it was a one-time misstatement;
- Signaled to the witness to maintain the false position; and
- Created a record that proves the testimony was deliberate, not inadvertent.

### *D. Making False Statements on the Record*

When Plaintiff showed documentary proof that Chase does report charge-off information to credit bureaus, Mr. Turcotte made false statements on the record:

> **MR. TURCOTTE: "It absolutely did not."**
> *(Wilkins Dep. 93:13-14)*

The TransUnion document plainly showed "CO" (charge-off) entries with dates furnished by Chase. Mr. Wilkins himself admitted the legend confirmed "CO" means "charge-off" and that Chase furnished those dates. Mr. Turcotte's statement was demonstrably false.

### *E. Coaching the Witness Through Speaking Objections*

Throughout the deposition, Mr. Turcotte made improper speaking objections that coached the witness:

> **MR. TURCOTTE:** "Objection. Misstates his testimony. He said they don't report charge-off dates."
> *(Wilkins Dep. 50:8-10)*

This was not a proper objection—it was coaching, reminding the witness what position to maintain.

### *F. Filing Retaliatory Discovery Complaint*

On **December 12, 2025**—the very next day after the deposition disaster—Chase filed a discovery dispute letter at ECF No. 36 complaining about *Plaintiff's* discovery compliance.

This was not coincidence. The timing reveals it for what it is: **retaliation and deflection**. Rather than address the perjury, false declaration, and discovery misconduct exposed on December 11, Mr. Turcotte filed a complaint attacking Plaintiff.

The hypocrisy is extraordinary:

- Chase withheld documents for 107 days, then complains Plaintiff hasn't produced enough;
- Mr. Turcotte drafted a false declaration, then demands Plaintiff sign a sworn statement;
- Chase's witness committed perjury, then Chase attacks Plaintiff's credibility;
- The complaint was filed the day after the misconduct was exposed—transparent retaliation.

### *G. Summary: A Pattern of Bad Faith*

Mr. Turcotte's conduct throughout this litigation demonstrates a pattern of discovery abuse and litigation misconduct:

1. Drafted a false declaration claiming "personal knowledge" the witness did not possess;
2. Orchestrated or permitted 107-day document withholding;
3. Produced documents only when Court threatened sanctions;
4. Endorsed perjury on the record ("He answered that 10 times already");
5. Made false statements himself ("It absolutely did not");
6. Coached the witness through speaking objections;
7. Filed retaliatory discovery complaint the day after misconduct was exposed.

**This is not zealous advocacy. This is obstruction of justice.**

## II. PERJURY BY CHASE'S CORPORATE REPRESENTATIVE

### *A. The False Testimony*

Throughout the deposition, Mr. Wilkins repeatedly and emphatically testified that Chase does not report charge-off dates to credit bureaus. When asked to estimate how many times he made this claim, Mr. Wilkins himself acknowledged approximately ten times:

> **Q:** "Prior to the break, I guess do you -- maybe you don't recall the exact, but maybe you can estimate the amount of times that you said to me that Chase does not report charge-offs to credit bureaus, what would you estimate?"
>
> **A: "I probably told you ten times that the credit reporting or that the charge-off date is not a credit reporting field."**
>
> *(Wilkins Dep. 48:1-8)*

Examples of this false testimony include:

> **A:** "Again, we did not report a charge-off date. We report an account status at the time that we report."
>
> *(Wilkins Dep. 38:1-3)*
>
> **A:** "We could not have reported an incorrect date because the charge-off date field is not a Metro 2-furnishable field."
>
> *(Wilkins Dep. 40:14-16)*
>
> **A:** "We do not report CO. It's not a valid field or a valid -- a valid thing that we can put in that field. It's not a valid value."
>
> *(Wilkins Dep. 51:6-9)*

***B. The Documentary Proof***

After a break, Plaintiff showed Mr. Wilkins a TransUnion credit report displaying Plaintiff's Chase account with "Charged Off" status and dates furnished by Chase. Mr. Wilkins was forced to admit:

> **Q:** "Can you tell me what it says underneath 'CO'?"
>
> **A: "It says 'charge-off.'"**
>
> *(Wilkins Dep. 52:12-14)*
>
> **Q:** "And these dates that are here, listed here by TransUnion are dates furnished and information furnished by J.P. Morgan Chase Bank, correct?"
>
> **A: "I mean, TransUnion would take the data that we reported and display it here, so those dates that have a CO would have been dates that we would have furnished."**
>
> *(Wilkins Dep. 49:13-23)*

***C. This Was Knowing Perjury***

This was not a misunderstanding. Mr. Wilkins is a Vice President at Chase, the Business Analysis Manager overseeing credit bureau disputes, responsible for approximately 75 employees, in credit bureau operations for 19 of his 20 years at Chase, annually trained on the Fair Credit Reporting Act, and Chase's designated Rule 30(b)(6) corporate representative on credit reporting topics.

A Vice President with 19 years in credit bureau operations knows what Chase reports to credit bureaus. **His false testimony was deliberate perjury designed to conceal Chase's FCRA violations.**

## III. INADEQUATE RULE 30(b)(6) WITNESS

Beyond perjury, Mr. Wilkins was wholly inadequate as Chase's Rule 30(b)(6) corporate representative. Under Rule 30(b)(6), Chase had a duty to prepare a witness who could testify knowledgeably on the noticed topics. Chase failed.

Mr. Wilkins repeatedly testified that he lacked knowledge:

- "I don't know the exact date" (multiple times)
- "I would have to go back and look"
- "I don't know for certain how long it took"
- "I did not perform the search"
- "I can't say that for certain"
- "Not to my knowledge"

A corporate representative who testifies falsely on core topics and lacks knowledge on others is inadequate. Plaintiff is entitled to a properly prepared witness.

## IV. CORPORATE RATIFICATION: ASSISTANT GENERAL COUNSEL WITNESSED MISCONDUCT

Chase's Assistant General Counsel attended the December 11, 2025 deposition via Zoom for approximately 45 minutes. The deposition transcript reflects that "Matt Reedy" was listed as "Also Present." (Wilkins Dep. 2:9-10).

Chase's Assistant General Counsel personally witnessed:

- Mr. Wilkins testify falsely at least ten times;
- Mr. Turcotte endorse the false testimony on the record;
- Documentary evidence proving the testimony false;
- Mr. Wilkins reverse his testimony when confronted;
- Mr. Wilkins admit that Mr. Turcotte drafted the false declaration; and
- Mr. Wilkins admit the 107-day document delay when normal is 48 hours.

Despite witnessing this misconduct, Chase's Assistant General Counsel took no corrective action. By having in-house counsel monitor the deposition and taking no action, **Chase ratified the misconduct at the highest legal level**.

Mr. Reedy is a critical fact witness. He can testify to what he personally observed, what actions Chase took (or failed to take), and why Chase filed a discovery complaint the next day rather than addressing its own misconduct. Plaintiff requests leave to depose Mr. Reedy regarding facts he personally witnessed.

## LEGAL STANDARD

Federal Rule of Civil Procedure 37(b)(2)(A) authorizes sanctions for discovery violations, including directing that designated facts be taken as established, prohibiting the disobedient party from supporting or opposing designated claims, striking pleadings, dismissing the action or rendering default judgment, and treating the failure as contempt of court.

Courts have inherent authority to sanction parties and attorneys for litigation misconduct. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991). "[A] court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 45-46.

When a Rule 30(b)(6) witness is inadequate or unprepared, courts routinely order a second deposition with a properly prepared witness. *See Black Horse Lane Assoc., L.P. v. Dow Chemical Corp.*, 228 F.3d 275 (3d Cir. 2000).

## ARGUMENT

### I. GOOD CAUSE EXISTS FOR LEAVE TO FILE

The transcript evidence proves:

- **Perjury** — Mr. Wilkins testified falsely at least ten times;
- **Subornation of Perjury** — Mr. Turcotte drafted a false declaration;
- **Discovery Gamesmanship** — 107-day withholding, retaliatory complaint, coaching;
- **Corporate Ratification** — AGC witnessed misconduct and took no action; and
- **Inadequate 30(b)(6) Witness** — False testimony and lack of knowledge.

### II. THE MISCONDUCT PROVES WILLFUL FCRA VIOLATIONS

The pattern of misconduct proves Chase acted willfully. Chase confirmed the correct charge-off date (March 31, 2022) but continued reporting April 2022. Chase received five disputes and made no corrections. Chase's VP committed perjury to cover up these violations. Defense counsel drafted a false declaration. Chase's AGC witnessed it all and did nothing.

Under 15 U.S.C. § 1681n, willful violations entitle Plaintiff to statutory damages, punitive damages, and attorney's fees. **The cover-up proves consciousness of guilt and willfulness.**

### III. A NEW RULE 30(b)(6) WITNESS IS REQUIRED

Mr. Wilkins was inadequate as Chase's corporate representative. He testified falsely on core topics and lacked knowledge on others. Plaintiff is entitled to a properly prepared witness under Rule 30(b)(6).

Chase cannot rely on a witness whose credibility is destroyed. A new witness must be designated who can testify truthfully and knowledgeably about Chase's credit reporting practices, investigation procedures, and document retention.

**IV. MR. REEDY SHOULD BE DEPOSED AS A FACT WITNESS**

Chase's Assistant General Counsel Matt Reedy is a fact witness to misconduct. He personally witnessed:

- Perjury by Chase's corporate representative;
- Mr. Turcotte endorsing false testimony;
- Admission that Mr. Turcotte drafted the false declaration; and
- Admission of 107-day document withholding.

Mr. Reedy can testify to what he personally witnessed, what actions Chase took (or failed to take) in response, and why Chase filed a discovery complaint the day after the deposition rather than addressing its own misconduct.

This is not privileged attorney-client communication. Plaintiff seeks testimony about facts Mr. Reedy personally observed. The crime-fraud exception further applies because the communications relate to perjury and subornation of perjury.

**RELIEF REQUESTED**

Plaintiff respectfully requests that the Court:

1. **Grant leave** to file the attached Motion for Sanctions;
2. **Find** that Mr. Wilkins committed perjury by testifying falsely at least ten times;
3. **Find** that Mr. Turcotte drafted a false declaration, suborned perjury, endorsed false testimony, made false statements, and engaged in a pattern of discovery gamesmanship;
4. **Find** that Chase intentionally withheld documents for 107 days;
5. **Find** that Chase ratified the misconduct through its Assistant General Counsel's presence and inaction;

6. **Enter an adverse inference instruction** that Chase's credit reporting was inaccurate and willfully violated FCRA;
7. **Preclude** Chase from using the October 17, 2025 declaration as evidence;
8. **Order** Chase to designate a different, properly prepared Rule 30(b)(6) witness for a second deposition;
9. **Grant leave** to depose Chase's Assistant General Counsel Matt Reedy regarding facts he personally witnessed;
10. **Award** Plaintiff reasonable costs incurred in connection with Defendant's discovery misconduct;
11. **Refer** Mr. Turcotte's conduct to the New Jersey Office of Attorney Ethics; and
12. **Grant** such other relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Philip Goldson*
**PHILIP GOLDSON**
140 State Street, Apt. 1A
Hackensack, NJ 07601
Pro Se Plaintiff
Dated: December 29, 2025

**CERTIFICATE OF SERVICE**

I hereby certify that on December 29, 2025, I served a copy of this Motion on Defendant's counsel via ECF:

Christopher B. Turcotte, Esq.
Turcotte Law, P.C.
641 Lexington Avenue, 15th Floor
New York, New York 10022

*/s/ Philip Goldson*
**PHILIP GOLDSON**