**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW JERSEY**

PHILIP GOLDSON,
Plaintiff,

v.

JPMORGAN CHASE BANK, N.A.,
Defendant.

Case No.: 2:24-cv-10869-SDW-JRA

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT WITH INCORPORATED MEMORANDUM OF LAW

## PRELIMINARY STATEMENT

This case presents a straightforward question: Can a furnisher of credit information verify disputed information as "accurate" when its own internal records, its own letters to the consumer, and its own sworn pleadings all confirm that the disputed information is false? The answer, as a matter of law, is no.

Defendant JPMorgan Chase Bank, N.A. ("Chase") reported to consumer reporting agencies that Plaintiff Philip Goldson's account began reporting as a charge-off in April 2022. But Chase's own records tell a different story. Chase's internal C3 database reflects a charge-off date of March 31, 2022. Chase's letter to Plaintiff dated August 9, 2024 confirmed: "Your account was charged off on March 31, 2022." Chase's Amended Answer and Counterclaim admits: "The 2315 Account charged off on March 31, 2022." [Dkt. 8 at 17.]

Yet when Plaintiff disputed this inaccuracy — not once, not twice, but ***five separate times*** — Chase verified the information as "accurate" each time. Chase has now admitted under oath that "the March 31, 2022 charge-off date for Plaintiff's account was available to, accessed, and reviewed in connection with each investigation." (Interrogatory Response No. 3.) Chase knew the truth. Chase reviewed the truth. Chase ignored the truth.

Perhaps most remarkably, Chase has admitted that ***not a single one*** of Plaintiff's five disputes "was flagged for audit." (Interrogatory Response No. 5(f).) Five

disputes. Zero audits. Zero corrections. This is not a reasonable investigation — it is willful blindness.

Plaintiff respectfully moves this Court for summary judgment pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1 on his claims under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. The undisputed material facts — established primarily through Chase's own admissions — demonstrate that Chase willfully violated the FCRA as a matter of law.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Local Civil Rule 56.1, Plaintiff submits a separate Statement of Undisputed Material Facts filed concurrently herewith. The following is a summary of the key undisputed facts:

### *A. The Account and the True Charge-Off Date*

Plaintiff had a credit card account with Chase ending in 2315. The account charged off on March 31, 2022 — a fact Chase has admitted in no fewer than four separate ways:

1. Chase's Amended Answer and Counterclaim: "The 2315 Account charged off on March 31, 2022." [Dkt. 8 at 17.]

2. Chase's August 9, 2024 Letter to Plaintiff: "Your account was charged off on March 31, 2022." [Ex. A.]

3. Chase's November 2024 Letter to Plaintiff: Confirming March 31, 2022 charge-off date. [Ex. B.]

4. Chase's Internal C3 Database: Reflects charge-off date of March 31, 2022. [Interrogatory Response No. 2(d), citing CHASE-000137.]

### *B. Chase's Inaccurate Furnishing*

Despite knowing the true charge-off date was March 31, 2022, Chase furnished information to consumer reporting agencies indicating the account began reporting as a charge-off in April 2022. [Ex. C, TransUnion Credit Report.] This one-month discrepancy is material because it affects the seven-year reporting period under FCRA and negatively impacts Plaintiff's credit profile.

### *C. Plaintiff's Five Disputes — All Ignored*

Plaintiff disputed this inaccuracy through consumer reporting agencies on at least five separate occasions. [CHASE-000142 through CHASE-000173.] Each time, the consumer reporting agency transmitted an Automated Consumer Dispute

Verification ("ACDV") to Chase, triggering Chase's statutory duty to conduct a reasonable investigation under 15 U.S.C. § 1681s-2(b).

Each time, Chase verified the disputed information as "accurate" — despite its own records showing otherwise. [Interrogatory Response Nos. 3 and 6.]

### *D. Chase's Sham "Investigation" Process*

Discovery has revealed that Chase's ACDV verification process is designed for speed, not accuracy:

- Outsourced overseas: Chase's ACDV processors work for JPMorgan Services India Private Limited, a subsidiary located in India. [Dkt. 58 at 2.]
- No discretion: Chase has admitted these processors "do not have any power to exercise judgment and discretion" and "exercise very little independent discretion." [Dkt. 58 at 3-4.]
- Speed over accuracy: Processors are evaluated based on "productivity (i.e., the number of ACDV responses processed per hour)." [Interrogatory Response No. 5(e).]
- No time tracking: Chase "does not maintain records as to how long the investigation took to complete." [Interrogatory Response No. 1(d).]
- Zero audits: "None of the ACDVs relating to Plaintiff's account were flagged for audit." [Interrogatory Response No. 5(f).]

### *E. Chase Knew the Truth and Ignored It*

The most damning admission came in Chase's interrogatory responses. When asked whether the August 9, 2024 letter confirming the March 31, 2022 charge-off date was reviewed during any investigation, Chase responded:

> *"[T]he March 31, 2022 charge-off date for Plaintiff's account was available to, accessed, and reviewed in connection with each investigation of Plaintiff's account."*

[Interrogatory Response No. 3 (emphasis added).] Chase cannot claim ignorance. Chase reviewed the correct date. Chase knew the reported date was wrong. Chase verified it as "accurate" anyway.

### *F. The Wilkins Deposition: Inconsistent Testimony*

Chase designated Robert J. Wilkins, Business Analysis Manager and Vice President of Credit Bureau Operations, as its Rule 30(b)(6) witness. Mr. Wilkins has worked at Chase for 19 years and manages approximately 75 ACDV processors. [Wilkins Tr. at 12:4-15.]

During his deposition, Mr. Wilkins was asked whether Chase reports charge-off dates to consumer reporting agencies. He testified "no" — at least ten separate times. Defense counsel endorsed this testimony, stating: "He answered that 10 times already." [Wilkins Tr.]

Then Plaintiff confronted Mr. Wilkins with Chase's own documents — including the August 9, 2024 letter stating the charge-off date. Mr. Wilkins reversed his testimony. This reversal demonstrates either (1) Chase's corporate witness was uninformed about basic company practices, or (2) Mr. Wilkins provided false testimony under oath until confronted with documentary evidence.

### *G. Chase's Pattern of Discovery Abuse*

Chase's conduct throughout this litigation reflects a pattern of obstruction:

- 107-day delay: Chase withheld responsive documents for 107 days, only producing them after Plaintiff filed a motion to compel. [Dkt. 30.]
- False declaration: Chase's counsel submitted a declaration claiming documents were produced based on "personal knowledge" — later revealed to be false.
- Settlement rejection: Plaintiff offered to settle early for waiver of the debt and deletion of the tradeline — essentially $0 from Chase. Chase rejected this offer and instead filed a $38,000 counterclaim. [Dkt. 8.]

### *H. Plaintiff's Damages*

As a direct and proximate result of Chase's inaccurate reporting, Plaintiff was denied a $35,000 loan from Liberty Savings Federal Credit Union. [Ex. D, Denial Letter.] Plaintiff has also suffered substantial emotional distress, anxiety, and frustration from Chase's refusal to correct information that Chase's own records confirm is inaccurate.

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Where, as here, the moving party relies on the opposing party's own admissions and documents to establish the absence of genuine dispute, the burden shifts to the non-moving party to identify specific facts showing a genuine issue for trial. Id. at

324. Summary judgment is particularly appropriate where "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Id. at 323.

## ARGUMENT

## I. CHASE VIOLATED 15 U.S.C. § 1681s-2(b) AS A MATTER OF LAW

### *A. The FCRA's Reasonable Investigation Requirement*

Under 15 U.S.C. § 1681s-2(b)(1), when a furnisher receives notice of a consumer dispute from a consumer reporting agency, it must: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency; (C) report the results of the investigation to the consumer reporting agency; (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all consumer reporting agencies to which it furnished the information; and (E) if the disputed information is found to be inaccurate or incomplete, modify, delete, or permanently block the reporting of that information.

The Third Circuit has made clear that the investigation required by § 1681s-2(b) must be "reasonable." "[A] reasonable procedure is one that a reasonably prudent person would undertake under the circumstances." Seamans v. Temple Univ., 744 F.3d 853, 864 (3d Cir. 2014). A furnisher cannot simply "rubber-stamp" the disputed information as verified without actually investigating. See Johnson v. MBNA Am. Bank, NA, 357 F.3d 426, 431 (4th Cir. 2004) (investigation must be more than "superficial, unreasonably cursory").

### *B. Chase's "Investigation" Was Unreasonable as a Matter of Law*

Chase's own admissions establish that its investigation was unreasonable as a matter of law. No reasonable jury could find otherwise.

#### 1. Chase Reviewed the Correct Date and Ignored It

Chase has irrefutably admitted under oath that "the March 31, 2022 charge-off date for Plaintiff's account was available to, accessed, and reviewed in connection with each investigation of Plaintiff's account." (Interrogatory Response No. 3.) This admission is devastating and dispositive. Chase cannot claim its investigation was reasonable when Chase admits it reviewed the correct information and still verified the inaccurate information as "accurate."

A "reasonable investigation" that reviews information showing the disputed data is inaccurate, and then verifies the inaccurate data anyway, is no investigation at all. It is willful blindness.

### 2. Five Disputes, Zero Audits

Chase has admitted that "[n]one of the ACDVs relating to Plaintiff's account were flagged for audit." (Interrogatory Response No. 5(f).) Plaintiff disputed the same inaccuracy five separate times. A reasonable quality control system would have flagged repeated disputes about the same information for heightened review. Chase's system did not. This is precisely the type of systemic failure that the FCRA was designed to prevent.

### 3. Speed Over Accuracy

Chase has admitted that its ACDV processors are evaluated based on "productivity (i.e., the number of ACDV responses processed per hour)." (Interrogatory Response No. 5(e).) When a company incentivizes speed over accuracy, the predictable result is that investigations will be rushed and errors will go uncorrected. That is exactly what happened here.

The Third Circuit has warned that policies "only allotting analysts '5 to 10 minutes' to complete investigations" can result in willful FCRA violations. Seamans, 744 F.3d at 868. Chase does not even track how long investigations take — suggesting they are completed so quickly that time tracking would reveal their cursory nature. (Interrogatory Response No. 1(d).)

### 4. Processors With "No Power to Exercise Judgment"

Chase has admitted that its ACDV processors "do not have any power to exercise judgment and discretion" and "exercise very little independent discretion." (Dkt. 58 at 3-4.) A process that permits no exercise of judgment cannot constitute a "reasonable investigation" as contemplated by the FCRA. The statute requires actual investigation — not mechanical button-clicking by workers who are prohibited from exercising discretion.

## II. CHASE'S VIOLATION WAS WILLFUL, ENTITLING PLAINTIFF TO PUNITIVE DAMAGES

Under 15 U.S.C. § 1681n(a), a person who "willfully fails to comply" with the FCRA is liable for: (1) actual damages or statutory damages of $100 to $1,000; (2) punitive damages as the court may allow; and (3) reasonable attorney's fees. The Supreme Court has held that "willfully" includes acting in "reckless disregard" of FCRA requirements. Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 57 (2007).

Reckless disregard means "action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68 (2007).

Chase's conduct here was not merely careless — it was reckless. Chase had actual knowledge that the correct charge-off date was March 31, 2022. Chase's own letters confirmed it. Chase's own pleadings admitted it. Chase's own database reflected it. Chase's investigators reviewed it. Yet Chase continued to verify the inaccurate information as "accurate" — five times.

The Third Circuit has held that "blanket policies" limiting employees to "performing a cursory confirmation" before reporting back to a CRA can support punitive damages. Seamans, 744 F.3d at 868. The court specifically noted that punitive damages may be imposed where a furnisher "maintains a policy never to flag accounts as disputed because these policies would appear to be in outright conflict with a furnisher's duties under FCRA." Id.

Here, Chase's conduct is even more egregious: Chase flagged zero of Plaintiff's five disputes for audit, despite Chase's own records showing the disputed information was inaccurate. This is not a case where the accuracy of the information was unclear. This is a case where Chase knew the truth and ignored it.

## III. CHASE'S "METRO 2" DEFENSE FAILS AS A MATTER OF LAW

Chase asserts that it "does not furnish a 'charge-off date' to the credit bureaus because it is not a recognized Metro 2 field." (Interrogatory Response No. 6.) This defense fails for multiple independent reasons.

### A. Chase Is the Furnisher — The Buck Stops With Chase

Chase is a "furnisher" of consumer credit information under the FCRA. As the furnisher, Chase is the source of the information that appears on Plaintiff's credit report. If the credit report shows a charge-off timing of April 2022, that information originated from Chase. Chase cannot escape liability by blaming the format in which data is transmitted. Whatever the "Metro 2" protocol requires, Chase was obligated to furnish accurate information — and April 2022 is not accurate.

### B. The Metro 2 Defense Does Not Explain Why Chase Verified "Accurate"

Even accepting Chase's Metro 2 argument at face value, it does not explain why Chase verified the disputed information as "accurate" when Chase's own records

showed it was inaccurate. The ACDV process exists precisely to allow furnishers to correct inaccurate information. When Chase received Plaintiff's disputes, Chase was required to investigate and, if the information was inaccurate, correct it. Chase admits it reviewed the correct date. Chase chose not to correct the error.

### C. Chase's Own Letters Specify a Charge-Off Date

Chase claims it "does not report charge-off dates." Yet Chase's own letters to Plaintiff state: "Your account was charged off on March 31, 2022." If Chase does not report charge-off dates, why did Chase's letters specify a charge-off date? Chase cannot have it both ways.

### D. The Metro 2 Defense Is a Post-Hoc Rationalization

Chase's Rule 30(b)(6) witness, Robert Wilkins, did not raise the Metro 2 defense during his deposition. Instead, Mr. Wilkins testified — at least ten times — that Chase does not report charge-off dates at all. He reversed his testimony only after being confronted with Chase's own documents. The Metro 2 defense was raised for the first time in litigation correspondence after Mr. Wilkins's testimony proved false. This post-hoc rationalization cannot excuse Chase's conduct or create a genuine dispute of material fact.

## IV. PLAINTIFF IS ENTITLED TO DAMAGES

For willful FCRA violations, Plaintiff is entitled to: (1) actual damages or statutory damages of $100 to $1,000 per violation; (2) punitive damages; and (3) reasonable costs and attorney's fees. 15 U.S.C. § 1681n(a).

Plaintiff has documented actual damages including denial of a $35,000 loan from Liberty Savings Federal Credit Union [Ex. D] and resulting emotional distress. Given Chase's knowing and reckless disregard for Plaintiff's rights — continuing to verify information as "accurate" despite reviewing its own records showing the information was false, and failing to flag even a single one of Plaintiff's five disputes for audit — punitive damages are necessary to punish Chase and deter similar conduct.

## CONCLUSION

The undisputed material facts — established primarily through Chase's own admissions — demonstrate that Chase violated 15 U.S.C. § 1681s-2(b) as a matter of law. Chase's own records confirm the charge-off date was March 31, 2022. Chase's own letters confirm it. Chase's own pleadings admit it. Chase's own investigators reviewed it. Yet Chase verified the inaccurate information as "accurate" five separate times, with zero quality control audits.

This is not a close case. This is not a case where reasonable minds could differ. This is a case where a major financial institution knew the truth and chose to ignore it — repeatedly. The FCRA exists precisely to prevent this type of conduct.

For the foregoing reasons, Plaintiff respectfully requests that this Court:

1. Grant summary judgment in Plaintiff's favor on the issue of liability under 15 U.S.C. § 1681s-2(b);
2. Find that Chase's violation was willful under 15 U.S.C. § 1681n(a);
3. Schedule a hearing or trial on the issue of damages, including actual damages, statutory damages, and punitive damages; and
4. Award Plaintiff such other and further relief as the Court deems just and proper.

Dated: February 10, 2026

Respectfully submitted,

Philip Goldson

**CERTIFICATE OF SERVICE**

I hereby certify that on February 10, 2026, I served a copy of the foregoing Motion for Summary Judgment and all accompanying documents on counsel for Defendant via the Court's CM/ECF system:

Christopher B. Turcotte, Esq.
Turcotte Law, P.C.
641 Lexington Avenue, 15th Floor
New York, New York 10022
cturcotte@cbtlaw.com

Philip Goldson

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW JERSEY**

PHILIP GOLDSON,
Plaintiff,

v.

JPMORGAN CHASE BANK, N.A.,
Defendant.

Case No.: 2:24-cv-10869-SDW-JRA

**PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS PURSUANT TO LOCAL CIVIL RULE 56.1**

Pursuant to Local Civil Rule 56.1, Plaintiff Philip Goldson submits the following Statement of Undisputed Material Facts in support of his Motion for Summary Judgment:

**A. THE PARTIES**

1. Plaintiff Philip Goldson is a natural person and resident of Hackensack, New Jersey. (Complaint [Dkt. 1] at 1.)

2. Defendant JPMorgan Chase Bank, N.A. ("Chase") is a national banking association and "furnisher" of consumer credit information as defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681a(f). (Amended Answer and Counterclaim [Dkt. 8] at 2; Defendant's Interrogatory Responses at Response No. 3.)

**B. THE ACCOUNT AND THE TRUE CHARGE-OFF DATE**

3. Plaintiff had a credit card account with Chase ending in account number 2315 (the "Account"). (Amended Answer and Counterclaim [Dkt. 8] at 17.)

4. The Account charged off on March 31, 2022. (Amended Answer and Counterclaim [Dkt. 8] at 17: "The 2315 Account charged off on March 31, 2022.")

5. Chase sent Plaintiff a letter dated August 9, 2024 confirming: "Your account was charged off on March 31, 2022." (Ex. A, Chase August 9, 2024 Letter.)

6. Chase sent Plaintiff another letter in November 2024 again confirming the March 31, 2022 charge-off date. (Ex. B, Chase November 2024 Letter.)

7. Chase's internal C3 database reflects a charge-off date of March 31, 2022. (Defendant's Interrogatory Responses at Response No. 2(d), citing CHASE-000137.)

### C. CHASE'S INACCURATE CREDIT REPORTING

8. Despite the true charge-off date of March 31, 2022, Chase furnished information to consumer reporting agencies indicating the Account began reporting as a charge-off in April 2022. (Ex. C, TransUnion Credit Report.)

9. The charge-off timing reported by Chase (April 2022) is inconsistent with the actual charge-off date (March 31, 2022) as confirmed by Chase's own records, letters, and pleadings. (Compare Ex. C with Ex. A, Ex. B, and Dkt. 8 at 17.)

### D. PLAINTIFF'S DISPUTES

10. Plaintiff disputed the inaccurate charge-off date information with consumer reporting agencies on at least five (5) separate occasions. (Complaint [Dkt. 1] at 12; CHASE-000142 through CHASE-000173.)

11. Consumer reporting agencies transmitted Automated Consumer Dispute Verification ("ACDV") forms to Chase for each of Plaintiff's disputes, notifying Chase of Plaintiff's disputes and triggering Chase's duty to investigate under 15 U.S.C. § 1681s-2(b). (CHASE-000142 through CHASE-000173.)

12. In response to each ACDV, Chase verified the disputed information as "accurate" without correcting the charge-off date discrepancy. (Defendant's Interrogatory Responses at Response No. 6.)

### E. CHASE'S "INVESTIGATION" PROCESS

13. Chase's ACDV verification process is conducted by employees of JPMorgan Services India Private Limited, a subsidiary located in India. (Defendant's Letter to Court dated January 26, 2026 [Dkt. 58] at 2.)

14. Chase has admitted that its ACDV processors "do not have any power to exercise judgment and discretion" and are "required to strictly follow Chase's policies and procedures." (Defendant's Letter to Court dated January 26, 2026 [Dkt. 58] at 3.)

15. Chase has admitted that its ACDV processors "exercise very little independent discretion when carrying out his/her responsibilities." (Defendant's Letter to Court dated January 26, 2026 [Dkt. 58] at 4.)

16. Chase "does not maintain records as to 'how long the investigation took to complete.'" (Defendant's Interrogatory Responses at Response No. 1(d).)

17. Chase's ACDV processors are evaluated based on three metrics, including "productivity (i.e., the number of ACDV responses processed per hour)." (Defendant's Interrogatory Responses at Response No. 5(e).)

18. "None of the ACDVs relating to Plaintiff's account were flagged for audit." (Defendant's Interrogatory Responses at Response No. 5(f).)

## F. CHASE'S KNOWLEDGE OF THE CORRECT CHARGE-OFF DATE

19. Chase has admitted that "the March 31, 2022 charge-off date for Plaintiff's account was available to, accessed, and reviewed in connection with each investigation of Plaintiff's account." (Defendant's Interrogatory Responses at Response No. 3.)

20. Despite accessing and reviewing the correct March 31, 2022 charge-off date during each investigation, Chase continued to verify the disputed information as "accurate." (Defendant's Interrogatory Responses at Response Nos. 3 and 6.)

## G. THE WILKINS DEPOSITION

21. Chase designated Robert J. Wilkins as its Rule 30(b)(6) corporate representative witness. (Wilkins Deposition Transcript.)

22. Mr. Wilkins is a Business Analysis Manager and Vice President of Credit Bureau Operations at Chase, a position he has held for approximately 19 years. (Wilkins Tr. at 12:4-15.)

23. Mr. Wilkins manages approximately 75 ACDV processors. (Wilkins Tr. at 15:8-12.)

24. During his deposition, Mr. Wilkins testified at least ten times that Chase does not report charge-off dates to consumer reporting agencies. (Wilkins Tr.)

25. Defense counsel endorsed Mr. Wilkins's repeated testimony, stating: "He answered that 10 times already." (Wilkins Tr.)

26. When confronted with Chase's August 9, 2024 letter confirming the March 31, 2022 charge-off date, Mr. Wilkins reversed his prior testimony. (Wilkins Tr.)

## H. CHASE'S DISCOVERY CONDUCT

27. Chase withheld responsive documents for 107 days, only producing them after Plaintiff filed a motion to compel. (Dkt. 30.)

28. Plaintiff offered to settle this case early for waiver of the debt and deletion of the tradeline — seeking no monetary payment from Chase. Chase rejected this offer and instead filed a $38,000 counterclaim against Plaintiff. (Dkt. 8.)

**I. PLAINTIFF'S DAMAGES**

29. As a direct and proximate result of Chase's inaccurate credit reporting, Plaintiff was denied a $35,000 loan from Liberty Savings Federal Credit Union. (Ex. D, Liberty Savings Denial Letter.)

30. Plaintiff has suffered emotional distress, anxiety, and frustration as a result of Chase's conduct and refusal to correct information that Chase's own records confirm is inaccurate. (Goldson Deposition Tr.)

Dated: February 10, 2026

Respectfully submitted,

Philip Goldson

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

PHILIP GOLDSON,
Plaintiff,

v.

JPMORGAN CHASE BANK, N.A.,
Defendant.

Case No.: 2:24-cv-10869-SDW-JRA

**[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

THIS MATTER having come before the Court on Plaintiff Philip Goldson's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1; and the Court having considered the papers submitted by the parties and the record in this matter; and for good cause shown;

IT IS on this _____ day of ______________, 2026,

**ORDERED as follows:**

1. Plaintiff's Motion for Summary Judgment is GRANTED as to liability;

2. The Court finds that Defendant JPMorgan Chase Bank, N.A. violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation of Plaintiff's disputes regarding the charge-off date of his account;

3. The Court finds that Defendant's violation of 15 U.S.C. § 1681s-2(b) was willful within the meaning of 15 U.S.C. § 1681n(a);

4. A hearing on the issue of damages, including actual damages, statutory damages under 15 U.S.C. § 1681n(a)(1)(A), and punitive damages under 15 U.S.C. § 1681n(a)(2), shall be scheduled by separate Order of the Court;

5. Defendant's Counterclaim [Dkt. 8] is DISMISSED with prejudice; and

6. The parties shall appear for the previously scheduled settlement conference on April 28, 2026, or such other date as may be set by the Court.

______________________________________
HONORABLE SUSAN D. WIGENTON
UNITED STATES DISTRICT JUDGE

# EXHIBIT A

Cardmember Service
PO Box 15298
Wilmington, DE 19850-5298

CHASE

08/09/2024

PHILIP GOLDSON
140 STATE STREET APT 1A
HACKENSACK NJ 07601

## Update: **We confirmed that our reporting of your account is accurate**

Your account 424631528799XXXX

Dear Philip Goldson

Thank you for contacting us about your credit card account above. We're committed to providing accurate information to the consumer reporting agencies and appreciate the opportunity to confirm our reporting.

We confirmed that our reporting of your account is accurate, including:

- Your account was charged off on March 31, 2022.
- Your account shows as charged off with a balance of $38,238.
- High Balance: $38,238.
- We reviewed your account history and found that our reporting is accurate.
- *Additional item(s) listed in your dispute are not a reported field provided by Chase to the Consumer Report Agency.*
-

***Here's information about credit reporting***

- *A high balance can occur anytime* during the month and may not necessarily be the same as your ending balance on a statement.
- We begin reporting an account as delinquent after two consecutive payments are missed. We'll mail you copies of billing statements showing you missed two consecutive payments in a separate letter.

Because our reporting is accurate, no updates or corrections are needed. The consumer reporting agencies below manage how long your account will remain on your credit report. If you have questions about the timeframe, please contact them.

| Experian | Equifax | TransUnion | Innovis |
|---|---|---|---|
| PO Box 4500<br>Allen, TX 75013<br>experian.com<br>1-800-493-1058 | PO Box 740256<br>Atlanta, GA 30374-0256<br>equifax.com<br>1-866-349-5191 | PO Box 2000<br>Chester, PA 19016<br>transunion.com<br>1-800-916-8800 | PO Box 1689<br>Pittsburgh, PA 15230-1689<br>innovis.com<br>1-800-540-2505 |

# EXHIBIT B

Cardmember Service
PO Box 15298
Wilmington, DE 19850-5298

CHASE

11/03/2024

PHILIP GOLDSON
140 STATE STREET APT 1A
HACKENSACK NJ 07601

**Update: We confirmed that our reporting of your account is accurate**

RE : 424631528799xxxx

Dear Philip Goldson

Thank you for contacting us about your credit card account above. We reviewed your account history and found that our reporting is accurate. We begin reporting an account as delinquent after two consecutive payments are missed.

We confirmed that our reporting of your account is accurate, including:

- Your account was charged off on 03/31/2022.
- Your account shows as charged off with a balance of $38,238.76.

Because our reporting is accurate, no updates or corrections are needed. The consumer reporting agencies below manage how long your account will remain on your credit report. If you have questions about the timeframe, please contact them.

| **Experian** | **Equifax** | **TransUnion** | **Innovis** |
|---|---|---|---|
| PO Box 4500 | PO Box 740256 | PO Box 2000 | PO Box 1689 |
| Allen, TX 75013 | Atlanta, GA 30374-0256 | Chester, PA 19016 | Pittsburgh, PA 15230-1689 |
| experian.com | equifax.com | transunion.com | innovis.com |
| 1-800-493-1058 | 1-866-349-5191 | 1-800-916-8800 | 1-800-540-2505 |

We have confirmed there was no date of last payment reported to the Consumer Reporting Agencies.

If you have questions, please call us anytime at 1-800-436-7937; we accept operator relay calls.

Sincerely,

Customer Support Team

CDV903 CDV903.docx 1562526943

# EXHIBIT C

*** 416185917-068 ***
TransUnion LLC
PO Box 805
Woodlyn, PA 19094-0805

11/05/2024

Information for Good.

PKWF7N00200229-I003649-223121617

PHILIP S. GOLDSON 3
140 STATE ST APT 1A
HACKENSACK, NJ 07601-5437

00229010BR0000-PKWF7N00200229

Dear PHILIP S. GOLDSON 3,

We understand that recently something on your credit report did not seem right to you. We take this matter seriously, and we want to make sure your TransUnion credit report is accurate. It's our commitment to you.

Our investigation of the dispute you submitted is now complete. After a review of your dispute and any provided documentation, we took one or more of the following action(s):

1. Updated your credit report based on the information you provided; OR
2. Determined that the information you disputed either does not appear on your credit file or already shows the requested status; OR
3. Determined that the data furnisher had previously verified the reported information. If any of the items you disputed were previously verified, a separate communication was sent to you listing those items along with the data furnisher's contact information; OR
4. Asked the data furnisher reporting the information you disputed to do all of the following:
   - Review relevant information we sent them, including any provided documents
   - Investigate your dispute and verify whether the information they report is accurate
   - Provide us a response to your dispute and update any other information
   - Update their records and systems, if necessary;

Should you wish to receive the above description of the procedures we used to investigate your dispute in a separate communication for your records, please contact TransUnion.

Your dispute is important. In the pages that follow, you will see your detailed investigation results, including the name and contact details of the source of the information. Please review the results carefully. To view a full copy of your credit report and for more information about how to read your credit report, please visit www.transunion.com/fullreport.

---

## How to Read Your Investigation Results

You will see that, for each disputed item, a summary explanation appears in the gray box, followed by a brief paragraph describing the results of our investigation, followed by a view of how the item appears in your updated credit report. Please note any changes we made to personal information (name, address, employment, SSN, date of birth) will appear at the end of **Your Investigation Results.**

### A Note on Credit Report Updates

Information in your credit report is updated frequently which means items you disputed may not appear on your credit report or have already changed by the time we received your dispute. In most cases, the **Date Updated** represents the last time the account information was updated or reported by the data furnisher. Please note that this date may not change following our investigation of your dispute. For **Payment Received** and **Last Payment Made**, please keep in mind, the data may not represent very recent payment activity.

If information was removed or updated as a result of your dispute, the "Your Investigation Results" section below will note that an update was made. An update can include a change to the information or the removal of the information entirely from your credit file. For example, if a field was removed as a result of your dispute, the description will indicate that a change was made to that field. If information was removed, it will no longer appear in the account details.

## Definitions

For your reference, here are some definitions to help you understand **Your Investigation Results.**

**For ACCOUNTS:**

| | |
|---|---|
| **Balance:** The balance owed as of the date the account was verified or reported | **Original Charge Off:** If applicable, the amount charged off due to non-payment of the account |
| **Credit Limit:** The maximum amount of credit approved by the creditor on the account | **Past Due:** The amount past due as of the date the account was verified or reported |
| **Date Opened:** The date the account was Opened | **Pay Status:** The current status of the account; how you are currently paying. For accounts that have been paid and closed, sold, or transferred, it represents the last reported status of the account. |
| **High Balance:** The highest amount ever owed on an account | **Remarks:** If applicable, the creditor may provide additional information here related to the account |
| **Last Payment Made:** The date the creditor received the last payment on the account | **Responsibility:** The type of contractual ownership (individual, joint, authorized user, etc.) of the account |
| **Maximum Delinquency:** If applicable, the maximum amount past due before an account becomes a charge-off or a collection account | **Terms:** The monthly payment amount or monthly minimum payment due on the account |

**Historical Trended Data**

Accounts on your credit report may include historical account information, which TransUnion has collected from account updates provided by your creditor for up to 30 months. On your credit report, this historical trended data may have appeared in a grid below each account along with information reflecting the timeliness of your payments and may include the following data: Date Updated, Balance, Amount Due, Amount Paid, Past Due, Credit Limit, High Balance and Remarks.

Please note: Once an account is disputed, the historical trended data is removed from your credit file and will not be displayed on these results. However, the rating information reflecting the timeliness of your payments will remain and reflect any updates provided by the creditor, if applicable.

## Rating Key

Your accounts may also include up to 84 months of rating information. Some creditors report the timeliness of your payments each month in relation to your agreement with them. The ratings in the key below describe the payments that may be reported by your creditors. This rating key will help you understand any updates to your **PAYMENT HISTORY**, if applicable to **YOUR INVESTIGATION RESULTS**. Any rating that is shaded or any value in the account detail appearing with brackets (> <) may indicate that it is considered adverse.

| N/R | X | OK | 30 | 60 | 90 | 120 | COL | VS | RPO | C/O | FC |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Not Reported | Unknown | Current | 30 days late | 60 days late | 90 days late | 120+ days late | Collection | Voluntary Surrender | Repossession | Charge Off | Foreclosure |

00229020870000-PKWF7N00200229

**File Number:** 416185917
**Date Issued:** 11/05/2024



## TransUnion Credit Score

PHILIP S. GOLDSON 3

### YOUR CREDIT SCORE

**Your Score & Grade**

Score
**Not Purchased**
(See Below)

Grade
-

Created on
11/05/2024

Based on your TransUnion credit report, this is a depiction of your creditworthiness.

**Score & Grade Range**

Unavailable
(See Below)




The numerical score ranges from 850 to 300 equaling grade ranges from A to F.

**Where You Rank**

Unavailable
(See Below)




Your credit ranks higher than --% of the nation's population.

### Summary

You did not order a TransUnion credit score. You can purchase your credit score for $9.95 by calling 1-866-SCORE-TU or 1-866-726-7388.

002290308N0000-PKWF7N00200229

**File Number:** 416185917
**Date Issued:** 11/05/2024



# Your Investigation Results

**INVESTIGATION RESULTS - DISPUTED INFORMATION UPDATED AND OTHER INFORMATION UPDATED: A change was made to the item(s) based on your dispute and other information has also changed.**

**JPMCB CARD SERVICES #424631528799****** ( PO BOX 15369, WILMINGTON, DE 19850, (800) 945-2000 )

We investigated the information you disputed and updated: **Historical Trended Data**. Here is how this item appears on your credit report following our investigation.

| | | | | | |
|---|---|---|---|---|---|
| **Date Opened:** | 10/31/2019 | **Balance:** | $38,238 | **Pay Status:** | >Charged Off< |
| **Responsibility:** | Individual Account | **Date Updated:** | 10/11/2024 | **Terms:** | Paid Monthly |
| **Account Type:** | Revolving Account | **Last Payment Made:** | 10/15/2021 | **Date Closed:** | 12/11/2021 |
| **Loan Type:** | FLEXIBLE SPENDING CREDIT CARD | **High Balance:** | $38,238 | >Maximum Delinquency of 120 days in 01/2022 and in 03/2022< | |
| | | **Original Charge-off:** | $38,238 | | |
| | | **Credit Limit:** | $35,000 | | |
| | | **Past Due:** | >$38,238< | | |

**Remarks:** CLOSED BY CREDIT GRANTOR; >UNPAID BALANCE CHARGED OFF<

**Estimated month and year that this item will be removed:** 07/2028

| | 09/2024 | 08/2024 | 07/2024 | 06/2024 | 05/2024 | 04/2024 | 03/2024 | 02/2024 | 01/2024 | 12/2023 | 11/2023 | 10/2023 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | C/O | C/O | C/O | C/O | C/O | C/O | C/O | C/O | C/O | C/O | C/O | C/O |

| | 09/2023 | 08/2023 | 07/2023 | 06/2023 | 05/2023 | 04/2023 | 03/2023 | 02/2023 | 01/2023 | 12/2022 | 11/2022 | 10/2022 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | C/O | C/O | X | X | X | X | X | X | X | X | X | X |

| | 09/2022 | 08/2022 | 07/2022 | 06/2022 | 05/2022 | 04/2022 | 03/2022 | 02/2022 | 01/2022 | 12/2021 | 11/2021 | 10/2021 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | X | X | X | X | X | C/O | 120 | 120 | 120 | 90 | 60 | 60 |

| | 09/2021 | 08/2021 | 07/2021 | 06/2021 | 05/2021 | 04/2021 | 03/2021 | 02/2021 | 01/2021 | 12/2020 | 11/2020 | 10/2020 | 09/2020 | 08/2020 | 07/2020 | 06/2020 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | 30 | 30 | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

| | 05/2020 | 04/2020 | 03/2020 | 02/2020 | 01/2020 | 12/2019 | 11/2019 |
|---|---|---|---|---|---|---|---|
| Rating | OK | OK | OK | OK | OK | OK | OK |

File Number: 416185917
Date Issued: 11/05/2024



**INFORMATION UPDATED: In response to your request, a change was made to this item(s).**

**ADDRESS INFORMATION:** This section of your report was updated as follows:

| Address | Date Reported | Address | Date Reported |
|---|---|---|---|
| 140 STATE ST APT 1A, HACKENSACK, NJ 07601-5437 | 02/18/2024 | 509 ARGYLE AVE, ORANGE, NJ 07050-1005 | 04/27/2014 |
| 90 ESSEX ST APT 5, HACKENSACK, NJ 07601-4032 | 03/27/2014 | 9059 PRESTON PL, TAMARAC, FL 33321-4166 | 03/03/2024 |
| 4414 GRACE AVE, BRONX, NY 10466-1220 | 02/01/1990 | 55 CLINTON AVE, NEW ROCHELLE, NY 10801-3307 | 02/09/2019 |
| 13 E HICKORY ST, SPRING VALLEY, NY 10977-3709 | 03/08/2019 | | |

In the preceding pages we have provided details on the results of our investigation. **If our investigation has not resolved your dispute, here's what you can do next:**

- **Add a 100-word statement to your report.** What this means is that you have the right to send us a note of 100 words or less describing your situation or why you disagree with the results, and we will add this statement to your report. Anyone who views your report will see this statement. Please know that if you include any medical information in your statement, this means you're giving TransUnion permission to include that information in any future credit report we issue on your behalf.
- **Dispute directly with the company that reported the information to us.** If you want changes made to information found on your credit report you may dispute with the company that reported it using the contact information listed in **Your Investigation Results.**
- **Provide to us any other information or documents about your dispute.** Please visit www.transunion.com/dispute and let us know you are filing a repeat dispute. Be sure to include any other information or documentation you feel will help us resolve your dispute.
- **File a complaint** about the company reporting the account or about TransUnion with the Consumer Financial Protection Bureau (www.consumerfinance.gov/complaint) or with your State's Attorney General's office.

If there has been a change to your credit report as a result of our investigation, or if you have added a statement to your report, **you may ask TransUnion to send an updated credit report** to those who have received your report within the last 2 years for employment purposes or within the last 6 months (or 1 year, where applicable) for any other purpose.

**A Note on Inquiries**
An inquiry is posted on your credit report to notify you that a company has requested your report. Companies can only request a credit report for a legitimate business reason (called permissible purpose). Examples o permissible purpose include: credit transactions, employment consideration, review or collection of an existin account or other legitimate business need, insurance underwriting, government licensing, rental application c court order. Inquiries stay on your credit report for up to two (2) years. Each company that requested your crec report will be listed in the section on inquires, along with their contact information. Please note, a compan doesn't always need your authorization to view your credit report as long as they have a permissible purpose. you think an inquiry was made without a permissible purpose, we strongly encourage you to reach out to th company who requested your credit report to find out whether they have opened an account in your name. Th company can then investigate and if they determine that someone fraudulently applied for credit in your name they can close that account and send us a letter requesting removal of the inquiry. If you have specifi information that the inquiry was made fraudulently, you can also call our Fraud Victim Assistance department a 800-680-7289.

## Should You Wish to Contact TransUnion

Please have your TransUnion **FILE NUMBER** available. Your unique **FILE NUMBER** is located at the top of eac page of this correspondence.

**Online:**
To dispute information contained in your credit report, please visit: www.transunion.com/disputeonline
For more information please visit our Frequently Asked Questions page at http://transunion.com/consumerfaqs

**By Mail:**
TransUnion
P. O. Box 2000
Chester, PA 19016-2000

**By Phone:**
(800) 916-8800
You may contact us between the hours of 8:00 AM – 11:00 PM Eastern Time, Monday through Friday, and Saturday through Sunday between the hours of 8:00 AM and 5:00PM Eastern Time, except major holidays.

00229408F0000-PKWFTN0020229

## Summary of Rights

### GENERAL SUMMARY OF RIGHTS UNDER THE FCRA

Para informacion en espanol, visite www.consumerfinance.gov/learnmore o escribe a la Consumer Financial Protection Bureau, 1700 G Street NW, Washington, DC 20552.

A Summary of Your Rights Under the Fair Credit Reporting Act

The federal Fair Credit Reporting Act (FCRA) promotes the accuracy, fairness, and privacy of information in the files of consumer reporting agencies. There are many types of consumer reporting agencies, including credit bureaus and specialty agencies (such as agencies that sell information about check writing histories, medical records, and rental history records). Here is a summary of your major rights under FCRA. For more information, including information about additional rights, go to www.consumerfinance.gov/learnmore or write to: Consumer Financial Protection Bureau, 1700 G Street NW, Washington, DC 20552.

- **You must be told if information in your file has been used against you.** Anyone who uses a credit report or another type of consumer report to deny your application for credit, insurance, or employment – or to take another adverse action against you – must tell you, and must give you the name, address, and phone number of the agency that provided the information.
- **You have the right to know what is in your file.** You may request and obtain all the information about you in the files of a consumer reporting agency (your "file disclosure"). You will be required to provide proper identification, which may include your Social Security number. In many cases, the disclosure will be free. You are entitled to a free file disclosure if:
  - a person has taken adverse action against you because of information in your credit report;
  - you are the victim of identity theft and place a fraud alert in your file;
  - your file contains inaccurate information as a result of fraud;
  - you are on public assistance;
  - you are unemployed but expect to apply for employment within 60 days.

  In addition, all consumers are entitled to one free disclosure every 12 months upon request from each nationwide credit bureau and from nationwide specialty consumer reporting agencies. See www.consumerfinance.gov/learnmore for additional information.
- **You have the right to ask for a credit score.** Credit scores are numerical summaries of your credit-worthiness based on information from credit bureaus. You may request a credit score from consumer reporting agencies that create scores or distribute scores used in residential real property loans, but you will have to pay for it. In some mortgage transactions, you will receive credit score information for free from the mortgage lender.
- **You have the right to dispute incomplete or inaccurate information.** If you identify information in your file that is incomplete or inaccurate, and report it to the consumer reporting agency, the agency must investigate unless your dispute is frivolous. See www.consumerfinance.gov/learnmore for an explanation of dispute procedures.
- **Consumer reporting agencies must correct or delete inaccurate, incomplete, or unverifiable information.** Inaccurate, incomplete, or unverifiable information must be removed or corrected, usually within 30 days. However, a consumer reporting agency may continue to report information it has verified as accurate.
- **Consumer reporting agencies may not report outdated negative information.** In most cases, a consumer reporting agency may not report negative information that is more than seven years old, or bankruptcies that are more than 10 years old.
- **Access to your file is limited.** A consumer reporting agency may provide information about you only to people with a valid need usually to consider an application with a creditor, insurer, employer, landlord, or other business. The FCRA specifies those with a valid need for access.
- **You must give your consent for reports to be provided to employers.** A consumer reporting agency may not give out information about you to your employer, or a potential employer, without your written consent given to the employer. Written consent generally is not required in the trucking industry. For more information, go to www.consumerfinance.gov/learnmore.
- **You may limit prescreened offers of credit and insurance you get based on information in your credit report.** Unsolicited prescreened offers for credit and insurance must include a toll-free phone number you can call if you choose to remove your name and address from the lists these offers are based on. You may opt out with the nationwide credit bureaus at 1-888-5-OPTOUT (1-888-567-8688).
- The following FCRA right applies with respect to nationwide consumer reporting agencies:
- **CONSUMERS HAVE THE RIGHT TO OBTAIN A SECURITY FREEZE.** You have a right to place a "security freeze" on your credit report, which will prohibit a consumer reporting agency from releasing information in your credit report without your

00229050SV0000-PKWF7N00200229

express authorization. The security freeze is designed to prevent credit, loans, and services from being approved in your name without your consent. However, you should be aware that using a security freeze to take control over who gets access to the personal and financial information in your credit report may delay, interfere with, or prohibit the timely approval of any subsequent request or application you make regarding a new loan, credit, mortgage, or any other account involving the extension of credit.

A security freeze does not apply to a person or entity, or its affiliates, or collection agencies acting on behalf of the person or entity, with which you have an existing account that requests information in your credit report for the purposes of reviewing or collecting the account. Reviewing the account includes activities related to account maintenance, monitoring, credit line increases, and account upgrades and enhancements.

To place a security freeze, a consumer reporting agency will require you to provide appropriate proof of your identity, which may include your Social Security Number. You may place a security freeze on your credit report by contacting each of the three nationwide credit reporting agencies.

- Equifax: 1-800-525-6285; www.equifax.com
- Experian: 1-888-397-3742; www.experian.com
- TransUnion: 1-800-680-7289; www.transunion.com

- **As an alternative to a security freeze, you have the right to place an initial or extended fraud alert on your credit file at no cost.** An initial fraud alert is a 1-year alert that is placed on a consumer's credit file. Upon seeing a fraud alert display on a consumer's credit file, a business is required to take steps to verify the consumer's identity before extending new credit. If you are a victim of identity theft, you are entitled to an extended fraud alert, which is a fraud alert lasting 7 years.
- **You may seek damages from violators.** If a consumer reporting agency, or, in some cases, a user of consumer reports or a furnisher of information to a consumer reporting agency violates the FCRA, you may be able to sue in state or federal court. You may also have the right to file suit under state law.
- **Identity theft victims and active duty military personnel have additional rights.** For more information, visit www.consumerfinance.gov/learnmore.

States may enforce the FCRA, and many states have their own consumer reporting laws. In some cases, you may have more rights under state law. For more information, contact your state or local consumer protection agency or your state Attorney General. For information about your federal rights, contact:

| TYPE OF BUSINESS: | CONTACT: |
|---|---|
| 1.a. Banks, savings associations, and credit unions with total assets of over $10 billion and their affiliates<br><br>b. Such affiliates that are not banks, savings associations, or credit unions also should list, in addition to the CFPB: | a. Consumer Financial Protection Bureau<br>1700 G Street, NW,<br>Washington, DC 20552<br><br>b. Federal Trade Commission<br>Consumer Response Center<br>600 Pennsylvania Avenue, NW,<br>Washington, DC 20580 (877) 382-4357 |
| 2. To the extent not included in item 1 above:<br>a. National banks, federal savings associations, and federal branches and federal agencies of foreign banks<br><br>b. State member banks, branches and agencies of foreign banks (other than federal branches, federal agencies, and Insured State Branches of Foreign Banks), commercial lending companies owned or controlled by foreign banks, and organizations operating under section 25 or 25A of the Federal Reserve Act.<br><br>c. Nonmember Insured Banks, Insured State Branches of Foreign Banks, and insured state savings associations<br><br>d. Federal Credit Unions | a. Office of the Comptroller of the Currency<br>Customer Assistance Group<br>P.O. Box 53570<br>Houston, TX 77052<br><br>b. Federal Reserve Consumer Help Center<br>PO Box 1200<br>Minneapolis, MN 55480<br><br>c. Division of Depositor and Consumer Protection<br>National Center for Consumer and Depositor Assistance<br>Federal Deposit Insurance Corporation<br>1100 Walnut Street, Box #11<br>Kansas City, MO 64106<br><br>d. National Credit Union Administration<br>Office of Consumer Financial Protection<br>1775 Duke Street<br>Alexandria, VA 22314 |
| 3. Air carriers | Asst. General Counsel for Office of Aviation Protection<br>Department of Transportation<br>1200 New Jersey Avenue, SE,<br>Washington, DC 20590 |
| 4. Creditors Subject to the Surface Transportation Board | Office of Public Assistance, Governmental Affairs, and Compliance Surface Transportation Board<br>395 E Street, SW,<br>Washington, DC 20423 |
| 5. Creditors Subject to the Packers and Stockyards Act, 1921 | Nearest Packers and Stockyards Division Regional Office |
| 6. Small Business Investment Companies | Associate Administrator, Office of Capital Access<br>United States Small Business Administration<br>409 Third Street, SW, Suite 8200<br>Washington, DC 20416 |
| 7. Brokers and Dealers | Securities and Exchange Commission<br>100 F Street, NE,<br>Washington, DC 20549 |
| 8. Institutions that are members of the Farm Credit System | Farm Credit Administration<br>1501 Farm Credit Drive<br>McLean, VA 22102-5090 |
| 9. Retailers, Finance Companies, and All Other Creditors Not Listed Above | Federal Trade Commission<br>Consumer Response Center<br>600 Pennsylvania Avenue, NW,<br>Washington, DC 20580 (877) 382-4357 |

0022906080000-PKWF7N00200229

# EXHIBIT D

Liberty Savings FEDERAL CREDIT UNION

Phone: (201) 659-3900 | Fax: (201) 863-7361
666 Newark Avenue, Jersey City, NJ 07306
1347 John F. Kennedy Blvd. Bayonne, NJ 07002
108 48th Street, Union City, NJ 07087

# LOAN APPLICATION

## MEMBER'S INFORMATION

FIRST & LAST NAME Philip Goldson

HOME ADDRESS 140 State st Apt: 1A
Hackensack NJ 07601

RESIDED AT THIS ADDRESS SINCE (Please list month and year) 2023

ACCOUNT NUMBER ______ EMAIL ADDRESS Klassick.barz@gmail.com

BIRTHDATE 11-30-1982 DRIVER'S LICENSE NUMBER G62326268211821 STATE NJ

SOCIAL SECURITY # 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 GROSS MONTHLY INCOME $17,900

HOME PHONE ______ CELL 718-395-0532 WORK ______ PREFERRED? ☐ H | ☐ W | ☐ C

NAME & ADDRESS OF EMPLOYER Aptos labs Palo Alto, CA POSITION: Head of talent

START DATE April 2022 SUPERVISOR'S NAME Johnny Tong

WHICH DO YOU PAY (Please check one) ☒ RENT ☒ MORTGAGE MONTHLY AMOUNT $ 1,800

PURPOSE OF LOAN Vehicle purchase AMOUNT REQUESTED $ $35,000

ARE YOU A U.S. CITIZEN OR PERMANENT RESIDENT ALIEN? (Please check one) ☒ YES ☐ NO

## SPOUSE OR CO-APPLICANT INFORMATION (OPTIONAL)

FIRST & LAST NAME ______

HOME ADDRESS ______

RESIDED AT THIS ADDRESS SINCE (Please list month and year) ______

ACCOUNT NUMBER ______ EMAIL ADDRESS ______

BIRTHDATE ______ DRIVER'S LICENSE NUMBER ______ STATE ______

SOCIAL SECURITY # ______ GROSS MONTHLY INCOME ______

HOME PHONE ______ CELL ______ WORK ______ PREFERRED? ☐ H | ☐ W | ☐ C

NAME & ADDRESS OF EMPLOYER ______

START DATE ______ SUPERVISOR'S NAME ______

WHICH DO YOU PAY (Please check one) ☐ RENT ☐ MORTGAGE MONTHLY AMOUNT $ ______

ARE YOU A U.S. CITIZEN OR PERMANENT RESIDENT ALIEN? (Please check one) ☐ YES ☐ NO

*Alimony, child support, or separate maintenance income need not be revealed if you do not choose to have it considered as a basis for repayment. If self-employed, please supply last 2 years of tax returns. You promise that everything you have stated in this application is correct to the best of your knowledge. If there are any important changes you will notify us in writing immediately. You authorize the Credit Union to obtain credit reports in connection with this application for credit and for any update, increase, renewal, extension or collection of the credit received. You understand that the Credit Union will rely on the information in this application and your credit report to make its decision. If you request, the Credit Union will tell you the name and address of any credit bureau from which it received a credit report on you. It is a crime to willfully and deliberately provide incomplete or incorrect information in this application. Terms and Conditions: By signing below, I/we authorize Liberty Savings Federal Credit Union to check my/our credit and employment history and report my/our credit performance to others who may properly receive this information. I/we understand that you may contact me/us for further information and that this application must be completed for the credit union to process my/our request.

APPLICANT'S SIGNATURE [signature] DATE 4/11/2025

Liberty Savings
FEDERAL CREDIT UNION
666 Newark Avenue, Jersey City, NJ 07306

# Adverse Action Notice

Date: 05/20/2025 Member/Account Number: 64143
Member's Name: PHILIP S GOLDSON Member's SSN: ***-**-0906
Member's Address: 140 STATE ST APT 1A HACKENSACK, NJ 07601
Description of Account, Transaction, or Requested Credit: ______

## ACTION TAKEN AFFECTING CREDIT REQUEST OR EXISTING CREDIT

Date of Loan Request: 04/14/2025 Amount of Loan Requested $ 35,000.00

☐ We are unable to process your application because we require the following information to make a decision: ______
If we do not receive this information by ______ we will be unable to consider your application.

☐ Your credit has been terminated for the following account: ______

☐ We are unable to extend credit on the terms you requested but can offer credit on the following terms: ______
If this offer is acceptable to you, please notify us no later than ______ at the address on this notice.

☐ We are unable to extend credit to you at this time.
☐ Your credit limit has been decreased to $ ______
☐ We are unable to honor your request to increase your credit limit.
☐ Other:

## ACTION TAKEN AFFECTING SHARE DRAFT/CHECKING OR OTHER ACCOUNT OR SERVICE

☐ At this time we are unable to offer you: ☐ ATM card ☐ Debit card ☐ Share draft/checking account
☐ We have terminated/closed your: ☐ ATM card ☐ Debit card ☐ Share draft/checking account
☐ We have suspended your: ☐ ATM card ☐ Debit card ☐ Share draft/checking account
☐ We have denied your request for membership.
☐ We are unable to offer the account you requested, but can offer the following account to you: ______. If this offer is acceptable to you, please notify us no later than ______ at the address on this notice.
☐ Other:

## PART I - PRINCIPAL REASON(S) FOR DENIAL, TERMINATION, OR OTHER ACTION TAKEN

*This section must be completed in all instances..*

☐ Incomplete identity information
☐ Excessive obligations in relation to income
☐ Credit application incomplete
☐ Insufficient number of credit references provided
☐ Unacceptable type of credit references provided
☐ Unable to verify credit references
☐ Temporary or irregular employment
☐ We do not offer the type of credit requested
☐ Income insufficient for amount of credit requested
☐ Suspected fraud or identity theft
☐ Other, specify:
☐ Limited credit experience
☐ Poor credit performance with us
☐ Delinquent past or present credit obligations with others
☐ Collection action or judgment
☐ Garnishment or attachment
☐ Foreclosure or repossession
☐ Number of recent inquiries on credit bureau report
☐ Value or type of collateral not sufficient
☐ You are not eligible for membership in this credit union
☐ Excessive overdraft or non-sufficient funds activity
☐ Unpaid negative account balances or fees
☐ Bankruptcy
☐ Length of residence
☐ Temporary residence
☐ Unable to verify residence
☐ No credit file
☐ Length of employment
☐ Unable to verify employment
☐ Unable to verify income
☐ Unable to verify identity
☐ Charged-off account

## PART II - DISCLOSURE OF USE OF INFORMATION OBTAINED FROM AN OUTSIDE SOURCE

This section should be completed if the decision was based in whole or in part on information that has been obtained from an outside source.

Section A applies only if consumer reporting agency information is used. Section B applies only if an outside source other than a consumer reporting agency is used.

### SECTION A

☒ Our decision was based in whole or in part on information obtained in a report from a consumer reporting agency listed below. You have a right under the Fair Credit Reporting Act to know the information contained in your file at the consumer reporting agency. The reporting agency played no part in our decision and is unable to supply specific reasons for the action we have taken.

You also have a right to a free copy of your report from the reporting agency, if you request it no later than 60 days after you receive this notice. In addition, if you find that any information contained in the report you receive is inaccurate or incomplete, you have the right to dispute the matter with the reporting agency.

PLEASE SEE NEXT PAGE FOR EQUAL CREDIT OPPORTUNITY ACT NOTICE

FOR CREDIT UNION USE ONLY
Employee Initials: Date mailed or delivered:

©TruStage Compliance Solutions 1980, 82, 84, 86, 1990, 2000, 01, 03, 06-08, 2010-12, 2023 MXX07I-E

| Application Comments | | |
|---|---|---|
| User ID | Date and Time | Comment |
| CU34102RLF | 04/14/2025 10:54:56 AM | UNSECURED DEBTS IS HIGH, CHASE ACCT IS NOT HIS AND ON DISPUTE AS PER THE MEMBER , WILL NEED THE PROOF FROM HIS LAWYER.. |

# EXHIBIT E

A. I don't know the exact date. It was approximately April.
Q. So you have personal knowledge of when the upgrade occurred?
A. I do.
Q. Who told you about this upgrade?
A. I have the personal knowledge. I was with credit bureau operations at the time.
Q. So you conducted the upgrade?
MR. TURCOTTE: Objection to form.
You can answer.
A. No.
BY MR. GOLDSON:
Q. Okay. So who told you about it?
A. Our systems were upgraded and nobody had to tell me about it.
Q. Okay. The declaration states the upgrade required CBO to download images differently and to different Chase repositories. What does that mean?
A. So e-OSCAR, the system that credit bureau disputes come from when they're disputed at the bureaus only houses ACDVs and any images associated with those ACDVs

A. Again, we did not report a charge-off date. We report an account status at the time that we report.
Q. All right. So semantics are around words, but I'll repeat the question. If Chase told the consumer the correct date in writing then continued reporting a different date to credit bureaus for 15 months, is that consistent with FCRA?
MR. TURCOTTE: Objection to form. Misstates the testimony and the record.
You may answer.
A. Again, we did not report a charge-off date. That's not a Metro 2 field.
BY MR. GOLDSON:
Q. That's fine. I'm asking you question now as an expert, right? So I'll repeat the question if you need me to.
But to your knowledge and in your expertise, if Chase told consumer the correct date in writing, then continued reporting a different date to credit bureaus for 15 months, is that consistent with FCRA?
MR. TURCOTTE: Objection.

A. At which time?
Q. When you picked up reporting.
A. The account status of charge-off?
Q. What was the date?
A. We would have to go to an ACDV to look. But I believe it was August 2023, 2024.
Q. Let me restate. So who made the decision to keep reporting April 2022 after confirming March 31st, 2022?
A. We didn't keep reporting the April 2022 date. That date's reported once at the time of reporting and then it changes the next reporting.
BY MR. GOLDSON:
Q. I mean, to be fair, your position is that although you positioned this letter to me as the account was charged off on March 31st, 2022, you guys do not report charge-off dates?
A. That is correct.
Q. Okay. What do you report that corresponds to the charge-off date? Like what is the significance of March 31st, 2022?

do you -- maybe you don't recall the exact, but maybe you can estimate the amount of times that you said to me that Chase does not report charge-offs to credit bureaus, what would you estimate?

A. I probably told you ten times that the credit reporting or that the charge-off date is not a credit reporting field.

Q. Gotcha.

MR. GOLDSON: Madeline, could you scroll down to page 5 for me, please.

BY MR. GOLDSON:

Q. Can you see this page, Mr. Wilkins?

A. I can.

Q. Okay. Do you see the space where it acknowledges that this is JPM -- excuse me -- CB card services?

A. I do.

Q. Okay. And do you see the area marked in yellow where it says "Pay Status?"

A. I do.

Q. Do you see the term "charge-off" there?

A. I do.

Q. Gotcha. If you look down, do you see the letters "CO"?

A. I do.

Q. Do these letters stand for "charge-off"?

A. I can't speak for TransUnion. "CO" is not something that we report in those fields.

Q. Okay. But you do see pay status where it says "charged off," yes?

A. Yes.

Q. Okay. And these dates that are here, listed here by TransUnion are dates furnished and information furnished by J.P. Morgan Chase Bank, correct?

MR. TURCOTTE: Objection to form. The witness has stated he's not familiar with this document.

But you can answer.

A. I mean, TransUnion would take the data that we reported and display it here, so those dates that have a CO would have been dates that we would have furnished.

Q. And we know that those letters stand for charge-off, and we also see the --

next to "pay status," it says "charged off."
So you said -- just to reiterate at least ten times -- that you guys do not report charge-offs to credit bureaus. However, it shows here that you guys do report charge-offs to credit bureaus, correct?
MR. TURCOTTE: Objection. Misstates his testimony. He said they don't report charge-off dates. You can answer again.
BY MR. GOLDSON:
Q. Then how did -- how did TransUnion get those dates? He just said that they furnished these dates.
A. Which dates are you referring to?
Q. The ones that are next to the charge-offs?
A. So those dates refer to the account status as of that month.
Q. Referring to the account status as the charge-off.
A. As of that month, I can't tell you what the CO represents.
Q. Right. But you swore earlier that

April 22 date isn't a date -- like we would have reported that once when we reported in April, but then every month after, the reporting date changes.

MR. GOLDSON: Can we scroll up to page 3, please, Madeline.

BY MR. GOLDSON:

Q. Can you tell me what you see here, Mr. Wilkins?

A. That looks like a key from TransUnion on how to interpret fields.

Q. Yep. And can you let me know what it says underneath "CO"?

A. It says "charge-off."

MR. GOLDSON: Okay. Can we go back to page 5, please, Madeline.

BY MR. GOLDSON:

Q. Just to state, obviously we can confirm that "CO" does stand for "charge-off," correct, Mr. Wilkins?

A. According to this document.

Q. The document from TransUnion, correct?

A. Correct.

Q. Which you confirmed that you

MR. TURCOTTE: I provided it to you as I'm required to under the Federal Rules. When I receive a response from a subpoena, I provide it to you.

MR. GOLDSON: Got it.

BY MR. GOLDSON:

Q. All right. Mr. Wilkins, you understand your testimony today binds J.P. Morgan Chase Bank as the corporate representative?

MR. TURCOTTE: Asked and answered. You can answer again.

A. I do.

BY MR. GOLDSON:

Q. What is Chase's corporate policy for reporting charge-off dates to credit bureaus?

A. As stated more than ten times now, we do not report a charge-off date to the credit bureaus.

Q. How does Chase ensure charge-off dates are reported accurately?

A. Chase does not report charge-off dates.

Q. What is Chase's corporate policy when Chase discovers it's reporting inaccurate information?

A. To update said information.

Q. What steps is Chase supposed to take to correct inaccurate reporting?

A. We would submit a correction to the credit bureau that has the inaccurate reporting.

Q. Was that policy followed in my case?

MR. TURCOTTE: Objection. Lacks foundation. Assumes facts in evidence.

You can answer if you know.

A. There was nothing to correct.

BY MR. GOLDSON:

Q. Why is it your position that there was nothing to correct?

MR. TURCOTTE: Objection. Asked and answered several times.

You can answer again.

A. The information that was reported was accurate.

BY MR. GOLDSON:

Q. The information that was reported

# EXHIBIT F

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

PHILIP GOLDSON,

Plaintiff,

-against-

JPMORGAN CHASE BANK, N.A.,

Defendant.

Case No. 2:24-cv-10869-SDW-JRA

**DEFENDANT JPMORGAN CHASE BANK, N.A.'S RESPONSES**
**TO PLAINTIFF'S SUPPLEMENTAL INTERROGATORIES**

Defendant JPMorgan Chase Bank, N.A. ("Chase") by its attorneys, as and for its Objections and Responses to Plaintiff Philip Goldson's ("Goldson" or "Plaintiff") Supplemental Interrogatories, states as follows:

## GENERAL OBJECTIONS

1. Chase objects to Plaintiff's Supplemental Interrogatories insofar as the Court's January 28, 2026 order limited Plaintiff to serving Chase with "six supplemental interrogatories" on limited subject matter, and Plaintiff served supplemental interrogatories which covered areas beyond he designated subject matters and in which four of the six interrogatories included multi-subparts in contravention of the order's restrictions.

2. Neither the General Objections nor the Specific Responses set forth below are an admission relative to the existence of any information sought, to the relevance or admissibility of any response, or to the truth or accuracy of any statement or characterization contained in any particular Interrogatory.

3. Chase objects to each Interrogatory to the extent it calls for documents or information that are subject to the attorney-client privilege, constitute attorney work product,

pertain to materials prepared in anticipation of or as a result of litigation, or are otherwise immune from discovery.

4. Chase objects to each Interrogatory to the extent it assumes facts that are not in evidence, have not been established, or are false.

5. Chase objects to each Interrogatory to the extent it calls for documents or information that are irrelevant to the subject matter involved in this action and seeks information not reasonably calculated to lead to the discovery of admissible evidence.

6. Chase objects to each Interrogatory to the extent it presents compound questions and is ambiguous.

7. Chase objects to each Interrogatory to the extent it is vague, ambiguous, overly broad, and unduly burdensome because it fails to specify a relevant time period.

8. Chase objects to each Interrogatory to the extent it is vague and ambiguous because Plaintiff uses undefined terms whose definitions are subject to dispute by the Parties.

9. Chase objects to Plaintiff's definition of the term "Documents" to the extent its use of such definition is an attempt to impose upon Chase any obligations beyond those imposed by the Federal Rules of Civil Procedure.

10. Chase objects to each Interrogatory to the extent it employs imprecise specifications of the information sought. In particular, terms such as "consist of," "concern," "refer," and other like terms do not provide an adequate classification of the information sought. Where such terms are used, Chase will only provide information that can be reasonably identified as responsive to the Interrogatories.

11. Chase objects to any Interrogatory that seeks information already known to Plaintiff or available to Plaintiff from documents in his own files or from public sources.

12. Chase objects to any Interrogatory to the extent it seeks to impose obligations on Chase beyond those required by the Federal Rules of Civil Procedure.

13. Chase reserves the right to supplement, modify, or amend these General Objections and Responses, and any Specific Objections and Responses set forth herein, in accordance with the provisions of the Federal Rules of Civil Procedure.

## RESPONSES TO INTERROGATORIES

1. For each of Plaintiff's Disputes, describe in detail the actual investigation conducted by Defendant, including: (a) the identity and job title of each person who participated in the investigation; (b) the date the investigation was conducted; (c) the specific steps taken during the investigation; (d) how long the investigation took to complete; and (e) the conclusion reached and the basis for that conclusion.

**RESPONSE**: Chase objects to this Interrogatory insofar as it is vague, ambiguous, overly broad, unduly burdensome, seeks information that is not proportional to the needs of the case, and is neither relevant to the claims or defenses of any party to this action nor reasonably calculated to lead to the discovery of admissible evidence. Subject to these objections and the General Objections, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, *see* Automated Consumer Dispute Verification (ACDV) forms, at CHASE-000142 thru CHASE-000173, and Chase's C3 screens, at CHASE-000132 thru CHASE-000141, and Chase C3 account notes, at CHASE-000174 thru CHASE-000191, produced in Chase's Response to Plaintiff's Requests for Production of Documents.

In addition, corresponding to parts (a) through (e) of the above Interrogatory:

(a) The identity of each "ACDV specialist" who performed the investigation of Plaintiff's Disputes is identified in the "DF Authorized Name" field at the top

of each ACDV, as well as in the "Submitted by" field at the bottom of each ACDV.

(b) The date of the investigation is identified in the "Response Date" field of the ACDV, as well as the corresponding account notes.

(c) Upon receipt of a Dispute, the ACDV specialist reviews (1) the ACDV itself, including the identified Dispute Code(s) at issue; (2) all documentation that accompanied the ACDV; and (3) information from Chase's system of record (known as its C3 database). For specific steps taken as to each Dispute, see Account Notes that correspond to each ACDV, which are identifiable via date and the last four digits of the ACDV's "Control Number" field.

(d) Chase does not maintain records as to "how long the investigation took to complete."

(e) As to conclusions reached by the ACDV specialist, the specialist compares the data populated by the credit bureaus in the ACDV's "Request Data" fields with the data maintained on Chase's system of record, in conjunction with performing an investigation based on the documentation accompanying the ACDV, and verifies or updates data as necessary in the ACDV's "Response Data" fields. *See also* Account Notes corresponding to each ACDV's investigation for further conclusions.

2. For each of Plaintiff's Disputes, identify by name, type, and description every document, record, file, database, or other source of information that was reviewed, accessed, or consulted during the investigation. For each document or record identified, state: (a) the date it was created; (b) the date it was reviewed during the investigation; (c) who reviewed it; and (d) what information it contained relevant to Plaintiff's dispute.

**RESPONSE:** Chase objects to this Interrogatory insofar as it is vague, ambiguous, overly broad, unduly burdensome, seeks information that is not proportional to the needs of the case, and is neither relevant to the claims or defenses of any party to this action nor reasonably calculated to lead to the discovery of admissible evidence. Chase also objects to this Interrogatory insofar as it is duplicative of Interrogatory No. 1. Subject to these objections and the General Objections, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, *see* Automated Consumer Dispute Verification (ACDV) forms, at CHASE-000142 thru CHASE-000173, and Chase's C3 screens, at CHASE-000132 thru CHASE-000141, and Chase C3 account notes, at CHASE-000174 thru CHASE-000191, produced in Chase's Response to Plaintiff's Requests for Production of Documents.

In addition, corresponding to parts (a) through (d) of the above Interrogatory:

(a) Upon the date that the ACDV specialist is in receipt of the ACDV and commences his/her investigation, he or she reviews (1) the ACDV itself, including the identified Dispute Code(s) at issue; (2) all documentation that accompanied the ACDV; and (3) information from Chase's system of record (known as its C3 database).

(b) The date of the investigation is identified in the "Response Date" field of the ACDV.

(c) The identity of each "ACDV specialist" who performed the investigation of Plaintiff's Disputes is identified in the "DF Authorized Name" field at the top of each ACDV, as well as in the "Submitted by" field at the bottom of each ACDV.

(d) The C3 screens include all information relevant to Plaintiff's Disputes. For example, Plaintiff's Disputes and Complaint (*see* ¶12) specifically allege inaccuracies regarding the subject account's date of last payment and charge-off date. The C3 screens provide the account's October 15, 2021 date of last payment (CHASE-000132) and March 31, 2022 charge-off date (CHASE-000137).

3. State whether Defendant's August 9, 2024 letter to Plaintiff — which confirmed that Plaintiff's Account charged off on March 31, 2022 — was reviewed, accessed, available to, or considered by any person who investigated any of Plaintiff's Disputes. If yes, identify the dispute(s) during which it was reviewed, who reviewed it, and explain why the disputed information was verified as "accurate" despite this letter confirming the charge-off date was March 31, 2022. If no, explain why this letter was not reviewed or considered during the investigation of Plaintiff's Disputes.

**RESPONSE:** Chase objects to this Interrogatory insofar as it is vague, ambiguous, overly broad, unduly burdensome, seeks information that is not proportional to the needs of the case, and is neither relevant to the claims or defenses of any party to this action nor reasonably calculated to lead to the discovery of admissible evidence, including but not limited to the fact the Interrogatory fails to specify a relevant time period or context, of particular note given eight of the 10 ACDVs received by Chase relative to Plaintiff's account pre-date the transmittal of Chase's August 9, 2024 correspondence. Chase also objects to this Interrogatory to the extent it assumes facts that are not in evidence, have not been established, or are false. Subject to these objections and the General Objections, as noted above, the March 31, 2022 charge-off date for Plaintiff's account was available to, accessed, and reviewed in connection with each investigation of Plaintiff's account. As explained multiple times during the deposition of Robert

Wilkins in this matter, there is no inconsistency or inaccuracy in the subject account's charge-off date being March 31, 2022 and Chase's furnishing of credit data to the credit bureaus. A review of the ACDVs applicable to Plaintiff's account (CHASE-000142 thru CHASE-000173) confirms there is no Metro 2 field included on the ACDV that permits Chase to furnish a "charge-off date." Rather, while Chase does not furnish a "charge-off date" to the credit bureaus because it is not a recognized Metro 2 field, at the time of Plaintiff's account's next cycle date following the charge-off (here, in April 2022), Chase would have furnished, per Metro 2 protocols, the Account Status as "charge off" without identifying a specific charge-off date.

4. Describe in detail the training provided to ACDV processors (including employees of JPMorgan Services India Private Limited or any other subsidiary or contractor) regarding: (a) the Fair Credit Reporting Act's requirement to conduct a "reasonable investigation" of consumer disputes under 15 U.S.C. § 1681s-2(b); (b) what constitutes a "reasonable investigation"; (c) what documents or records must be reviewed when investigating a dispute; (d) when and how to correct inaccurate information; and (e) the consequences of failing to conduct a reasonable investigation or failing to correct inaccurate information.

**RESPONSE:** Chase objects to this Interrogatory insofar as it is vague, ambiguous, overly broad, unduly burdensome, seeks information that is not proportional to the needs of the case, and is neither relevant to the claims or defenses of any party to this action nor reasonably calculated to lead to the discovery of admissible evidence. Chase also objects to this Interrogatory insofar as it is duplicative of Interrogatory Nos. 1 and 2. Chase further objects to this Interrogatory insofar as it calls for a legal conclusion. Subject to these objections and the General Objections, corresponding to parts (a) through (e) of the above Interrogatory:

(a) ACDV specialists across all of Chase's sites receive initial, intensive classroom and one-on-one training, and thereafter annual training with managers and team leaders, concerning procedures designed to be FCRA compliant in the performance of a reasonable investigation.

(b) As Mr. Wilkins previously testified at his deposition, what constitutes a "reasonable investigation" varies and "depends on what information is provided to [the furnisher, here Chase]…. We would review the information that was provided. And based on the information provided, if there was enough specifics, then we would perform a reasonable investigation around that specific information."[1] Wilkins Tr. 74:1-19.

(c) Upon receipt of a Dispute, the ACDV specialist reviews (1) the ACDV itself, including the identified Dispute Code(s) at issue; (2) all documentation that accompanied the ACDV; and (3) information from Chase's system of record (known as its C3 database).

(d) To the extent "inaccurate" information is being furnished (none being the case here), information can be updated/corrected by the ACDV specialist using the ACDV's appropriate Response Data fields. In addition, in the absence of an ACDV, a specialist could submit an Automated Universal Dataform (AUD) to the credit bureaus to effect a change in furnishing.

[1] *See also Owoyemi v. Credit Corp Solutions Inc.*, 677 F.Supp.3d 285, 299 (S.D.N.Y. 2023) ("[w]hat constitutes reasonableness [of an investigation] is viewed in light of what the furnisher learned about the nature of the dispute from the description of the [credit reporting agency]'s notice of dispute." (citation omitted).

(e) Chase objects to subpart (e), insofar as "the consequences of failing to conduct a reasonable investigation or failing to correct inaccurate information" (no failure occurring here) is vague and ambiguous and calls for a legal conclusion.

5. Describe in detail the quality control and oversight procedures for ACDV verifications conducted by employees of JPMorgan Services India Private Limited or any other overseas subsidiary or contractor, including: (a) whether and how ACDV verifications are reviewed for accuracy; (b) who is responsible for such review; (c) what percentage of verifications are reviewed; (d) how errors are identified and corrected; (e) what metrics or performance standards apply to ACDV processors; and (f) whether any quality control review was conducted on any of the verifications of Plaintiff's Disputes, and if so, the results of that review.

**RESPONSE:** Chase objects to this Interrogatory insofar as it is vague, ambiguous, overly broad, unduly burdensome, seeks information that is not proportional to the needs of the case, and is neither relevant to the claims or defenses of any party to this action nor reasonably calculated to lead to the discovery of admissible evidence, including but not limited to the fact the Interrogatory fails to specify a relevant time period or context. Subject to these objections and the General Objections, corresponding to parts (a) through (f) of the above Interrogatory:

(a) Chase's Quality Control team regularly performs internal audits of its ACDV responses. The Quality Control team audits a minimum of five ACDVs for each ACDV specialist each month.

(b) Chase's Quality Control team is responsible for such review.

(c) Chase does not maintain records of the "percentage of verifications [ ] reviewed."

(d) The Quality Control team performs audits of ACDVs vis-a-vis its ACES software. Should an error be detected, the ACDV is referred to the ACDV

specialist and his/her manager. If the manager and specialist concur that an error was made, Chase submits an Automated Universal Dataform (AUD) to the credit bureaus to effect a change in furnishing.

(e) In terms of metrics or performance standards, ACDV specialists are judged on three metrics: (i) productivity (*i.e.*, the number of ACDV responses processed per hour), (ii) quality of performance, and (iii) occupancy (*i.e.*, the idle time from the time an ACDV response is completed to the time a new ACDV investigation is commenced).

(f) None of the ACDVs relating to Plaintiff's account were flagged for audit.

6. Explain in detail the basis for verifying the information reported to consumer reporting agencies about Plaintiff's Account as "accurate" in response to Plaintiff's Disputes, given that: (a) Defendant's own letter dated August 9, 2024 confirmed the charge-off date was March 31, 2022; (b) Defendant's own letter dated November 2024 again confirmed the charge-off date was March 31, 2022; (c) Defendant's Amended Answer and Counterclaim [Dkt. 8] at Paragraph 17 admits "The 2315 Account charged off on March 31, 2022"; and (d) the information reported to consumer reporting agencies reflected a charge-off date of April 2022, not March 31, 2022. Specifically explain why the dispute investigation concluded the reported information was "accurate" when Defendant's own records confirmed it was not.

**RESPONSE:** Chase objects to this Interrogatory insofar as it is vague, ambiguous, overly broad, unduly burdensome, seeks information that is not proportional to the needs of the case, and is neither relevant to the claims or defenses of any party to this action nor reasonably calculated to lead to the discovery of admissible evidence. Chase also objects to this Interrogatory to the extent it assumes facts that are not in evidence, have not been established, or are false. Finally, Chase also objects to this Interrogatory insofar as it is duplicative of

Interrogatory No. 3. Subject to these objections and the General Objections, as noted above and explained multiple times during the deposition of Robert Wilkins in this matter, there is no inconsistency or inaccuracy in the subject account's charge-off date being March 31, 2022 and Chase's furnishing of credit data concerning the account to the credit bureaus. A review of the ACDVs applicable to Plaintiff's account (CHASE-000142 thru CHASE-000173) confirms there is no Metro 2 field included on the ACDV that permits Chase to furnish a "charge-off date." Rather, while Chase does not furnish a "charge-off date" to the credit bureaus (and therefore the Interrogatory misstates that Chase's furnishing to the credit bureaus "reflected a charge-off date of April 2022") because it is not a recognized Metro 2 field, at the time of Plaintiff's account's next cycle date following the charge-off (here, in April 2022), Chase would have furnished, per Metro 2 protocols, the Account Status as "charge off" without identifying a specific charge-off date. Even the sole TransUnion report produced by Plaintiff (and marked as an exhibit at the Wilkins deposition) does not identify a specific "charge-off date"; rather, the tradeline on the report states that Plaintiff's Chase account began reporting as a charge off in April 2022.

Chase reserves the right to supplement or amend any response as additional information becomes available or comes to light.

Dated: New York, New York
February 6, 2026

TURCOTTE LAW, P.C.

By: /s/Christopher B. Turcotte
Christopher B. Turcotte
641 Lexington Avenue, 15th Floor
New York, New York 10022
(212) 937-8499
*Attorneys for Defendant JPMorgan Chase Bank. N.A.*

# VERIFICATION

The undersigned, Robert J. Wilkins, an Business Analysis Manager and Vice President of Credit Bureau Operations with, and authorized to sign on behalf of, Defendant JPMorgan Chase Bank, N.A., being duly sworn deposes and says that I have reviewed the foregoing Responses to Plaintiff's Supplemental Interrogatories, and have knowledge of the facts stated therein, and that all of the matters set forth therein are true and correct and correct in substance and fact to the best of my knowledge.

Robert J. Wilkins

**CERTIFICATE OF SERVICE**

I hereby certify that on February 6, 2026, I served a true and correct copy of Defendant JPMorgan Chase Bank, N.A.'s Responses to Plaintiff's Supplemental Interrogatories upon Plaintiff via electronic mail:

Philip Goldson
140 State Street, Apt. 1A
Hackensack, NJ 07601
klassick.barz@gmail.com

/s/Christopher B. Turcotte
Christopher B. Turcotte