Christopher B. Turcotte
TURCOTTE LAW, P.C.
641 Lexington Avenue, 15th Floor
New York, NY 10022
(212) 937-8499
*Attorneys for Defendant JPMorgan Chase Bank, N.A.*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PHILIP GOLDSON,<br><br>Plaintiff,<br><br>-against-<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>Defendant. | Case No. 2:24-cv-10869-SDW-JRA<br><br>Hon. Susan D. Wigenton<br><br>Motion Day: December 21, 2026<br><br>ORAL ARGUMENT REQUESTED |

**DEFENDANT JPMORGAN CHASE BANK, N.A.'S**
**STATEMENT OF MATERIAL FACTS**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant JPMorgan Chase Bank, N.A. ("Chase"), respectfully submits this Statement of Material Facts in support of its motion for summary judgment:

1. In October 2019, Plaintiff opened a Chase Ink business credit card account ending in 2315 in his name and that of his business, Jayhairbigga LLC (the "2315 Account"). *See* true and correct copy of Credit Card Application annexed to Declaration of Nydsomi Rivera dated October 19, 2026 ("N.Rivera Decl.") as Ex. A; true and correct copy of Excerpted Transcript of Philip Goldson dated February 5, 2026 ("Goldson Tr.") annexed to Declaration of Christopher B. Turcotte dated October 20, 2026 ("Turcotte Decl.") as Ex. 1, at 28:13-17 (wherein Plaintiff admits opening the business credit card account); Expert Report of Alvaro Alban dated July 6, 2026 ("Alban Expert Report"), annexed to Turcotte Decl. as Ex. 2, at ¶15 ("Upon information and belief, Philip Goldson maintained a JPMorgan Chase Bank, N.A. credit card account ending in X2315. According to Mr. Goldson's declaration, he held the account from approximately October 2019 until the account was charged off.")

2. According to Plaintiff, Jayhairbigga LLC operated as a hair salon under the name JHB Studios, which he and Julie Dastine each owned a 50% interest. *See* Goldson Tr. annexed to Turcotte Decl. as Ex. 1, at 11:24-25; 12:16-22; 13:5-21.

3. Plaintiff's application identified, *inter alia*, a Social Security number ending in 0906, a birth year of 1982, and an address of 29 1st Street, Apt. 602, Hackensack, NJ 07601. *See* Ex. A to N. Rivera Decl.

4. Plaintiff confirmed residing at the 29 1st Street address. *See* Goldson Tr. annexed to Turcotte Decl. as Ex. 1. at 18:8-9; 19:12-13. He also confirmed his Social Security number and date of birth match those provided on the application. *Id*. at 42:3-9.

5. Pursuant to the section of the Business Card Agreement ("BCA") which governs the 2315 Account, Chase agreed to lend Plaintiff money in exchange for his agreeing to pay Chase back together with interest charges and fees as set forth in the BCA; the use of the account or the making of any payments to it indicates an acceptance of the terms of the BCA. *See* true and correct copy of BCA annexed to N. Rivera Decl. as Ex. B, at CHASE-000005 under section titled "Welcome to Your Account"; true and correct copies of Chase's Counterclaim and Plaintiff's Answer to Counterclaim annexed to Turcotte Decl. as Exs. 6 and 7, respectively (wherein, in response to paragraphs 6 through 14 of Counterclaim, Plaintiff admits existence of credit card account and agreement, and his payment obligations thereunder).

6. Pursuant to the section of the Business Card Agreement ("BCA") which governs the 2315 Account titled "Legal Responsibility," it provides in pertinent part:

> The words "you", "your" and "yours" mean everyone responsible for this account. This includes (1) the person who applied for the account using his/her social security number, and (2) the company, if any, that applied for the account through the authorizing officer. You are legally obligated to pay for all purchases, cash advances, and all fees and charges incurred on the account, from the opening of the account. You are liable for all amounts incurred by any authorized user (whether billed or unbilled) prior to the time that (a) you have contacted us verbally (and confirm such verbal notification in writing within five (5) business days) advising us that such authorized user is no longer authorized to use the card or account, and (b) you obtain the card, if applicable, issued to such authorized user and return it to us.

*See* true and correct copy of BCA annexed to N. Rivera Decl. as Ex. B, at CHASE-000013.

7. The BCA's section titled "Security Agreement" provides, in pertinent part, "[a]s collateral security for the payment of any and all of your obligations owed to us, by using your account you grant us a security interest in, lien upon and right of set off against all monies, deposits, balances, securities or other property or interest therein of yours or of the company …." *See* true and correct copy of BCA annexed to N. Rivera Decl. as Ex. B, at CHASE-000013.

8. The section of the BCA titled "Credit Information" further provides in part that "[y]ou authorize [Chase] to furnish information concerning your performance under this agreement to third parties, including business bureaus, credit reporting agencies and our related banks." *See* true and correct copy of BCA annexed to N. Rivera Decl. as Ex. B, at CHASE-000014.

9. The section of the BCA titled "Default" also provides in part that the BCA will be in default if Plaintiff does not pay at least the minimum payment when due, fails to comply with the Business Card Agreement or any other agreements with Chase or a related bank, or Chase believes that he is unwilling or unable to pay its debts on time. In the event of default, Plaintiff agreed that Chase could, to the extent permitted by law, require him to pay collection costs, attorneys' fees, court costs, and all other expenses of enforcing Chase's rights under the BCA. *See* true and correct copy of BCA annexed to N. Rivera Decl. as Ex. B, at CHASE-000006.

10. Monthly statements for the 2315 Account were subsequently and regularly transmitted to this same Hackensack address until its charge-off. *See*, *e.g.*, initial December 2019 and final March 2022 Account Statements annexed to N. Rivera Decl. as Ex. C, at CHASE-000016 to CHASE-000018, CHASE-000105 to CHASE-000108. Plaintiff received account statements from Chase for the 2315 Account. *See* Goldson Tr. annexed to Turcotte Decl. as Ex. 1, at 31:9-13; true and correct copies of Chase's Counterclaim and Plaintiff's Answer to Counterclaim annexed to Turcotte Decl. as Exs. 6 and 7, respectively (wherein, in response to paragraph 15 of Counterclaim, Plaintiff admits receiving billing statements).

11. The last charge posted to the 2315 Account on July 3, 2021. *See* 7-3-21 charge on Account Statement annexed to N. Rivera Decl. as Ex. C at CHASE-000042, and statements issuing thereafter through March 2022, at CHASE-000016 to CHASE-000039. Plaintiff did not contact

Chase, in writing or otherwise, to report that any of the charges to the 2315 Account were unauthorized through the time of the last charge posting to the 2315 Account in July 2021. *See* true and correct copies of Chase's Counterclaim and Plaintiff's Answer to Counterclaim annexed to Turcotte Decl. as Exs. 6 and 7, respectively (wherein, in response to paragraph 20 of Counterclaim, Plaintiff admits to not challenging any charge as unauthorized).

12. Chase ceased receiving the necessary minimum payments beginning in July 2021, with the last payment posting to the 2315 Account on October 15, 2021. *See* Account Statements annexed to N. Rivera Decl. as Ex. C, at CHASE-000030, CHASE-000040. Plaintiff does not dispute that October 15, 2021 is the 2315 Account's date of last payment. *See* Goldson Tr. annexed to Turcotte Decl. as Ex. 1, at 64:7-22; Alban Expert Report annexed to Turcotte Decl. as Ex. 2, at 16 ("[r]ecords produced in this matter indicate that Mr. Goldson's last payment on the account was made on October 15, 2021. The same date was later identified in discovery admissions and in Mr. Goldson's dispute correspondence concerning the account"); true and correct copies of Chase's Counterclaim and Plaintiff's Answer to Counterclaim annexed to Turcotte Decl. as Exs. 6 and 7, respectively (wherein, in response to paragraph 16 of Counterclaim, Plaintiff admits not making a payment since October 15, 2021).

13. The 2315 Account eventually charged off on March 31, 2022, with a balance owing of $38,238.76 and this amount remains unpaid to date. *See* true and correct copy of 11-3-24 Letter from Chase to Plaintiff attached as Exhibit to Complaint [ECF No. 1-2, Page 1 of 3] annexed to Turcotte Decl. as Ex. 5 (confirming Plaintiff's account "charged off with a balance of $38,238.76"); true and correct copy of 1-22-25 Counterclaim annexed to Turcotte Decl. as Ex. 6, at ¶¶17, 27; true and correct copy of true and correct copy of C3 Notes for 2315 Account annexed to Declaration of David Rivera dated October 15, 2026 ("D. Rivera Decl.") as Ex. D, at CHASE-

000182, and D. Rivera Decl. at ¶27; Account Statement annexed to N. Rivera Decl. as Ex. C, at CHASE-000016; true and correct copies of Chase's Counterclaim and Plaintiff's Answer to Counterclaim annexed to Turcotte Decl. as Exs. 6 and 7, respectively (wherein, in response to paragraphs 21 and 26 of Counterclaim, Plaintiff admits the account charged off on March 31, 2022 and his non-payment of $38,238.76).

14. According to Chase Vice President/Business Analysis Manager Robert Wilkins, who managed all of Chase's domestic credit bureau dispute teams, upon the 2315 Account charging off on March 31, 2022, the account's charge-off status was first reported to credit reporting agencies when the account next cycled in April 2022. *See* true and correct copy of Excerpted Transcript of Chase Vice President Robert Wilkins dated December 11, 2025 ("Wilkins Tr.") annexed to Turcotte Dec. as Ex. 3, at 6:10-24, 31:5-10 (Chase first reported the charge-off in April 2022 on the account's cycle date); 34:17-24 ("[a]fter the account was charged off, the next time that the account was reported would have been on your cycle date …. And that would have reported the charge-off for the first time as the account status"), 38:1-3 ("we did not report a charge-off date. We report an account status at time we report"), 45:6-7 ("[w]e report the account status [on] the next cycle after the charge-off"); *see also* Expert Report of John Ulzheimer dated August 20, 2026 ("Ulzheimer Expert Report") annexed to Turcotte Decl. as Ex. 4, at 18 ("The method by which Chase reported the account in April 2022 and forward indicates the account was in a charged off status during that month, which is correct given the account was charged off on March 31, 2022, and during any subsequent months the account would still remain in a charged off status. This method of reporting has occurred for decades, conforms with industry guidance, and is neither atypical nor controversial").

15. Beginning in late November 2021 and continuing through early December 2021, Plaintiff began filing disputes with the three major credit reporting agencies – Equifax, Experian, and Trans Union (collectively, the "CRAs") – alleging identify theft. During this period, Chase, in turn, received notice of Plaintiff's credit reporting disputes from the CRAs in the form of five (5) Automated Consumer Dispute Verification (ACDV) forms. *See* true and correct copies of ACDVs annexed to D. Rivera Decl. as Ex. E, at CHASE-000142 to CHASE-000156, with Plaintiff's account number, Social Security number and date of birth redacted but for the last four digits and the redaction of proprietary coding.

16. As confirmed by Plaintiff's expert, "consumer reporting agencies and information furnishers utilize standardized reporting and dispute resolution processes … [which] include the Metro 2® reporting format developed by the Consumer Data Industry Association ("CDIA") and the Automated Consumer Dispute Verification ("ACDV") process used to communicate and investigate disputed account information." *See* Alban Expert Report annexed to Turcotte Decl. as Ex. 2, at ¶63.

17. Each of the ACDVs received during this November-December 2021 period identified the Dispute Code 103 ("Claims true Identity fraud, account fraudulently opened") as being relevant. *See* true and correct copies of ACDVs annexed to D. Rivera Decl. as Ex. E, at CHASE-000142, CHASE-000145, CHASE-000148, CHASE-000151, and CHASE-000154.

18. At his deposition, Plaintiff testified that although he opened the account and was aware the account was opened for legitimate business purposes, he reported the account as being opened fraudulently because his then estranged business partner "had engaged in shady practices." *See* Goldson Tr. annexed to Turcotte Decl. as Ex. 1, at 28:13-20, 52:8-24. One year earlier, his business partner, with whom he lived at the time, had obtained a temporary restraining order

against Plaintiff, and Plaintiff testified that he obtained a TRO against her as well. *Id.* at 19:6-14, 30:6-21, 52:14-24.

19. In response to the ACDVs received during this November-December 2021 period, Chase performed investigations, validating the wrongly disputed account information, *i.e*., that the account was opened fraudulently via true identity theft, while updating certain account information. *See* ACDVs annexed to D. Rivera Decl. as Ex. E, and Bates stamped CHASE-000142 to CHASE-000156. This included Chase's verifying payments to the 2315 Account were received from a direct deposit account ending in 2263 in the primary cardmember's business name (*see* 12-2-21 C3 Notes for 2315 Account annexed to D. Rivera Decl. as Ex. D at CHASE-000186, stating "PMNT VRFD TO PCM BUSINESS NAME WITH DDA 2263 … LIABILITY FOUND") and, based on Chase's system of record, updating the address for Plaintiff on the ACDVs from a New Rochelle, NY address to the 29 1st Street, Apt. 602, Hackensack, NJ 07601 address appearing on Plaintiff's 2315 Account application and statements, with C3 notes dated December 9, 2021 stating:

> INVESTIGATION PERFORMED BASED ON DISPUTE CODE(S) 103:CLAIMS TRUE IDENTITY FRAUD, ACCOUNT FRAUDULENTLY OPENED, PROVIDE OR CONFIRM COMPLETE ID., ALL RELEVANT INFORMATION AND ATTACHMENTS REVIEWED IF SUPPLIED[.] **REVIEWED CUSTOMER INFORMATION AND FRAUD REVIEW MEMO IN C3, FRAUD REVIEW MEMO STATES CUSTOMER LIABLE FOR ACCOUNT AND INDICATES TO UPDATE, VALIDATED ACCT STATUS IN C3, ORIGINATING BUREAU INFORMATION NOT UNDER DISPUTE REVIEWED AGAINST C3, NO UPDATE TO C3 NEEDED**, - CUSTOMER INFOMRATION, ACCOUNT INFORMATION AND HISTORY – DO NOT MATCH ORIGINAL COLUMN AS PER VALIDATION MADE IN C3, DOAI UPDATED, OTHER INFORMATION ASSOCIATED WITH DOAI UPDATED, PROCESSED UPDATE FOR DOAI AND ASSOCIATED FIELD, RESPONSE SENT TO UPDATE.

*See* C3 Notes to 2315 Account annexed to D. Rivera Decl. as Ex. D, at CHASE-000184 (emphasis added). The C3 notes are the system of record for the 2315 Account. *See* D. Rivera Decl., at ¶7.

20. Chase's finding of no fraudulent account activity relative to the 2315 Account is also consistent with Plaintiff's present position. *See* Goldman Tr. annexed to Turcotte Decl. as Ex. 1, at 57:5-7, 57:16-18 (testifying that he does not recall ever alleging his former business partner ever committed fraud on the credit card account and he no longer contends that the 2315 Account is a fraudulent account).

21. In May 2022, Chase received a fourth ACDV from Experian, identifying Dispute Code 114 (Disputes Date Opened, Date of Last Payment and/or Date Closed), without any further detail, as being relevant. *See* true and correct copy of ACDV annexed to D. Rivera Decl. as Ex. F, at CHASE-000159 to CHASE-000161, with Plaintiff's account number, Social Security number and date of birth redacted but for the last four digits and the redaction of proprietary coding.

22. In response to the May 2022 ACDV, Chase performed an investigation and verified its reporting, stating in contemporaneous C3 notes dated June 3, 2022 the following:

> INVESTIGATION PERFORMED BASED ON DISPUTE CODE(S) 114:DISPUTES DATE OPENED, DATE OF LAST PAYMENT AND/OR DATE CLOSED. **VERIFY DATE OPENED, DATE OF LAST PAYMENT AND/OR DATE CLOSED**., ALL RELEVANT INFORMATION AND ATTACHMENTS REVIEWED IF SUPPLIED[.] VERIFIED DATE OPENED, DATE OF LAST PAYMENT, DATE CLOSED AS PER C3, NO UPDATE REQUIRED, ACDV UPDATED AS PER C3.

*See* C3 Notes to 2315 Account annexed to D. Rivera Decl. as Ex. D, at CHASE-000182 (emphasis added).

23. Thereafter, in March 2023, Chase received a fifth ACDV from TransUnion, identifying Dispute Code 112 (Consumer states inaccurate information), again without any further detail, as being relevant. *See* true and correct copy of ACDV annexed to D. Rivera Decl. as Ex. G, at CHASE-000162 to CHASE-000164, with Plaintiff's account number, Social Security

number and date of birth redacted but for the last four digits and the redaction of proprietary coding.

24. In response to the March 2023 ACDV, Chase performed an investigation and verified its reporting, stating in contemporaneous C3 notes dated April 12, 2023 the following:

> INVESTIGATION PERFORMED BASED ON DISPUTE CODE(S) 112:CONSUMER STATES INACCURATE INFORMATION. **PROVIDE OR CONFIRM COMPLETE ID AND VERIFY ALL ACCOUNT INFORMATION**., ALL RELEVANT INFORMATION AND ATTACHMENTS REVIEWED IF SUPPLIED[.] **VERIFIED ALL ACCT INFO, STATUS, PAYMNT HISTORY, PAYMNT RATING AS PER C3. FNAPP/ C3 USED FOR CUST FILED VALIDATION, VERIFIED DELINQUENCIES VIA STATEMENTS IN EIV [ENTERPRISE IMAGE VIEWER] AND C3, ORIGINATING BUREAU INFO REVIEWED AGAINST C3 NO UPDATE REQUIRED TO C3. ACDV UPDATED CUSTOMER INFO AS PER C3, UPDATED ACCT INFO AND ACCT HISTORY AS PER C3**.

*See* C3 Notes to 2315 Account annexed to D. Rivera Decl. as Ex. D, at CHASE-000181 (emphasis added).

25. Following this, Chase received three final ACDVs from TransUnion between July 2024 and October 2024. *See* true and correct copies of ACDVs annexed to D. Rivera Decl. as Ex. H, at CHASE-000165 to CHASE-000173, with Plaintiff's account number, Social Security number and date of birth redacted but for the last four digits and the redaction of proprietary coding; *see also* true and correct copy of Complaint annexed to Turcotte Decl. as Ex. 5, at ¶11.

26. The first of these three ACDVs was received on July 18, 2024, and identified Dispute Codes 012 (Claims paid the original creditor before Collection status or Paid before Charge-off) and 114 (Disputes Date Opened, Date of Last Payment and/or Date Closed) as being relevant. *See* ACDV annexed to D. Rivera Decl. as Ex. H, at CHASE-000165 to CHASE-000167.

27. The July 2024 ACDV was accompanied by a letter to TransUnion dated July 12, 2024, wherein Plaintiff disputed "inaccurate information" on his TransUnion credit report,

specifically citing "[p]ayment history" and "[c]harge-off date" without elaboration. *See* true and correct copy of 7-12-24 Letter, with attachments, annexed to D. Rivera Decl. as Ex. I [CHASE-000192 to CHASE-000197], at 1. The letter closed by instructing TransUnion to "correct the inaccuracies in my credit report promptly." *Id.*

28. At his deposition, Plaintiff clarified that his dispute concerning the charge-off date was that Chase advised him that the 2315 Account's charge-off date was March 31, 2022 but the CRAs reported the charge-off as of April 2022. *See* Goldson Tr. annexed to Turcotte Decl. as Ex. 1, at 28:8-12; *see also* Complaint annexed to Turcotte Decl. as Ex. 5, at ¶¶7-9 (alleging that despite Chase transmitting letters to Plaintiff confirming the March 31, 2022 charge-off date, Chase inaccurately "continues to report to TransUnion a charge off date of April 2022").

29. In response to the July 2024 ACDV, Chase performed an investigation and verified its reporting, stating in contemporaneous C3 notes dated July 23, 2024 the following:

> INVESTIGATION PERFORMED BASED ON DISPUTE CODE(S) 012 – CLAIMS PAID THE ORIGINAL CREDITOR BEFORE COLLECTION STATUS / PAID BEFORE CHARGE OFF. **VERIFY ACCOUNT STATUS, PAYMENT STATUS, PAYMENT RATING, CURRENT BALANCE, AMOUNT PAST DUE AND ACCOUNT HISTORY**….

*See* true and correct Excerpted C3 Notes for 2315 Account dated 7-23-24 annexed to D. Rivera Decl. as Ex. D, at CHASE-000179 (emphasis added).

> 114 – DISPUTES DATE OPENED, DATE OF LAST PAYMENT AND/OR DATE CLOSED. VERIFY DATE OPENED, DATE OF LAST PAYMENT AND/OR DATE CLOSED., ALL RELEVANT INFORMATION AND ATTACHMENTS REVIEWED IF SUPPLIED, **VALIDATED DISPUTED FIELDS PER SOR [SYSTEM OF RECORD] AND ACCOUNT HISTORY** DO NOT MATCH ORIGINAL COLUMN. **UPDATED SCH[EDULE]D MO[NTHLY] P[AY]M[E]NT, DOFD [DATE OF FIRST DELIQUENCY] AND ACCOUNT HISTORY. NO UPDATE NEED IN SOR**. RESPONSE SENT TO UPDATE.

*Id.* (emphasis added).

30. As Plaintiff's expert acknowledges, "[t]he Metro 2® Format, developed by the Consumer Data Industry Association ("CDIA"), is the industry standard used by information furnishers when reporting consumer credit account information to the nationwide consumer reporting agencies." *See* Alban Expert Report annexed to Turcotte Decl. as Ex. 2, at ¶66; *see also* Ulzheimer Expert Report annexed to Turcotte Decl. as Ex. 4, at 7 ("[t]he Metro 2 language represents the entire universe of codes and characters which furnishers can choose from and use to populate the [ACDV's] data fields defined by the credit reporting agencies").

31. As for Plaintiff's request to "correct" his 2315 Account's charge-off date, furnishers like Chase do not a furnish a "charge-off date" to the CRAs as, consistent with Metro 2 procedure, there is no means, including any field on the ACDV, of transmitting such information to a CRA. *See* D. Rivera Decl. at ¶16; Wilkins Tr. annexed to Turcotte Decl. as Ex. 3, at 30:22-24 ("[t]he charge-off day is not a Metro 2 field that is reported to the credit bureaus"), 33:2-4 ("there's not a [Metro 2] field, that's called charge-off date. So there's not a way for us to report a charge-off date"); *see also* Expert Report of John Ulzheimer dated August 20, 2026 ("Ulzheimer Expert Report") annexed to Turcotte Decl. as Ex. 4, at 19 ("Chase neither furnished nor verified an incorrect so-called "charge-off date" to any CRA as there is no such date in the entirety of the Metro 2 credit reporting language"), at 20 ("there is no such thing in the entirety of the Metro 2 language called a "charge-off date" or "date of charge off." It does not exist"), at 23 ("there is, again, no such thing as a charge-off date in the credit reporting language. That means a charge-off date cannot be validly disputed, as it is not on a credit report to begin with, and it cannot be added to a credit report, as there is no systematic method of doing so").

32. Instead, at the time of the 2315 Account's *next cycle date following the charge-off* (here, April 2022), Chase furnished the Account Status as "charge off" without identifying a

specific charge-off date and during this April 2022 reporting period the "Account History" matrix on the ACDV identified a charge-off code (an "L") in the April 2022 box because this is the first time the 2315 Account is being reported as charged off. *See* D. Rivera Decl. at ¶17, and "Account Status" fields on 2024 ACDVs annexed to D. Rivera Decl. as Ex. H, at CHASE-000165, CHASE-000168, CHASE-000171; *see also* Wilkins Tr. annexed to Turcotte Decl. as Ex. 3, at 31:5-10 (Chase first reported the charge-off in April 2022 on the account's cycle date); 34:17-24 ("[a]fter the account was charged off, the next time that the account was reported would have been on your cycle date …. And that would have reported the charge-off for the first time as the account status"), 38:1-3 ("we did not report a charge-off date. We report an account status at time we report"), 45:6-7 ("[w]e report the account status [on] the next cycle after the charge-off"), 45:20-25 (account status and charge-off date are not interchangeable because there is no Metro 2 field for the charge-off date); *see also* Ulzheimer Expert Report annexed to Turcotte Decl. as Ex. 4, at 18 ("The method by which Chase reported the account in April 2022 and forward indicates the account was in a charged off status during that month, which is correct given the account was charged off on March 31, 2022, and during any subsequent months the account would still remain in a charged off status. This method of reporting has occurred for decades, conforms with industry guidance, and is neither atypical nor controversial").

33. Plaintiff's expert does not dispute the Chase followed the proper reporting procedure. Rather, despite the Metro 2 format being the recognized industry standard for the transmission of credit data between furnishers and CRAs and, as relevant here, the issue of whether the "charge-off date" is an established Metro 2 field on the ACDV being the fulcrum of Plaintiff's credit reporting claim, Plaintiff's expert declines to offer an opinion on this point. *See* Alban Report annexed to Turcotte Decl. as Ex. 2, at ¶¶66 and 69 ("Chase subsequently explained that

April 2022 represented the first full month during which the account was in a charged-off status. Whether that reporting methodology is consistent with Metro 2 reporting guidance depends upon the specific Metro 2 data field being reported and the reporting instructions applicable to that field. Accordingly, I do not offer a field-by-field opinion that every Metro 2 data element furnished by Chase violated a specific Metro 2 instruction.")

34. With respect to the July 2024 ACDV, consistent with the C3 notes above, Chase verified the account information, including an "Account Status" of "97 – Unpaid balance reported as a loss (charge-off)" without reference to a specific charge-off date, except for updating (i) the Scheduled Monthly Payment field from a blank field to a zero-dollar entry, (ii) the Date of First Delinquency from 8-1-21 to 8-11-21, and (iii) the Account History grid to reflect the accurate delinquency history which preceded the account's charge-off, in the ACDV's "Response [or Resp.] Data" fields. *See* ACDV annexed to D. Rivera Decl. as Ex. H, at CHASE-000165 to CHASE-000167, and D. Rivera Decl. at ¶19.

35. Chase's response to the July 2024 ACDV, as well as all of the ACDVs received in connection with the 2315 Account which precede or follow this ACDV, identifies the Date of Last Payment as October 15, 2021. *See* ACVS annexed to D. Rivera Decl. as Exs. E, F, G & H, at CHASE-000143, CHASE-000146, CHASE-000149, CHASE-000152, CHASE-000155, CHASE-000160, CHASE-000163, CHASE-000166, CHASE-000169, and CHASE-000172.

36. The July 2024 ACDV, as well as all of the ACDVs received in connection with the 2315 Account which precede or follow this ACDV, do **not** have a "Charge-Off Date" field. *See* D. Rivera Decl. at ¶16, and Exs. E, F, G & H annexed thereto.

37. Even the TransUnion investigative reports dated July 23, 2024 and November 5, 2024, annexed to the Complaint and produced by Plaintiff in discovery, respectively, do not

support Plaintiff's claim that Chase is misreporting a "charge-off date." Rather, the tradeline on the report states that his Chase account began reporting as a charge off ("C/O") in April 2022. There is no reference to a specific "charge off date" in the TransUnion report. *See* true and correct copy of Excerpted 7-23-24 TransUnion Investigative Report as Exhibit to Complaint [ECF No. 1-2, Page 3 of 3] annexed to Turcotte Decl. as Ex. 5; true and correct copy of 11-5-24 TransUnion Investigative Report annexed to Turcotte Decl. as Ex. 8 (Page 5 of 7).

38. Consistent with the charge-off date identified in Chase's system of record, in a letter to Plaintiff dated August 9, 2024, Chase confirmed, among other things, that the 2315 Account charged off on March 31, 2022. *See* true and correct copy of 8-9-24 Letter as Exhibit to Complaint [ECF No. 1-2, Page 2 of 3], annexed to Turcotte Decl. as Ex. 5; Ex. D to D. Rivera Decl., at CHASE-000182.

39. Plaintiff mistakenly uses the August 9, 2024 letter as a basis to claim that the CRAs should report March 31, 2022 as the 2315 Account's charge-off date despite the fact that Chase does not furnish and the CRAs do not report a "charge-off date" on the 2315 Account's tradeline but instead report the month (April 2022) in which the 2315 is first reporting as charged off. *See* Complaint annexed to Turcotte Decl. as Ex. 5, at ¶¶7-9 (alleging that despite Chase transmitting letters to Plaintiff confirming the March 31, 2022 charge-off date, Chase inaccurately "continues to report to TransUnion a charge off date of April 2022"). *But see* Wilkins Tr. annexed to Turcotte Decl. at 43:1-5, 11-16 ("you're referring to a charge-off date in the [8-9-24 Chase] letter which is accurate, but there's not a charge-off date that we credit report, because it's not a a Metro 2 field … [April 2022] is the first time that we would have reported the account status of charge-off"), 44:16-21 ("Q. … your position is that although you positioned this letter to me as the account was charged off on March 31, 2022, you guys do not report charge-off dates? A. That is correct.").

40. On September 4, 2024, Chase received another dispute (ACDV) from TransUnion, identifying Dispute Codes 012 (Claims paid the original creditor before Collection status or Paid before Charge-off) and 015 (Credit Limit/Highest Credit or original loan amount incorrect) as being relevant. *See* ACDV annexed to D. Rivera Decl. as Ex. H, at CHASE-000168 to CHASE-000170.

41. In response to the September 2024 ACDV, Chase performed an investigation and verified its reporting, stating in contemporaneous C3 notes dated September 11, 2024 the following:

> INVESTIGATION PERFORMED BASED ON DISPUTE CODE(S) 012 – CLAIMS PAID THE ORIGINAL CREDITOR BEFORE COLLECTION STATUS / PAID BEFORE CHARGE OFF. **VERIFY ACCOUNT STATUS, PAYMENT STATUS, PAYMENT RATING, CURRENT BALANCE, AMOUNT PAST DUE AND ACCOUNT HISTORY**….

*See* true and correct Excerpted C3 Notes for 2315 Account dated 9-11-24 annexed to D. Rivera Decl. as Ex. D, at CHASE-000178 (emphasis added).

> 015 – CREDIT LIMIT/HIGHEST CREDIT OR ORIGINAL LOAN AMOUNT INCORRECT. **VERIFY CREDIT LIMIT OR HIGHEST CREDIT/ ORIGINAL LOAN AMOUNT**., ALL RELEVANT INFORMATION AND ATTACHMENTS REVIEWED IF SUPPLIED , **VERIFIED ACCT STATUS, PAYMENT RATING, CURRENT BALANCE, AMT PAST DUE AND ACCT HISTORY AS PER SOR [SYSTEM OF RECORD], VERIFIED DELINQUENCIES AS PER SOR/EIV [ENTERPRISE IMAGE VIEWER], VERIFIED CREDIT LIMIT, ORIGINAL LOAN AMOUNT AS PER SOR AND HIGH CREDIT AS PER EIV / SOR , ORIGINATING BUREAU INFO NOT UNDER DISPUTE REVIEWED AGAINST SOR, NO UPDATE REQUIRED ON SOR**. ACDV UPDATED FOR ACCT INFO AS PER SOR….

*Id.* (emphasis added).

42. Accordingly, with respect to the September 2024 ACDV, as it did in response to the July 2024 ACDV, Chase verified the account information, including an "Account Status" of "97 – Unpaid balance reported as a loss (charge-off) without reference to a specific charge-off

date, except for updating (i) the Scheduled Monthly Payment field from a blank field to a zero-dollar entry, (ii) the Date of First Delinquency from 8-1-21 to 8-11-21, and (iii) the Account History grid to reflect the accurate delinquency history which preceded the account's charge-off, in the ACDV's "Response [or Resp.] Data" fields. *See* ACDV annexed to D. Rivera Decl. as Ex. H, at CHASE-000168 to CHASE-000170, and D. Rivera Decl. at ¶19.

43. On October 31, 2024, Chase received the final dispute (ACDV) from TransUnion, identifying Dispute Codes 012 (Claims paid the original creditor before Collection status or Paid before Charge-off) and 114 (Disputes Date Opened, Date of Last Payment and/or Date Closed) as being relevant. *See* ACDV annexed to D. Rivera Decl. as Ex. H, at CHASE-000172 to CHASE-000175.

44. The October 2024 ACDV was accompanied by a letter to TransUnion dated October 23, 2024, wherein Plaintiff complained that the credit bureau was showing an incorrect charge-off date of April 2022, "unknown" payment history from May 2022 to July 2023, and a missing last payment amount. *See* true and correct copy of 10-23-24 Letter, with attachments, annexed to D. Rivera Decl. as Ex. J [CHASE-000198 to CHASE-000204], at 1.

45. In response to the October 2024 ACDV, Chase performed an investigation and verified its reporting, stating in contemporaneous C3 notes dated November 5, 2024 the following:

> INVESTIGATION PERFORMED BASED ON DISPUTE CODE(S) 012 – CLAIMS PAID THE ORIGINAL CREDITOR BEFORE COLLECTION STATUS / PAID BEFORE CHARGE OFF. **VERIFY ACCOUNT STATUS, PAYMENT STATUS, PAYMENT RATING, CURRENT BALANCE, AMOUNT PAST DUE AND ACCOUNT HISTORY**….

*See* true and correct Excerpted C3 Notes for 2315 Account dated 11-5-24 annexed to D. Rivera Decl. as Ex. D, at CHASE-000175 (emphasis added).

> 114 – DISPUTES DATE OPENED, DATE OF LAST PAYMENT AND/OR DATE CLOSED. VERIFY DATE OPENED, DATE OF LAST PAYMENT

> AND/OR DATE CLOSED., ALL RELEVANT INFORMATION AND ATTACHMENTS REVIEWED IF SUPPLIED[;] **ACCOUNT STATUS, PAYMENT RATING, BALANCE, DATE OPENED, DATE OF LAST PAYMENT AND/OR DATE CLOSED, APD [AMOUNT PAST DUE], DOFD [DATE OF FIRST DELINQUENCY] AND HISTORY WERE VALIDATED USING SOR [SYSTEM OF RECORD] AND WERE CORRECTLY REPORTED AS PER REVIEW OF ORIGINATING BUREAU INFO. NO UPDATE NEEDED ON SOR. SUBMITTED ACDV WITH UPDATE RESPONSE**.

*Id.* (emphasis added).

46. Accordingly, with respect to the October 2024 ACDV, as it did previously in response to the July and September 2024 ACDVs, Chase verified the account information, including an "Account Status" of "97 – Unpaid balance reported as a loss (charge-off) without reference to a specific charge-off date, except for updating (i) the Scheduled Monthly Payment field from a blank field to a zero-dollar entry, (ii) the Date of First Delinquency from 8-1-21 to 8-11-21, and (iii) the Account History grid to reflect the accurate delinquency history which preceded the account's charge-off, in the ACDV's "Response [or Resp.] Data" fields. *See* ACDV annexed to D. Rivera Decl. as Ex. D, at CHASE-000171 to CHASE-000173, and D. Rivera Decl. at ¶19.

Dated: October 20, 2026

Respectfully submitted,

/s/Christopher B. Turcotte

Christopher B. Turcotte
TURCOTTE LAW, P.C.
641 Lexington Avenue, 15th Floor
New York, New York 10022
(212) 937-8499
cturcotte@cbtlaw.com

*Attorneys for Defendant JPMorgan Chase Bank, N.A.*