UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PHILIP GOLDSON,<br><br>Plaintiff,<br><br>-against-<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>Defendant. | Case No. 2:24-cv-10869-SDW-JRA<br><br>Hon. Susan D. Wigenton<br><br>Motion Day: December 21, 2026<br><br>ORAL ARGUMENT REQUESTED |

# MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED.R.CIV.P. 56

On Memorandum:

Christopher B. Turcotte, Esq.

TURCOTTE LAW, P.C.
641 Lexington Avenue, 15th Floor
New York, New York 10022
(212) 937-8499
*Attorneys for Defendant JPMorgan Chase Bank, N.A.*

# TABLE OF CONTENTS


TABLE OF AUTHORITIES (iii)

PRELIMINARY STATEMENT 1

PROCEDURAL HISTORY 2

STATEMENT OF FACTS 2

LEGAL ARGUMENT

**POINT I**

STANDARD OF REVIEW 3

A. Standard for Motion for Summary Judgment 3

B. Standards for FCRA Violation Claim 4

**POINT II**

PLAINTIFF FAILS TO PROVE THE EXISTENCE OF A FACTUAL INACCURACY 6

A. The Record Demonstrates that Chase Furnished the Account's Date of Last Payment 10

B. The Record Establishes that Chase Did Not Report a Charge-Off Date for Plaintiff's Account Because It Is Not a Recognized Metro 2 Field 11

C. Plaintiff's Claim of Other "Incomplete Information" Is Illusory 16

**POINT III**

PLAINTIFF HAS NOT ESTABLISHED THAT CHASE FAILED TO REASONABLY INVESTIGATE HIS DISPUTE 20

**POINT IV**

CHASE'S COUNTERCLAIM SHOULD BE GRANTED AND A JUDGMENT AWARDED IN ITS FAVOR FOR THE AMOUNT OF PLAINTIFF'S CHARGED OFF CREDIT CARD DEBT 23

CONCLUSION 25

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)……...………………………... 3

*Artemov v. TransUnion, LLC*, 2020 WL 5211068 (E.D.N.Y. Sept. 1, 2020)…..... 19

*Bibbs v. Trans Union LLC*, 43 F.4th 331 (3d Cir. 2022) ………..……………..… 8

*Burrell v. DFS Services, LLC*, 753 F.Supp.2d 438 (D.N.J. 2010)......................…... 4, 5

*Capital Funding v. Chase Manhattan Bank USA,*
191 Fed.Appx. 92 (3d Cir. 2006) …………...………..………………… 12-13

*Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ……...………………………… 3

*Chiang v. Verizon New England Inc.*, 595 F.3d 26 (1st Cir. 2010)……………..… 7-8

*Covington v. Equifax Information Services, Inc.*,
2019 WL 4254375 (D.N.J. Sept. 9, 2019)……………………………..…..… 7

*Cushman v. Trans Union Corp.*, 115 F.3d 220 (3d Cir. 1997) ……………..……..… 9

*Esperance v. Diamond Resorts*, 2022 WL 1718039 (D.N.J. May 27, 2022) …......…6

*Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305 (11th Cir. 2018) ……………...… 21

*Frederick v. Capital One Bank (USA), N.A.*,
2018 WL 1583289 (S.D.N.Y. Mar. 27, 2018) ……………………………… 5-6

*Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147 (9th Cir. 2009)…..….…… 22

*Gross v. CitiMortgage, Inc.*, 33 F.4th 1246 (9th Cir. 2022) ……………...……….… 8-9

*Hill v. Equifax Info. Servs., LLC*, 2013 WL 6241043 (M.D.N.C. Dec. 3, 2013)… 18

*Holland v. Trans Union LLC*, 2021 WL 5804375 (E.D. Pa. 2021) …………… 7, 18

*Huebner v. Olum's of Binghamton, Inc.*,
2008 WL 11504869 (N.D.N.Y. Feb. 28, 2008) …………………….……..… 23

*In re Ditech Holding Corp.*,
2024 WL 313300 (S.D.N.Y. Bankr. Jan. 26, 2024).........................……... 18

*Johns v. Nelnet,* 2026 WL 914621 (E.D. Pa. Mar. 31, 2026) .................................…6

*Krausz v. Equifax Info. Servs., LLC*,
2023 WL 1993886 (S.D.N.Y. Feb. 14, 2023) …............................….…… 8

*Lamando v. Rocket Mortgage*, 2024 WL 264034 (N.D.N.Y. Jan. 24, 2024) …….18

*Matheson v. Ocwen Federal Bank FSB*,
2008 WL 11413560 (E.D.N.Y. June 17, 2008) ………………………..….... 7

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) …. 3

*Milgram v. JPMorgan Chase Bank, N.A.*,
2021 WL 6755283 (S.D. Fl. Dec. 30, 2021) …………………..…………. 22

*Obarski v. United Recovery Systems, LP*,
2015 WL 179402 (D.N.J. Jan. 13, 2015) …………...…………..………. 4

*Ostreicher v. Chase Bank USA, N.A.*,
2020 WL 6809059 (S.D.N.Y. Nov. 19, 2020) ……..…………...……….... 7

*Owoyemi v. Credit Corp Solutions Inc.*,
677 F.Supp.3d 285 (S.D.N.Y. 2023) ..........................................…… 5, 9

*Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619 (6th Cir. 2018)…….….…….. 7, 8

*Rosenberg v. Equifax Information Services LLC*,
2020 WL 4253063 (D.N.J. July 16, 2020) …………………...………..… 9, 22

*Safeco Ins. Co. v. Burr*, 551 U.S. 47 (2007)……….……………………………...4

*Scarbo v. Wisdom Fin.*, 2022 WL 309161 (E.D. Pa. Feb. 2, 2022),
*aff'd*, 2022 WL 16829371 (3d Cir. Nov. 9, 2022) ……......……...……. 5, 21

*Scott v. JPMorgan Chase Bank, N.A.*,
2026 WL 2453513 (E.D.N.Y. Aug. 21, 2026) ..………………………. 17-18

*Seamans v. Temple University*, 744 F.3d 853 (3d Cir. 2014) ……………...…..… 6

*Serfess v. Equifax Credit Information Services, LLC*,
2016 WL 4498363 (D.N.J. Aug. 24, 2016)……..………...………………. 5

*Seror v. Equifax,* 2019 WL 13396463 (D.N.J. July 8, 2019) ………...….….. 14, 17

*Severini v. Pa. Higher Education Assistance Agency*,

2020 WL 1467396 (S.D.N.Y. Mar. 25, 2020) ………………………...… 22-23

*Shaw v. Equifax Info. Solutions, Inc.*,

204 F.Supp.3d 956 (E.D. Mich. 2016) ………………………………..… 14, 17

*Shimon v. Equifax Info. Servs. LLC*, 994 F.3d 88 (2d Cir. 2021) ………………..… 8

*Simms Parris v. Countrywide Financial Corp*., 652 F.3d 355 (3d Cir. 2011)......... 5

*Sosa v. Greater Alliance Federal Credit Union,*

2024 WL 3912955 (D.N.J. Aug. 23, 2024) ………………...……….…..... 20

*Suluki v. Credit One Bank, NA*, 666 F.Supp.3d 403 (S.D.N.Y. 2023),

*aff'd*, 138 F.4th 709 (2d Cir. 2025) …………………………..……...… 9, 20-21

*Tauro v. Capital One Financial Corp.*,

684 Fed.Appx. 240 (3d Cir. Mar. 28, 2017) ………………………...… 8, 20

*Timms v. USAA Fed. Sav. Bank*,

2020 WL 12618897 (D.S.C. Aug. 20, 2020) ………………..………… 20-21

*Tutanji v. Bank of America*, 2012 WL 1964507 (D.N.J. May 31, 2012)........... 4, 5

*Warren v. Mariner Finance, LLC*,

2020 WL 4676658 (W.D.N.Y. Aug. 12, 2020),

*aff'd*, 2021 WL 5232253 (2d Cir. Nov. 10, 2021) ………………..………… 6

*Westra v. Credit Control of Pinellas*, 409 F.3d 825 (7th Cir. 2005) …..…………….. 6

*Whelan v. Trans Union Credit Reporting Agency*,

862 F.Supp. 824 (E.D.N.Y. 1994)….……………………………...……….. 7

*Williams v. Experian Info. Sols., Inc.*,

2016 WL 3466089 (D.N.J. June 21, 2026) ……………………………..…….. 9

## Statutes

15 U.S.C. § 1681s-2........................................................................................ 1, 4, 5, 11, 16

12 C.F.R. § 1022............................................................................................................ 18

## Treatises

Chi Chi Wu & Elizabeth De Armond, Fair Credit Reporting (7th ed. 2010)…...... 18

## PRELIMINARY STATEMENT

The material facts in this case are not in dispute. In or about October 2019, plaintiff Philip Goldson ("Plaintiff" or "Goldson"), as a member of Jayhairbigga LLC, opened a business credit card account with defendant JPMorgan Chase Bank, N.A. ("Chase") ending in 2315 (the "2315 Account"). Following the 2315 Account's charge-off on March 31, 2022, Plaintiff submitted disputes to the credit reporting agencies contending that the account's charge-off date was misreported as "April 2022" rather than March 31, 2022 and the 2315 Account's reporting failed to identify the date of last payment. Plaintiff claims in this lawsuit that Chase failed to investigate these disputes and correct this information in violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 *et seq*.

However, the record of this case belies such claims, or that Chase committed any act in violation of the FCRA. First, not only do each of Chase's responses to Plaintiff's disputes identify the 2315 Account's correct date of last payment but the only credit reports produced by Plaintiff in this litigation plainly identify the date of late payment. Second, the record is clear that furnishers like Chase do not report a charge-off date to the credit reporting agencies but, instead, furnish the account's Account Status (here, charge-off) as of the month of reporting without a specific charge-off date.

Finally, the record establishes that Plaintiff opened the 2315 Account, the business card agreement ("BCA") governing the account provides that he is personally liable for the account's balance, and the account charged off with an outstanding balance of $38,238.76, which remains due and owing. Accordingly, pursuant to the BCA, Chase is entitled to an award in this amount, together with reasonable attorney's fees, on its counterclaim.

## PROCEDURAL HISTORY

On December 2, 2024, Plaintiff commenced the instant action, asserting a single cause of action against Chase for allegedly failing to conduct a reasonable investigation of his dispute of Chase's allegedly inaccurate reporting of the 2315 Account in violation of 15 U.S.C. 1681s-2(b). *See* ECF No. 1.

On January 13, 2025, Chase filed its timely Answer and Affirmative Defenses to the Complaint. *See* ECF No. 7. On January 22, 2025, Chase filed its Amended Answer, Affirmative Defenses and Counterclaim pursuant to Fed.R.Civ.P. 15(a)(1). *See* ECF No. 8. On April 30, 2025, Plaintiff filed his Answer to Chase's Counterclaim. *See* ECF No. 12.

## STATEMENT OF FACTS

Defendant respectfully refers the Court to its separately filed Statement of Material Facts (hereinafter "SOMF").

# LEGAL ARGUMENT

## POINT I

## STANDARDS OF REVIEW

### A. Standard for Motion for Summary Judgment

Chase is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To withstand summary judgment, a plaintiff must "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). Unsupported assertions, bare allegations, or speculation will not defeat summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

Here, the underlying material facts are undisputed and, because Plaintiff cannot demonstrate a factual inaccuracy of the 2315 Account's reporting, summary judgment should be granted in favor of Chase and against Goldson. Further, because there is no dispute that Plaintiff opened the 2315 Account, agreed to be liable for the account's debt, and defaulted on the account's debt, summary judgment should be granted on Chase's counterclaim and, pursuant to the BCA's governing terms and

conditions, it should be awarded a judgment in the amount of the account's $38,238.76 balance, together with reasonable attorney's fees and costs.

**B. <u>Standards for FCRA Violation Claim</u>**

The purpose of the FCRA is "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 52 (2007)). Under § 1681s-2, the FCRA bars "furnishers of information" from reporting inaccurate consumer-credit information. *Burrell v. DFS Services, LLC*, 753 F.Supp.2d 438, 446 (D.N.J. 2010). To comply, a furnisher must provide credit reporting agencies with ***accurate*** information about consumers. *Id.* (citing 15 U.S.C. § 1681s–2). The FCRA also defines a process by which a consumer can file a dispute with a credit reporting agency thereby triggering a duty for the agency to forward the dispute to the furnisher and request that the furnisher respond accordingly. *Id.* at 445-46; *see also Obarski v. United Recovery Systems, LP*, 2015 WL 179402, at *2 (D.N.J. Jan. 13, 2015); *Tutanji v. Bank of America*, 2012 WL 1964507, at *4-5 (D.N.J. May 31, 2012).

When a credit reporting agency forwards consumer disputes to the furnisher, the FCRA requires the furnisher to (1) conduct an investigation; (2) review any information provided by the consumer reporting agency; (3) report the results of the investigation to the consumer reporting agency; (4) report any inaccuracies to all

consumer reporting agencies which may have received inaccurate information, and (5) correct any inaccuracies in the information it provides. *Id.* at *4-5 (citing 15 U.S.C. § 1681s–2(b));[1] *Burrell*, 753 F.Supp.2d at 447 (same). A furnisher's failure to conduct a "reasonable" investigation and comply with these requirements may give rise to a private cause of action. *Serfess v. Equifax Credit Information Services, LLC*, 2016 WL 4498363, at *4 (D.N.J. Aug. 24, 2016).

"What constitutes reasonableness [of an investigation] is viewed in light of what the furnisher learned about the nature of the dispute from the description of the [credit reporting agency]'s notice of dispute." *Owoyemi v. Credit Corp Solutions Inc.*, 677 F.Supp.3d 285, 299 (S.D.N.Y. 2023)(citation omitted); *Frederick v. Capital*

---

[1] It is well established that the FCRA does not permit a private cause of action arising from a creditor's failure to furnish accurate information to credit reporting agencies and investigate same under 15 U.S.C. §1681s-2(a), limiting the enforcement of this subsection to government agencies and officials in accordance with subsection (d). *Simms Parris v. Countrywide Financial Corp*., 652 F.3d 355, 358 (3d Cir. 2011); *Tutanji v. Bank of America*, 2012 WL 1964507, at *4 (D.N.J. May 31, 2012); *Burrell v. DFS Services, LLC*, 753 F.Supp.2d 438, 445 (D.N.J. 2010); Section 1681s-2(d), titled "Limitation on enforcement", provides that "[Subsection (a) of this section] shall be enforced exclusively as provided under section 1681s of this title by the Federal agencies and officials and the State officials identified in 1681s of this title." Even presuming for purposes of this motion that Plaintiff's allegations concerning his credit reporting are true, because the FCRA does not provide litigants with a private cause of action arising from such conduct, Plaintiff cannot, as a matter of law, pursue a claim under the FCRA for inaccurate reporting relative to his account. *Tutanji*, *supra*, at *4 ("no private right of action exists to establish civil liability under §1681s-2(a)"); *Burrell*, *supra*, at 445 (§1681s-2(a) "explicitly prohibits private individuals from bringing suit to enjoin their creditors from submitting [reports with inaccurate information] ... that obligation [is] to be enforced exclusively by government entities").

*One Bank (USA), N.A.*, 2018 WL 1583289, at *7 (S.D.N.Y. Mar. 27, 2018) (same). *See also Seamans v. Temple University*, 744 F.3d 853, 865 (3d Cir. 2014) (holding that "where a given notice contains only scant or vague allegations of inaccuracy, a more limited investigation may be warranted"); *Johns v. Nelnet*, 2026 WL 914621, at *25 (E.D. Pa. Mar. 31, 2026) (granting summary judgment to defendant furnisher and CRAs, the court held that "[t]he reasonableness of Defendants' investigations and reinvestigations must be grounded in the information they received"); *Esperance v. Diamond Resorts*, 2022 WL 1718039, at *5 (D.N.J. May 27, 2022) ("[w]hen assessing the reasonableness of an investigation, a factfinder should consider the furnisher's investigation 'as it relates to the content of the notice of dispute sent by the CRA to the furnisher'") (quoting *Seamans*, 744 F.3d at 865); *Warren v. Mariner Finance, LLC*, 2020 WL 4676658, at *4 (W.D.N.Y. Aug. 12, 2020)("a furnisher is required to investigate only issues specifically raised by consumers and relayed to the furnisher by the credit reporting agency"), *aff'd*, 2021 WL 5232253 (2d Cir. Nov. 10, 2021) (citing *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005)).

## POINT II

## PLAINTIFF FAILS TO PROVE THE EXISTENCE OF A FACTUAL INACCURACY

Because Chase did not furnish inaccurate information to the credit reporting agencies ("CRAs"), Plaintiff's FCRA claim fails as a matter of law.

Inaccuracy is an essential element of an FCRA claim. *See*, *e.g.*, *Scarbo v. Wisdom Fin.*, 2022 WL 309161, at *6 (E.D. Pa. Feb. 2, 2022) ("[a]s a threshold matter, the consumer must establish that the furnished information is inaccurate"), *aff'd*, 2022 WL 16829371 (3d Cir. Nov. 9, 2022); *Holland v. Trans Union LLC*, 2021 WL 5804375, at *7 (E.D. Pa. 2021) ("§ 1681s-2 would be nonsensical if a plaintiff could make a claim against a furnisher that it failed to investigate accurate information"); *Ostreicher v. Chase Bank USA, N.A.*, 2020 WL 6809059, at *5 (S.D.N.Y. Nov. 19, 2020) (dismissing FCRA action against Chase, court held "[p]laintiff has failed to make the threshold showing that the challenged credit information is incomplete or inaccurate"); *Covington v. Equifax Information Services, Inc.*, 2019 WL 4254375, at *2, 4 (D.N.J. Sept. 9, 2019); *Matheson v. Ocwen Federal Bank FSB*, 2008 WL 11413560, at *8 (E.D.N.Y. June 17, 2008)("[a] prerequisite to any successful [FCRA] claim is, obviously, the ability of [plaintiff] to offer proof that the information [the furnisher] reported was inaccurate"); *Whelan v. Trans Union Credit Reporting Agency*, 862 F.Supp. 824, 829 (E.D.N.Y. 1994)("the 'threshold question' is whether the challenged credit information is accurate"); *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 628-29 (6th Cir. 2018)("a threshold showing of inaccuracy or incompleteness is necessary in order to succeed on a claim under § 1681s-2(b)"); *Chiang v. Verizon New England Inc.*, 595 F.3d 26,

37 (1st Cir. 2010)(absent a showing of actual inaccuracy on a reinvestigation, a plaintiff's claim against a furnisher of information fails as a matter of law).

To meet this threshold showing, a plaintiff must show that the information provided is patently false or creates a materially misleading impression. *Bibbs v. Trans Union LLC*, 43 F.4th 331, 342-43 (3d Cir. 2022); *Pittman*, 901 F.3d at 630; *see also Shimon v. Equifax Info. Servs. LLC*, 994 F.3d 88, 91 (2d Cir. 2021)(a "credit report is inaccurate either when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect").

Conclusory allegations that a report is inaccurate or misleading are insufficient. *Tauro v. Capital One Financial Corp.*, 684 Fed.Appx. 240, 242 (3d Cir. Mar. 28, 2017). To be an actionable inaccuracy, "mere imprecision is not enough" but rather "a plaintiff must establish that the information provided … is open to interpretation that is directly contradictory to the true information." *Krausz v. Equifax Info. Servs., LLC*, 2023 WL 1993886, at *22 (S.D.N.Y. Feb. 14, 2023).

Importantly, the absence of a demonstrated inaccuracy obviates the need as a matter of law to consider whether a furnisher conducted a reasonable investigation. *See, e.g.*, *Bibbs v. Trans Union LLC*, 43 F.4th 331, 339 (3d Cir. 2022) ("absent any indication that the information is inaccurate, the statute does not mandate further investigation") (citation omitted)); *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1251 (9th Cir. 2022)("if there is no inaccuracy, then the reasonableness of the [furnisher's

FCRA] investigation is not in play"); *Suluki v. Credit One Bank, NA*, 666 F.Supp.3d 403, 410, 412 (S.D.N.Y. 2023)(same, quoting *Gross*, and, in dismissing the FCRA claim against the bank, the court held that given plaintiff's failure to prove furnisher's reporting "was inaccurate as a matter of law … the reasonableness of [furnisher's] investigation would be moot"), *aff'd*, 138 F.4th 709 (2d Cir. 2025); *Owoyemi v. Credit Corp. Solutions, Inc.*, 677 F.Supp.3d 285, 296 (S.D.N.Y. 2023)("A prerequisite for any FCRA claim is that the challenged credit information is incomplete or inaccurate… This order of proof makes sense: [I]f there is no inaccuracy, then the reasonableness of the investigation is not in play")(quoting *Suluki*); *Rosenberg v. Equifax Information Services LLC*, 2020 WL 4253063, at *3 (D.N.J. July 16, 2020)("'[o]nce a [c]ourt determines that the credit items that were reported are factually accurate, the analysis under the FCRA may cease,' and the Court need not assess the reasonableness of the defendant's investigation procedures")(quoting *Williams v. Experian Info. Sols., Inc.*, 2016 WL 3466089, at *3 (D.N.J. June 21, 2016); citing *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997)).

Here, the Complaint fails to identify any actionable, factual inaccuracy. Instead, Plaintiff's claim is premised upon the meritless argument that Chase in its reporting to the CRAs (i) failed to identify the account's date of last payment, and (ii) furnished an inaccurate charge-off date.

## A. The Record Demonstrates that Chase Furnished the Account's Date of Last Payment

The Complaint alleges that Chase "failed to report [the account's] date of last payment" in its furnishing of credit data to the CRAs, with such omission continuing to exist on Plaintiff's credit reports as a result of Chase's failure to conduct a reasonable investigation in violation of 15 U.S.C. 1681s-2(b). *See* Complaint annexed to Declaration of Christopher B. Turcotte dated October 20, 2026 ("Turcotte Decl.") as Ex 5, at ¶¶12-13, 21. This claim is belied by the record.

First, of the only two credit reports produced by Plaintiff in this litigation – an excerpted TransUnion investigative report dated July 23, 2024 attached to the Complaint (ECF No. 1-2, Page 3 of 3) and a complete TransUnion investigative report dated November 5, 2024 (*see* Ex. 8 to Turcotte Decl.) – each provides the tradeline of Plaintiff's Chase account and they expressly state that the date of the "Last Payment Made" is October 15, 2021, a date which is not in dispute. *See* SOMF, at ¶12.

Second, each of Chase's Response Data fields to Plaintiff's disputes, as received by Chase from the CRAs in the form of an Automated Consumer Dispute Verification ("ACDV"), confirms that it furnished an October 15, 2021 date of last payment:

- *See* November-December 2021 ACDVs annexed to Declaration of David Rivera dated October 15, 2026 ("D. Rivera Decl.") as Ex. E, at CHASE-

000143, CHASE-000146, CHASE-00149, CHASE-000152, CHASE-000155;

- *See* May 2022 ACDV annexed to D. Rivera Decl. as Ex. F, at CHASE-000160;

- *See* March 2023 ACDV annexed to D. Rivera Decl. as Ex. G, at CHASE-000163;

- *See* July-October 2024 ACDVs annexed to D. Rivera Decl. as Ex. H, at CHASE-000166, CHASE-000169, CHASE-000172.

*See also* SOMF, at ¶¶12, 35.

In sum, the record shows that Chase at all times furnished the October 15, 2021 date of last payment and, in the only CRA-generated reports produced by Plaintiff, the credit bureau TransUnion reported this date as well.

B. The Record Establishes that Chase Did Not Report a Charge-Off Date for Plaintiff's Account Because It Is Not a Recognized Metro 2 Field

The Complaint alleges that Chase "failed to correct [the account's] charge-off date" in its furnishing of credit data to the CRAs, with such omission continuing to exist on Plaintiff's credit reports as a result of Chase's failure to conduct a reasonable investigation in violation of 15 U.S.C. 1681s-2(b). *See* Complaint annexed to Turcotte Decl. as Ex. 5, at ¶¶12-13, 21. Because the record establishes that Chase does not, and in fact cannot, furnish the account's charge-off date to the CRAs given it is not a recognized reporting field, the premise that an inaccurate charge-off date was published, or that Chase failed to correct it, is wrong on its face.

In October 2019, Plaintiff opened a Chase Ink business credit card account ending in 2315 in his name and that of his business, Jayhairbigga LLC (the "2315 Account"). *See* SOMF, at ¶1. Chase ceased receiving the necessary minimum payments beginning in July 2021, with the last payment posting to the 2315 Account on October 15, 2021. *Id.* at ¶12. The 2315 Account eventually charged off on March 31, 2022, with a balance owing of $38,238.76, which remains unpaid. *Id.* at ¶13. By letter to Plaintiff dated August 9, 2024, Chase confirmed that the 2315 Account charged off on March 31, 2022. *Id.* at ¶38.

Subsequent to the 2315 Account's charge off, Plaintiff submitted disputes to TransUnion contending that his credit reports inaccurately reported the "charge-off date" as "April 2022" and, by extension, Chase failed to correct this "charge-off date" to reflect the March 31, 2022 date. *See* SOMF, at ¶¶27, 44. However, as the record establishes, this is a factual impossibility because furnishers like Chase do not have the ability to communicate the specific charge-off date to the CRAs.[2] *See* SOMF, at ¶¶31-32; *see also Capital Funding v. Chase Manhattan Bank USA*, 191

[2] As both Plaintiff's and Chase's experts recognize, the Metro 2® Format, developed by the Consumer Data Industry Association ("CDIA"), is the industry standard used by information furnishers when reporting consumer credit account information to the nationwide consumer reporting agencies vis-à-vis ACDVs. *See* SOMF, at ¶¶16, 30 (quoting Alban Expert Report annexed to Turcotte Decl. as Ex. 2, at ¶66, and Ulzheimer Expert Report annexed to Turcotte Decl. as Ex. 4, at 7 ["[t]he Metro 2 language represents the entire universe of codes and characters which furnishers can choose from and use to populate the [ACDV's] data fields defined by the credit reporting agencies"]).

Fed.Appx. 92, 95, 97 (3d Cir. 2006) (noting a TransUnion affidavit in which the CRA states it "does not have a field representing a charge off date").

Instead, upon receipt of Plaintiff's post-charge off disputes (ACDVs) from a CRA, Chase identified in its ACDV response an "Account Status" of "97 – Unpaid balance reported as a loss (charge-off)" without reference to a specific charge-off date. Such reporting is originally transmitted to the CRAs at the time of the 2315 Account's *next cycle date following the charge-off* (here, April 2022), wherein, in addition to identifying the Account Status as "charge off" without the charge-off date, the "Account History" field on the ACDV identified a charge-off code (an "L") in the April 2022 box because the April 2022 reporting period is the first time the 2315 Account is being reported as charged off. *See* SOMF, at ¶¶31-32.

Plaintiff mistakenly assumes that because Chase reported his Account Status as "charge off" as of April 2022, it was necessarily reporting that the account specifically had charged off on a particular date in that month. That is inaccurate and untethered from the actual reporting. Under Plaintiff's flawed theory, the fact that the Account Status reported in subsequent months on the ACDVs' Account History field/grid as also being "charge-off" would suggest the account was specifically charged off on a date during one of *those* months. That is obviously nonsensical and

lays bare the fallacy of his assertion.[3] *Cf. Seror v. Equifax*, 2019 WL 13396463, at *3 (D.N.J. July 8, 2019) (court dismissed FCRA claim against bank furnishing account's charged off status on an ongoing monthly basis, finding "because Plaintiff has failed to identify a factual inaccuracy in his credit report, he has not alleged a proper basis upon which to impose FCRA liability") (citing *Shaw v. Equifax Info. Solutions, Inc*., 204 F.Supp.3d 956, 960 (E.D. Mich. 2016) (holding that plaintiff failed to assert a cognizable claim under the FCRA, notwithstanding the fact that her account was repeatedly reported as "charged off … over a 7-8 month period").

Both Robert Wilkins, a Chase Vice President/Business Analysis Manager with Credit Bureau Operations (CBO) who has managed all of its domestic credit bureau dispute teams, and Chase's David Rivera, an Account Manager II with CBO, confirm that Chase does not a furnish a "charge-off date" to the CRAs because, consistent with Metro 2 procedure, there is no means, including any field on the ACDV, of transmitting such information to a CRA. *See* SOMF, at ¶¶31-32. This limitation is confirmed by Chase's expert, John Ulzheimer, himself a former employee and/or contractor for Experian and Equifax who has worked in the consumer credit industry

---

[3] As previously noted, even the TransUnion investigative reports dated July 23, 2024 and November 5, 2024, annexed to the Complaint and produced by Plaintiff in discovery, respectively, do not support Plaintiff's claim that Chase is misreporting a "charge-off date." Rather, the tradeline on the report states that his Chase account began reporting as a charge off ("C/O") in April 2022. There is no reference to a specific "charge off date" in the TransUnion reports. *See* SOMF, at ¶37.

since 1991, who corroborates that Chase's April 2022 reporting of the charge-off met industry standards and "a charge-off date cannot be validly disputed, as it is not on a credit report to begin with, and it cannot be added to a credit report, as there is no systematic method of doing so." *Id.* at ¶31 (quoting Ulzheimer Expert Report annexed to Turcotte Decl.as Ex. 4, at 23).[4]

In sum, Chase never furnished a charge-off date to TransUnion or the other CRAs and, because no recognized ACDV field exists for a "charge-off date," it had no ability to furnish one.

[4] For his part, Plaintiff's expert, Alvaro Alban, does not dispute the Chase followed the proper reporting procedure. Rather, despite his recognizing Metro 2® Format as the recognized industry standard for the transmission of credit data between furnishers and CRAs [SOMF, at ¶30], and, as relevant here, the issue of whether the "charge-off date" is an established Metro 2 field on the ACDV being the fulcrum of Plaintiff's credit reporting claim, Plaintiff's expert declines to offer an opinion on this point. *See* SOMF, at ¶33 (quoting Alban Report annexed to Turcotte Decl. as Ex. 2, at ¶¶66 and 69 ("Chase subsequently explained that April 2022 represented the first full month during which the account was in a charged-off status. Whether that reporting methodology is consistent with Metro 2 reporting guidance depends upon the specific Metro 2 data field being reported and the reporting instructions applicable to that field. Accordingly, I do not offer a field-by-field opinion that every Metro 2 data element furnished by Chase violated a specific Metro 2 instruction.") In addition to his evidently being a medical doctor, board-certified in emergency medicine (https://westcoastexpertwitness.com/about/), Dr. Alban's *curriculum vitae* states that he has been a managing partner of laser tattoo and scar restoration LLCs in addition to an urgent care practice for the last 20 years but does not show his having any relevant professional experience in the credit reporting industry. *See* true and correct copy of Alban *Curriculum Vitae* annexed to Turcotte Decl. as Ex. 2.

C. Plaintiff's Claim of Other "Incomplete Information" Is Illusory

Finally, the Complaint alleges that Chase "failed to provide complete account information" in its furnishing of credit data to the CRAs, and that "incomplete information" continued to be furnished on Plaintiff's credit reports as a result of Chase's failure to conduct a reasonable investigation in violation of 15 U.S.C. 1681s-2(b). *See* Complaint annexed to Turcotte Decl. as Ex. 5, at ¶¶12-13, 21.

In addition to the Complaint being non-descript in terms of the allegedly "incomplete information," Plaintiff was equally vague and ambiguous at his deposition when asked for detail, repeatedly describing the alleged incomplete information as "self-explanatory" without elaboration. *See* Goldson Tr. annexed to Turcotte Decl. as Ex. 1, at 25:3-27:25.

Beyond baseless "date of last payment" and "charge-off date" issues, the only other credit reporting issues found in the record, as fleetingly raised in Plaintiff's October 23, 2024 letter to TransUnion, is (i) "'unknown' payment history from May 2022 to July 2023," (ii) "charge-off status from August 2023 to July 2024," and (iii) "missing last payment amount." *See* true and correct 10-23-24 Letter from Plaintiff to TransUnion annexed to D. Rivera Decl. as Ex. J; SOMF, at ¶44.

First, with respect to Plaintiff's questioning information concerning the payment history from May 2022 to July 2023, following the designation of the charge-off for April 2022 (denoted by the code entry "L" on ACDV's Account

History field), because there was no subsequent account activity for the charged-off account (*i.e*., no payment was received), the ACDV responses designated a "D" in the Account History field for the months May 2022 to July 2023, indicating "no payment history reported/available for the month," to reflect the no-change status quo. *See* D. Rivera Decl., at ¶19; *Shaw*, 204 F.Supp.3d at 961 (granting summary judgment, court held that use of "D" code in place of "L" charge-off code is not misleading and plaintiff's argument to contrary is "only [plaintiff's] opinion" and "insufficient to support a claim of inaccuracy under the FCRA") (citations omitted). *See also Seror v. Equifax*, 2019 WL 13396463, at *3 (D.N.J. July 8, 2019) ("[p]laintiff's mere reliance upon his own subjective beliefs, without alleging an adequate basis to support that his credit reporting contains a factual inaccuracy is fatal to his FCRA claim").

To the extent Plaintiff is suggesting Chase furnished incomplete or inaccurate information by not reporting Plaintiff's payment history during a period when no payments were made,[5] this position is not only wrong as a matter of law but Plaintiff fails to allege how Chase's omission of ostensibly additional payment (or, as relevant here, *non-payment*) history made the reports inaccurate or incomplete. The mere omission of payment data does not qualify as an inaccuracy because "[t]he FCRA is

---

[5] Plaintiff does not dispute that he made no payments after October 15, 2021 and the charged off amount remains unpaid. *See* SOMF, at ¶¶12-13.

voluntary" and does not require creditors to report complete payment histories. *Scott v. JPMorgan Chase Bank, N.A.*, 2026 WL 2453513, at *5 (E.D.N.Y. Aug. 21, 2026) (citing *In re Ditech Holding Corp.*, 2024 WL 313300, at *10 (S.D.N.Y. Bankr. Jan 26, 2024) (the FCRA "does not impose upon information furnishers any affirmative duty to report consumer information to [consumer reporting agencies]"); *Hill v. Equifax Info. Servs., LLC*, 2013 WL 6241043, at *3 (M.D.N.C. Dec. 3, 2013) ("[Section 1681s-2(b)] does not apply to situations where a consumer's credit report lacks positive information that the consumer would like to be reported") (citing Chi Chi Wu & Elizabeth De Armond, Fair Credit Reporting §§ 1.4.6, 6.1.1 (7th ed. 2010); 12 C.F.R. § 1022, app. E (not requiring the provision of all positive account history)). Moreover, "as a matter of law, the Court's task is to consider whether the information is inaccurate or misleading, not to look for ways that the information might be *more accurate*." *Lamando v. Rocket Mortgage*, 2024 WL 264034, at *8 (N.D.N.Y. Jan. 24, 2024) (emphasis in original) (quoting *Holland v. TransUnion LLC*, 574 F. Supp. 3d 292, 300 (E.D. Pa. 2021)).

The Complaint does not cite to any legal authority that supports the contention that furnishers are required to provide a consumer's complete payment history. *See Lamando*, 2024 WL 264034, at *8 ("Perhaps a report reflecting continued payment, without creditors requiring the payment, might be more inclusive and all-encompassing of the reality of Plaintiff's situation, but it is not required by law.").

Furthermore, Plaintiff has made no factual allegations as to what payment history was allegedly excluded such that his credit report was misleading to the extent that it adversely affected credit decisions. *See Artemov v. TransUnion, LLC*, 2020 WL 5211068, at *6 (E.D.N.Y. Sept. 1, 2020).

Similarly, relative to Plaintiff's questioning the "charge-off status from August 2023 to July 2024," the 2315 Account's charge-off status has not changed since it first reported as charged off by the CRAs in April 2022. Accordingly, Chase has consistently identified the 2315 Account's Account Status as "97 – Unpaid balance reported as a loss (charge-off)" on all post-charge off ACDVs. *See* Exs. F, G and H to D. Rivera Decl., at CHASE-000159, CHASE-000162, and CHASE-000165. CHASE-000168, and CHASE-000171.

Finally, like the "charge-off date," there is no recognized ACDV field by which a furnisher can report a "last payment amount." *See* D. Rivera Decl., at ¶27, and ACDVs annexed to D. Rivera Decl. as Exs. E, F, G, and H referenced therein (which lack a "last payment amount" field).

But equally important, the record shows that Chase performed a comprehensive investigation of Plaintiff's October 2024 dispute, with Chase's corresponding C3 account notes confirming it reviewed and verified the 2315 Account's account status, payment rating, balance, date opened, date of last payment and/or date closed, amount past due, date of first delinquency, and account history

data – and despite correctly validating the charge-off, it made appropriate updates to the scheduled month payment, date of first delinquency, and account history fields. *See* SOMF, at ¶¶45-46.

In sum, Plaintiff cannot identify a single factual inaccuracy reported by Chase to the CRAs which was patently false or materially misleading and could give rise to a FCRA violation.

**POINT III**

**PLAINTIFF HAS NOT ESTABLISHED THAT CHASE FAILED TO REASONABLY INVESTIGATE HIS DISPUTE**

Even in the absence of a factual inaccuracy which would necessitate an investigation of the dispute, Plaintiff offers no evidence to support his claim that Chase failed to perform a reasonable investigation of his credit reporting disputes but instead only takes issue with the investigation's outcome, which in significant part validated the 2315 Account's debt.

The burden of demonstrating the investigation was unreasonable rests on the plaintiff. *See Tauro*, 684 Fed.Appx. at 243; *Sosa v. Greater Alliance Federal Credit Union*, 2024 WL 3912955, at *5 (D.N.J. Aug. 23, 2024). The plaintiff must establish that had the defendant furnisher performed a reasonable investigation, the results would have been different insofar as the furnisher would have discovered the information was inaccurate. *Id.* (citing *Suluki v. Credit One Bank, N.A.*, 666 F. Supp. 3d 403, 412 (S.D.N.Y. 2023); *Timms v. USAA Fed. Sav. Bank*, 2020 WL 12618897,

at *9, 11 (D.S.C. Aug. 20, 2020)). *See also Suluki v. Credit One Bank, N.A.*, 138 F.4th 709, 721 (2d Cir. 2025) ("the burden remained on the plaintiff to "demonstrate that *had* the furnisher conducted a reasonable investigation, the result would have been different, *i.e.*, that the furnisher would have discovered that the information it reported was inaccurate or incomplete. Without such a showing, 'a plaintiff's claim against the furnisher necessarily fails, as the plaintiff would be unable to demonstrate any injury from the allegedly deficient investigation'") (quoting *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1313 (11th Cir. 2018)); *Scarbo v. Wisdom Financial*, 2022 WL 16829371, at *3 (3d Cir. Nov. 9, 2022)("[t]o the extent that [plaintiff] claims that the investigations were unreasonable because a reasonable investigation would have revealed the inaccuracies alleged, her conclusory assertion is insufficient to defeat summary judgment").

Here, there is no indication that Chase overlooked any information which would have resulted in its arriving at a different conclusion – *i.e.*, that the charge-off date was reported inaccurately or the date of last payment was not reported at all – because, for the reasons discussed above, the charge-off date was never reported by Chase and the date of last payment was reported at all times. The record demonstrates that Chase reviewed, reasonably investigated and responded to each of Plaintiff's disputes received by Chase from the CRAs, with Chase's C3 account notes and ACDV responses verifying the limited, disputed account information and,

following comprehensive research of the 2315 Account's credit data, updating other account information where appropriate. *See* SOMF, at ¶¶19, 21-27, 29, 34-36, 38, 40-46. The record offers nothing to the contrary, and while Plaintiff may take issue with the outcome of its repeated investigations of his disputes, such a challenge is distinct from whether Chase accurately verified the 2315 Account's status or Chase's investigation was reasonable. *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1161 (9th Cir. 2009)("[a]n investigation is not necessarily unreasonable because it results in a substantive conclusion unfavorable to the consumer, even if that conclusion turns out to be inaccurate"); *Milgram v. JPMorgan Chase Bank, N.A.*, 2021 WL 6755283, at *11 (S.D. Fl. Dec. 30, 2021)([a]lthough [plaintiff] disagrees with Chase's substantive conclusion as to her responsibility for the debt … that substantive conclusion is not … a basis under the FCRA to conclude that Chase [failed] to conduct a reasonable investigation").

Such results-driven analysis is not the criteria for determining whether a reasonable investigation was performed. *See*, *e.g.*, *Rosenberg v. Equifax Information Services LLC*, 2020 WL 4253063, at *3 (D.N.J. July 16, 2020)(granting motion for summary judgment on FCRA complaint, court found "Chase investigated the matter, as indicated by the C3 account notes"); *Severini v. Pa. Higher Education Assistance Agency*, 2020 WL 1467396, at *5-6 (S.D.N.Y. Mar. 25, 2020)(notwithstanding plaintiff's claim that lender represented that no loan payments were required during

pendency of forbearance application, court granted summary judgment to lender-furnisher, finding the furnisher reviewed the dispute and materials plaintiff provided to the CRAs, in addition to its internal records, in verifying the furnishing data as accurate and that no factfinder could conclude that furnisher's investigation was "objectively unreasonable"); *Huebner v. Olum's of Binghamton, Inc.*, 2008 WL 11504869, at *6 (N.D.N.Y. Feb. 28, 2008)(granting motion for summary judgment, court held that furnisher "reviewed all relevant information that it maintained to verify information in the CDV and, in doing so, conducted a reasonable and thorough investigation" and while plaintiff "may not agree with [the furnisher's] conclusion, he has not raised a material question of fact as to the reasonableness of [furnisher's] actions in reaching that conclusion").

## POINT IV

## CHASE'S COUNTERCLAIM SHOULD BE GRANTED AND A JUDGMENT AWARDED IN ITS FAVOR FOR THE AMOUNT OF PLAINTIFF'S CHARGED OFF CREDIT CARD DEBT

The record is clear that Plaintiff (i) opened the 2315 Account, (ii) agreed, pursuant to the parties' governing BCA, to be liable for the debt which accrued on this account, and (iii) defaulted on this account, which was ultimately charged off, with the outstanding balance remaining due and owing. Accordingly, Chase's counterclaim should be granted and an award entered in its favor in the amount of $38,238.76, together with interest and reasonable attorney's fees.

As set forth above in the SOMF, in 2019, Plaintiff opened a business credit card with Chase ending in 2315, and the parties entered into a corresponding BCA that set forth the obligations of Chase and Plaintiff with respect to the 2315 Account. *See* SOMF, at ¶1; Declaration of Nydsomi Rivera dated October 19, 2026 ("N. Rivera Decl.") at ¶4, and Ex. B attached thereto. The BCA provides that Chase agreed to lend Plaintiff money in exchange for his agreeing to pay Chase back together with interest charges and fees as set forth in the BCA. Plaintiff agreed to the terms of the BCA by, among other things, using the 2315 Account to obtain credit and making payments on the account. *See* SOMF, at ¶5.

The BCA further provides that Plaintiff is "legally obligated to pay for all purchases, cash advances, and all fees and charges incurred on the account, from the opening of the account where, as here, he applied for the account using his social security number." *See* SOMF, at ¶¶1, 3, 4 and 6.

Chase sent monthly billing statements to Plaintiff that reflected charges made to the 2315 Account and other amounts owed on the account.[6] *See* SOMF, at ¶10. The last charge posted to the 2315 Account on July 3, 2021. *Id.* at ¶11. Plaintiff did not contact Chase, in writing or otherwise, to report that any of the charges to the

---

[6] Monthly account statements for the 2315 Account were transmitted to an address which tracked with a Hackensack, NJ address set forth on Plaintiff's credit card application and where he lived with his Jayhairbigga LLC business partner. *See* SOMF, at ¶¶4, 10, 18.

2315 Account were unauthorized through the time of the last charge posting to the 2315 Account in July 2021. *Id.* at ¶11. Plaintiff has not made a payment on the 2315 Account since October 2021. *Id.* at ¶12. The 2315 Account charged off on March 31, 2022 and, as reflected on the March 2022 account statement (*see* Ex. C to N. Rivera Decl. at CHASE-000016), Plaintiff presently owes $38,238.76 to Chase. *See* SOMF, at ¶13.

Accordingly, Plaintiff is in default of his payment obligations and $38,238.76 is due and owing to Chase. Additionally, in the event of default, Plaintiff agreed that Chase could, to the extent permitted by law, require Plaintiff to pay collection costs, attorneys' fees, court costs, and all other expenses of enforcing Chase's rights under the BCA. *See* SOMF, at ¶9. Hence, Chase should also be awarded reasonable attorney's fees and costs related to the prosecution of its counterclaim.

## CONCLUSION

For the foregoing reasons, Chase respectfully requests that the Court grant its motion for summary judgment, dismissing the Complaint and awarding judgment to Chase on its counterclaim.

TURCOTTE LAW, P.C.

By: /s/Christopher B. Turcotte
Christopher B. Turcotte
641 Lexington Avenue, 15th Floor
New York, New York 10022
(212) 937-8499
*Attorneys for Defendant JPMorgan Chase Bank, N.A.*

Dated: October 20, 2026