Philip Goldson, pro se 1 6 Central Ave, Unit 4, Rochelle Park, NJ 07662
(718) 395-0532 | klassick.barz@gmail.com

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW JERSEY**

PHILIP GOLDSON, Plaintiff,

v.

JPMORGAN CHASE BANK, N.A., Defendant.

Civil Action No. 2:24-cv-10869-SDW-JRA

# PLAINTIFF'S BRIEF IN SUPPORT OF SUMMARY JUDGMENT

**Return Date: November 16, 2026**

## TABLE OF CONTENTS

Preliminary Statement .......................................... 1
Standard ............................................................. 2
I. The April C/O entry and the whole report .................. 3
II. Chase's investigation and next-cycle explanation ....... 3
III. Johnson process evidence ................................. 5
IV. Ulzheimer's field argument ................................. 5
V. Damages and willfulness ....................................... 6
Requested Relief ................................................... 7

## TABLE OF AUTHORITIES

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)
Bibbs v. Trans Union LLC, 43 F.4th 331 (3d Cir. 2022)
Safeco Insurance Co. of America v. Burr, 551 U.S. 47 (2007)
Seamans v. Temple University, 744 F.3d 853 (3d Cir. 2014)
SimmsParris v. Countrywide Financial Corp., 652 F.3d 355 (3d Cir. 2011)
Fed. R. Civ. P. 56
15 U.S.C. §§ 1681n, 1681o, 1681s-2(b)

## PRELIMINARY STATEMENT

Chase's own evidence exposes the mismatch. It charged off the account on March 31, 2022, pleaded that date, confirmed it in writing, and admits the date was "available to, accessed, and reviewed in connection with each investigation." Exs. A–C; Ex. F at 6–7 (Interrogatory No. 3). Yet the July

and September TransUnion results display “120” under March and first display “C/O” under April; the key defines “C/O” as “Charge Off.” Exs. D–E at 1–2. Chase’s defense substitutes an internal next-cycle convention for the disclosure a reader actually sees. Nothing in the displayed key or grid tells that reader the event occurred March 31. Chase reviewed the true date after CRA notice and verified the reporting anyway. The Court should hold that the first-April presentation was materially misleading and that Chase’s field-and-cycle answer did not satisfy its post-notice investigative duty. Goldson seeks summary judgment on those issues; alternatively, the Court should establish the undisputed facts under Rule 56(g). Exhibit citations count document pages after the unnumbered cover sheet.

## STANDARD

Rule 56(a) permits judgment only if no genuine dispute of material fact remains and the movant is entitled to judgment as a matter of law. The evidence and reasonable inferences favor Chase as the nonmovant. Anderson, 477 U.S. at 248, 255. A furnisher’s private-law duty under § 1681s-2(b) follows notice from a consumer reporting agency, not a consumer’s direct letter alone. SimmsParris, 652 F.3d at 358–59. It must investigate, review the agency’s relevant information, report its findings and, where appropriate, modify, delete or permanently block an item found inaccurate, incomplete or unverifiable. § 1681s-2(b)(1). A report can be materially misleading despite technical accuracy, and its meaning is assessed as a whole from the reasonable reader’s perspective. Seamans, 744 F.3d at 864–65; Bibbs, 43 F.4th at 342–46.

## I. THE APRIL C/O ENTRY AND THE WHOLE REPORT

The rating key expressly labels "C/O" as "Charge Off." Exs. D–E at 1. The monthly history places "120" beneath March 2022 and first places "C/O" beneath April 2022; later months include "X" and additional C/O entries. Id. at 2. Wilkins testified that TransUnion displays data Chase furnished and that dates bearing CO would have been dates Chase furnished. Ex. G at 5 (Wilkins Tr. 51:20–23). He then read the key and acknowledged its definition. Id. at 7 (53:8–24). Chase's records fix the actual event at March 31. Exs. A–C. A reader following TransUnion's own key sees "120" in March followed by the first "Charge Off" entry in April. Nothing in that key or grid instructs the reader to move the event back to March.

Chase and Ulzheimer describe April as the next reporting cycle. Ex. F at 7; Ex. L at 18, 21–22. That description of a furnisher's process does not appear in the consumer-facing key or grid, which marks March "120" and first marks April "C/O." Later C/O entries can describe continuing status; they do not erase that the first C/O appears in April, with no displayed March 31 event date. Under Bibbs, the Court must read the whole report from a reasonable reader's perspective. 43 F.4th at 342–46. On this record, the unqualified first-April charge-off notation materially conveys a later event than Chase's records establish.

## II. CHASE'S INVESTIGATION AND NEXT-CYCLE EXPLANATION

Chase's answer to Interrogatory No. 3 is decisive: the March 31 date was "available to, accessed, and reviewed in connection with each investigation." Ex. F at 6–7. Chase identifies CRA-transmitted ACDVs and says its specialists review dispute codes, accompanying documents, and C3 records. Id. at 3–7. It denies any inconsistency because it did not furnish a dedicated charge-off-date field and April was the next cycle. Id. at 7. That is an explanation of Chase's coding choice, not an answer to the

displayed discrepancy. Chase had the true date, received CRA notices, and verified the reporting. Its answer identifies no case-specific review of what the March "120"/April "C/O" sequence communicated to the reader.

The next-cycle convention explains why Chase transmitted an April status. It does not establish that the resulting disclosure was materially accurate, or that checking March 31 and repeating the same first-April sequence was a reasonable investigation. A furnisher cannot discharge § 1681s-2(b) by confirming an internal record while leaving the misleading presentation produced by its verification unresolved. Alban likewise concludes that repeated verification after accessing March 31 fell below accepted investigation practice. Ex. H ¶¶ 95–97.

Chase's quality-control system did not flag any of Goldson's ACDVs for audit. Chase measures productivity, quality, and time between assignments, and samples at least five ACDVs per specialist each month. Ex. F at 9–10. Yet the July and September results retained the first-April C/O sequence despite repeated disputes and access to March 31; the results also say historical trended data was updated. Exs. D–E at 2. The existence of a sampling program does not show that Chase confronted this discrepancy. Under Seamans, technical field accuracy does not cure a materially misleading item; investigation adequacy depends on the dispute and available information. 744 F.3d at 864–66. Chase separately concedes that its November 3 assertion about the last-payment date was a misstatement. Ex. C at 1; Ex. M at 1. Its assurances of accuracy deserve examination against the actual record.

## III. JOHNSON PROCESS EVIDENCE

Johnson's publicly filed declaration identifies Chase's manual as Exhibit E and Burda's Rule 30(b)(6) transcript as Exhibit F. Johnson v. JPMorgan Chase Bank, N.A., C.D. Cal. No. 2:22-cv-06718, ECF No. 74 at 4, 38–40, 44–45, 58–59. Exhibits J and K reproduce pages from that public filing. The January 2020 manual directs specialists to review dispute codes, CRA relevant information and images, and to investigate multiple codes where present. Ex. J at 3–4 (ECF 74 at 39–40). Burda testified that a specialist reviewed the ACDV, what the CRA-originating column reflected, and relevant C3 records; one specialist handled an ACDV. Ex. K at 4 (ECF 74 at 58; Burda Tr. 22:1–20). Burda also acknowledged that Chase had updated the 2020 procedures. Ex. K at 5 (ECF 74 at 59; Burda Tr. 23:11–15). Chase describes the same basic process in this case. Ex. F at 4–6. Its investigators admittedly accessed March 31, but Chase's answer identifies no step confronting the first-April presentation. The manual and testimony expose the gap between a process said to review relevant information and an answer confined to field nomenclature and cycle timing.

## IV. ULZHEIMER'S FIELD ARGUMENT DOES NOT ANSWER THE DISPLAY

Ulzheimer says Metro 2 has no dedicated charge-off-date field and April reflects the next reporting cycle. Ex. L at 17–23. His own reproduced TransUnion result still places C/O beneath April, and he acknowledges that "CO" denotes a charge-off in disclosure-style documents. Id. at 21–22. His premise concerns Chase's input field; the exhibit shows the output a reader sees. A missing dedicated field cannot erase the message of the first-April entry. He reads the grid as monthly status rather than an event date, but the key supplies no warning that its first C/O refers to a March

event. Id. at 18, 21–22; Exs. D–E at 1–2. Calling Goldson's disputes "obfuscation" or "credit washing" does not explain the key, change the grid, or establish a reasonable investigation. Ex. L at 16–18, 21.

## V. DAMAGES AND WILLFULNESS

The consequences were real. Liberty denied Goldson's loan request. Its underwriting notes specifically identify the disputed Chase account and high unsecured debts. Ex. I at 1–2. Chase's account was part of that debt picture and was discussed in the review; Alban describes its financial significance. Ex. H ¶¶ 100–101. Goldson also describes distress, delay, and efforts to obtain other financing. Goldson Decl. ¶¶ 4–7. The Court can decide the statutory breach now and determine causation and the amount of recovery in further proceedings.

The same record supports willfulness. Chase repeatedly accessed March 31, verified the first-April C/O sequence, and did not flag these ACDVs for audit. Exs. D–F. Those facts support a finding that Chase disregarded the risk that its verification maintained a materially misleading display. Seamans recognizes that objectively unreasonable treatment may support willfulness; Safeco supplies the objective recklessness standard. 744 F.3d at 868–69; 551 U.S. at 68–70. The Court need not decide willfulness to enter judgment on the underlying breach; the remedies authorized by § 1681n remain available if willfulness is established.

## REQUESTED RELIEF

The Court should enter summary judgment that the first-April C/O presentation was materially misleading and Chase's post-notice investigation and verification failed § 1681s-2(b). The March 31 record, TransUnion key and grid, and Chase's admission that it reviewed the true date support that judgment. Causation, damages, and willfulness may be resolved in further proceedings. Alternatively, the Court should establish those undisputed facts and Chase's CRA-notice investigations under Rule 56(g).

Respectfully submitted, Dated: October 20, 2026
Signature: ______________________ Philip Goldson, pro se
6 Central Ave, Unit 4, Rochelle Park, NJ 07662
(718) 395-0532 | klassick.barz@gmail.com