UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

PHILIP GOLDSON,

Plaintiff,

-against-

JPMORGAN CHASE BANK, N.A.,

Defendant.

Case No. 2:24-cv-10869-SDW-JRA

Hon. Susan D. Wigenton

ORAL ARGUMENT REQUESTED

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED.R.CIV.P. 56**

On Memorandum:

Christopher B. Turcotte, Esq.

TURCOTTE LAW, P.C.
641 Lexington Avenue, 15th Floor
New York, New York 10022
(212) 937-8499
*Attorneys for Defendant JPMorgan Chase Bank, N.A.*

# TABLE OF CONTENTS


TABLE OF AUTHORITIES (ii)

PRELIMINARY STATEMENT 1

LEGAL ARGUMENT

**POINT I**

PLAINTIFF'S ASSERTION THAT CHASE FAILED TO PERFORM A REASONABLE INVESTIGATION IS BASED ON FLAWED ASSUMPTIONS 2

**POINT II**

PLAINTIFF FAILS TO MEET HIS BURDEN OF DEMONSTRATING CHASE'S INVESTIGATION WAS UNREASONABLE 8

**POINT III**

PLAINTIFF DOES NOT DEMONSTRATE THAT HE SUFFERED ANY INJURY AS A RESULT OF THE REPORTING OF THE CHASE ACCOUNT 12

CONCLUSION 14

# TABLE OF AUTHORITIES

## Cases

*Bibbs v. Trans Union LLC,* 521 F.Supp.3d 569 (E.D. Pa. 2021),

*aff'd*, 43 F.4th 331 (3d Cir. 2022) …………………..……………..….…. 4

*Bibbs v. Trans Union LLC*, 43 F.4th 331 (3d Cir. 2022) ……...……………..… 1, 8

*Capital Funding v. Chase Manhattan Bank USA,*

191 Fed.Appx. 92 (3d Cir. 2006) …………...………..……………………..… 6

*Esperance v. Diamond Resorts*, 2022 WL 1718039 (D.N.J. May 27, 2022) …...9-10

*Felts v. Wells Fargo Bank, N.A.,* 893 F.3d 1305 (11th Cir. 2018) ………..……..... 8-9

*Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147 (9th Cir. 2009)…...………11

*Holland v. Trans Union LLC*, 2021 WL 5804375 (E.D. Pa. 2021) ……………..…. 7

*Huebner v. Olum's of Binghamton, Inc.*,

2008 WL 11504869 (N.D.N.Y. Feb. 28, 2008) ………………………..……… 12

*Johns v. Nelnet,* 2026 WL 914621 (E.D. Pa. Mar. 31, 2026) ..........................…..…9

*Lamando v. Rocket Mortgage*, 2024 WL 264034 (N.D.N.Y. Jan. 24, 2024) ….. 6-7

*Milgram v. JPMorgan Chase Bank, N.A.*,

2021 WL 6755283 (S.D. Fl. Dec. 30, 2021) ……………………..…………. 11

*Owoyemi v. Credit Corp Solutions Inc.*,

677 F.Supp.3d 285 (S.D.N.Y. 2023) .......................................................….. 9

*Rosenberg v. Equifax Information Services LLC*,

2020 WL 4253063 (D.N.J. July 16, 2020) ……………………...…….……...… 11

*Scarbo v. Wisdom Financial*, 2022 WL 16829371 (3d Cir. Nov. 9, 2022) ..........… 9

*Seamans v. Temple University*, 744 F.3d 853 (3d Cir. 2014) ……………....…7, 9, 10

*Seror v. Equifax,* 2019 WL 13396463 (D.N.J. July 8, 2019) ……….........….…. 1-2

*Severini v. Pa. Higher Education Assistance Agency*,

2020 WL 1467396 (S.D.N.Y. Mar. 25, 2020) ……………………...……. 11-12

*Sosa v. Greater Alliance Federal Credit Union,*

2024 WL 3912955 (D.N.J. Aug. 23, 2024) ……………….……………..... 8

*Suluki v. Credit One Bank, NA*, 666 F.Supp.3d 403 (S.D.N.Y. 2023),

*aff'd*, 138 F.4th 709 (2d Cir. 2025) …………………………....……... 8-9

*Tauro v. Capital One Financial Corp.*,

684 Fed.Appx. 240 (3d Cir. Mar. 28, 2017) ……………………..…...… 8

*Timms v. USAA Fed. Sav. Bank*,

2020 WL 12618897 (D.S.C. Aug. 20, 2020) ……………………...………… 8

# **PRELIMINARY STATEMENT**

Inaccuracy is the touchstone of any violation of the Fair Credit Reporting Act ("FCRA"), with it being defined by the Third Circuit as information that is either patently false or creates a materially misleading impression. *Bibbs v. Trans Union LLC*, 43 F.4th 331, 342-43 (3d Cir. 2022). Here, Plaintiff's cross-motion for summary judgment must be denied because it fails to meet this burden of proof. First, notwithstanding his claim of a discrepancy in the reporting of his account's charge-off date, Plaintiff does not demonstrate that defendant JPMorgan Chase Bank, N.A., as Plaintiff's credit card issuer, in fact furnished a charge-off date to any credit reporting agency ("CRA"), let alone that it was an inaccurate one. To the contrary, the record establishes that furnishers like Chase do *not* furnish a charge-off date because it is not systemically possible to do so. Even the TransUnion-generated reports relied upon by Plaintiff do not support such a contention, as none include a specific charge-off date. Hence, Plaintiff cannot demonstrate that its furnishing was either patently inaccurate or materially misleading given neither the digital platform by which Chase furnishes credit data to CRAs or any CRA-generated report includes such charge-off date information. Plaintiff's subjective (and baseless) belief that Chase furnished a charge-off date does not constitute a factual inaccuracy. *Seror v. Equifax*, 2019 WL 13396463, at *3 (D.N.J. July 8, 2019) ("[p]laintiff's mere reliance

upon his own subjective beliefs, without alleging an adequate basis to support that his credit reporting contains a factual inaccuracy is fatal to his FCRA claim").

Accordingly, given the material facts underlying Chase's furnishing of the subject account's charge-off date (and, secondarily, the date of last payment) are not in dispute, judgment should be granted in Chase's favor for the reasons set forth in its motion for summary judgment and denied as to Plaintiff's cross-motion based on the fundamentally flawed conclusions he draws from such facts.

## I. PLAINTIFF'S ASSERTION THAT CHASE FAILED TO PERFORM A REASONABLE INVESTIGATION IS BASED ON FLAWED ASSUMPTIONS

Plaintiff's claim that Chase violated the FCRA by failing to reasonably investigate his disputes is based on the flawed assumptions that (i) TransUnion displays the *verbatim* credit data that Chase furnishes, (ii) TransUnion's "investigation results" reports show that his account ending in 2315 charged off in April 2022, and (iii) therefore, Chase reported a "charged off" date to TransUnion of April 2022 instead of the actual March 31, 2022 charge-off date. *See* Plaintiff's Brief ("Pl. Br."). at 1-2, 3. This premise is wrong for several reasons.

First, it is noteworthy that, despite Chase having produced its ten (10) responses to Plaintiff's disputes in the form of the Automated Consumer Dispute Verification (ACDV) forms transmitted from Chase to TransUnion and other CRAs, Plaintiff's cross-motion does not analyze, let alone reference, a single ACDV. Nor

did Plaintiff's expert, according to his list of materials considered, and the content of his report, consider the Chase C3 account notes which detail its investigation of Plaintiff's disputes or *any* of Chase's ACDV responses, and in the expert's case, review most of the deposition testimony of Robert Wilkins, who is the Chase corporate representative who oversaw the teams of Chase's domestic specialists that investigate and respond to ACDVs. *See* "Expert Materials Reviewed" list annexed to Declaration of Christopher B. Turcotte ("Turcotte Decl. No. 2") as 10; Chase Response No. 15 to Plaintiff's Statement of Material Facts ("PSOMF").[1] Instead, Plaintiff (and evidently his expert) rely exclusively on TransUnion "investigation

---

[1] According to the Alban report, in preparing his opinion, Plaintiff's expert limited his "Expert Materials Reviewed" to (i) Plaintiff's motion for summary judgment, (ii) Plaintiff's initial disclosures, (iii) an unspecified letter to TransUnion from an unidentified author, (iv) an unspecified letter from Chase to an unidentified recipient, (v) a Plaintiff-generated "Expert Witness Review Guide, and (vi) Plaintiff's Liberty Savings loan application. *See* Ex. 10 to Turcotte Decl. No. 2. Also, in addition to his failure to consider Chase's C3 account notes which detail its investigation of Plaintiff's disputes or *any* of Chase's ACDV responses (neither of which were included as exhibits to Plaintiff's cross-motion for summary judgment or referenced in his report), there is no indication in the Alban Report or its accompanying "Expert Materials Reviewed" list that Plaintiff's expert reviewed the transcript of Chase corporate representative Robert Wilkins beyond a small excerpt identified as Ex. G to Plaintiff's cross-motion (*see* Alban Report, at ¶55) or Chase's document production (other than possibly the aforementioned unspecified "letter from Chase"). The failure to review or, at least as far as his report is concerned, to analyze the ACDV responses undermines his opinion, as Dr. Alban acknowledges that "the available materials do not permit a field-by-field opinion concerning every Metro 2 data element transmitted by Chase" (*id.* at ¶74), when a review of Chase's ACDV responses would have afforded him the opportunity to do just that.

results" reports,[2] which only reflect TransUnion's consumer credit profile records. Mr. Wilkins testified that TransUnion "interpret[s] the data that [Chase] reported" and "put[s] it in their own terms"; however, there is no need to speculate as to what Chase furnished to TransUnion or other credit bureaus because Chase's furnishing is found in the Response fields of each ACDV. *See* Chase Response Nos. 5 & 6 to PSOMF.

Second, consistent with Chase's position in this case, none of the TransUnion reports includes a field for a "charge-off date." Rather, each includes a grid of month/year boxes which indicates that the 2315 Account began being reported as charged off in April 2022. Chase does not dispute this and provides testimony from senior Chase managers in its Credit Bureau Operations (CBO) group and an expert opinion confirming that it is standard procedure to report the "Account Status" of the account on its next cycle date and that, in this case, following a March 31, 2022

---

[2] It bears noting that Plaintiff's FCRA claim relies solely on two, excerpted TransUnion "investigation results" reports issued in July and September 2024 (Plaintiff's Exs. D & E) – only the July 2024 report having been produced in discovery – and the excerpt of a third TransUnion "investigation results" report dated November 5, 2024 annexed to the Complaint. These "investigation results" reports are not credit reports shared with third-party lenders but credit disclosures only transmitted to the consumer. *Bibbs v. Trans Union LLC*, 521 F.Supp.3d 569, 574-75 (E.D. Pa. 2021), *aff'd*, 43 F.4th 331 (3d Cir. 2022). Also, the single example that Plaintiff cites of his receiving an adverse action notice which he wrongly claims was the result of his Chase account's furnishing was a denial based on an *Experian report*, not a TransUnion report. *See* Excerpted Transcript of Philip Goldson dated February 5, 2026 annexed to Turcotte Decl. No. 2" as Ex. 11, at 98:2-100:13.

charge off of the account, its first reporting of the account's charge off status is April 2022. *See* Chase's Statement of Material Facts ("SOMF"), at ¶¶14, 31-32. Hence, it is the April 2022 box that should be, and is, marked as the charge-off's initial reporting month. Plaintiff presents nothing to refute this practice and even his expert declines to opine on the propriety of the Metro 2 procedure; the expert offers nothing more than what he wrongly perceives, as someone with no apparent experience in credit reporting, to be an "inconsistency" between what TransUnion reports as the Account Status on the furnisher's first, post-charge off reporting date and what Chase acknowledges is the specific charge-off date.[3] *See*, *infra*, at 6 n.4.

---

[3] As noted in Chase's motion for summary judgment (Chase Orig. Memo of Law, at 15 n.4), Plaintiff's expert, Alvaro Alban, does not dispute the Chase followed the proper Metro 2 reporting procedure. Rather, despite his recognizing Metro 2® Format as the recognized industry standard for the transmission of credit data between furnishers and CRAs [SOMF, at ¶30], and, as relevant here, the issue of whether the "charge-off date" is an established Metro 2 field on the ACDV being the fulcrum of Plaintiff's credit reporting claim, Plaintiff's expert declines to offer an opinion on this point. *See* SOMF, at ¶33 (quoting Alban Report annexed to Turcotte Decl. as Ex. 2, at ¶¶66 and 69 ("Chase subsequently explained that April 2022 represented the first full month during which the account was in a charged-off status. Whether that reporting methodology is consistent with Metro 2 reporting guidance depends upon the specific Metro 2 data field being reported and the reporting instructions applicable to that field. Accordingly, I do not offer a field-by-field opinion that every Metro 2 data element furnished by Chase violated a specific Metro 2 instruction.") In addition to his evidently being a medical doctor, board-certified in emergency medicine (https://westcoastexpertwitness.com/about/), Dr. Alban's *curriculum vitae* states that he has been a managing partner of laser tattoo and scar restoration LLCs in addition to an urgent care practice for the last 20 years but does not show his having any relevant professional experience in the credit reporting industry. *See* true and correct copy of Alban *Curriculum Vitae* annexed to Turcotte Decl. as Ex. 2.

Finally, Plaintiff wrongly asserts that Chase furnished a charge-off date of April 2022. Both Robert Wilkins, a Chase Vice President/Business Analysis Manager with CBO who has managed all of its domestic credit bureau dispute teams, and Chase's David Rivera, an Account Manager II with CBO, confirm that Chase does not furnish a "charge-off date" to the CRAs because, consistent with Metro 2 procedure, there is no means, including any field on the ACDV, of transmitting such information to a CRA. *See* SOMF, at ¶¶31-32. Not only does a review of each of Chase's ten ACDV responses confirm this (*see* SOMF, at ¶36) but TransUnion has also previously gone on record as stating it "does not have a field representing a charge off date." *Capital Funding v. Chase Manhattan Bank USA*, 191 Fed.Appx. 92, 95, 97 (3d Cir. 2006). Chase cannot be charged with furnishing inaccurate or materially misleading information concerning information it does not report.[4] "[A]s

---

[4] Even if Plaintiff could establish an inaccuracy, which he cannot, Plaintiff recognizes he would need to demonstrate that the reporting of a charge-off as of "April 2022" versus a charge-off date of March 31, 2022 was materially misleading and resulted in specific, concrete damages. *See*, *e.g.*, Pl. Br. at 6-7. As Chase's expert notes, Plaintiff's expert claims the so-called, one-day discrepancy is "material" but only from a consistency standpoint. *See* Ulzheimer Report annexed to Turcotte Decl. as Ex. 4, at 25 n. 38 (citing Alban Report, at ¶¶10, 12-13, 64, 70, 72, 74, 81-82, 95). Plaintiff's expert does not conclusively opine that it resulted in adverse reporting consequences and, at one point, merely concludes that it "warrant[s] further evaluation regarding the consistency of the information reviewed during the dispute process and the information subsequently verified and furnished to the consumer reporting agencies." *Id.* (citing Alban Report, at ¶ 82). Also, as Chase's expert points out, the date for which Plaintiff's charged-off account purges from his credit report (and is evaluated for credit scoring purposes) is seven years

a matter of law, the Court's task is to consider whether the information is inaccurate or misleading, not to look for ways that the information might be *more accurate*." *Lamando v. Rocket Mortgage*, 2024 WL 264034, at *8 (N.D.N.Y. Jan. 24, 2024) (emphasis in original) (quoting *Holland v. TransUnion LLC*, 574 F. Supp. 3d 292, 300 (E.D. Pa. 2021)).[5]

---

from the **Date of First Delinquency ("DOFD")** (here, August 11, 2021), not from the March 31, 2022 charge-off date or the April 2022 point in time that it was first reported as charged off. *See* Ulzheimer Report annexed to Turcotte Decl. as Ex. 4, at 25-26; *see also Seamans v. Temple University*, 744 F.3d 853, 860 & n.2 (3d Cir. 2014)(citing 15 U.S.C. § 1681c(c)(1)) (for purposes of an account's tradeline line aging off of a consumer's credit report, "the seven-year period technically begins 180 days after the date of first delinquency"). Each of Chase's ACDV responses show a DOFD of August 11, 2021. *See* D. Rivera Declaration's Exhibits E (at CHASE-000143, 146, 149, 152, and 155), F (at CHASE-000160), G (at CHASE-000163), and H (at CHASE-000166, 169, and 172).

[5] With regard to the Complaint's allegation that Chase failed to report a Date of Last Payment, Plaintiff essentially abandons this claim, relegating it to a single sentence in his cross-motion. *See* Pl. Br. at 4 ("Chase separately concedes that its November 3 assertion about the last-payment date was a misstatement"). Plaintiff does so for good reason, as each of Chase's ACDV responses clearly identify the Date of Last Payment as October 15, 2021 (SOMF, at ¶35), as do each of the tradelines in the excerpted TransUnion investigation results reports relied upon Plaintiff in his motion. *See* Exs. 5 & 6 to Plaintiff's Cross-Motion, and TransUnion November 2024 annexed to Complaint. The fact that Chase may have misstated in its private correspondence to Plaintiff that it did not furnish a Date of Last Payment is of no consequence because this information was supplied by Chase on its ACDV responses and Plaintiff, in turn, presents no evidence that any CRA failed to provide this information on any credit reports transmitted to a third-party lender.

## II. PLAINTIFF FAILS TO MEET HIS BURDEN OF DEMONSTRATING CHASE'S INVESTIGATION WAS UNREASONABLE

Plaintiff's failure to demonstrate a factual inaccuracy obviates the need as a matter of law to consider whether a furnisher conducted a reasonable investigation. *See*, *e.g.*, *Bibbs v. Trans Union LLC*, 43 F.4th 331, 339 (3d Cir. 2022) ("absent any indication that the information is inaccurate, the statute does not mandate further investigation") (citation omitted). Even were such not the case, he cannot establish that Chase conducted an unreasonable investigation based on the record.

The burden of demonstrating the investigation was unreasonable rests on the plaintiff. *See Tauro v. Capital One Financial Corp.***,** 684 Fed.Appx. 240, 243 (3d Cir. Mar. 28, 2017); *Sosa v. Greater Alliance Federal Credit Union*, 2024 WL 3912955, at *5 (D.N.J. Aug. 23, 2024). The plaintiff must establish that had the defendant furnisher performed a reasonable investigation, the results would have been different insofar as the furnisher would have discovered the information was inaccurate. *Id.* (citing *Suluki v. Credit One Bank, N.A.*, 666 F. Supp. 3d 403, 412 (S.D.N.Y. 2023); *Timms v. USAA Fed. Sav. Bank*, 2020 WL 12618897, at *9, 11 (D.S.C. Aug. 20, 2020)). *See also Suluki v. Credit One Bank, N.A*., 138 F.4th 709, 721 (2d Cir. 2025) ("the burden remained on the plaintiff to "demonstrate that *had* the furnisher conducted a reasonable investigation, the result would have been different, *i.e*., that the furnisher would have discovered that the information it reported was inaccurate or incomplete. Without such a showing, 'a plaintiff's claim

against the furnisher necessarily fails, as the plaintiff would be unable to demonstrate any injury from the allegedly deficient investigation'") (quoting *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1313 (11th Cir. 2018)); *Scarbo v. Wisdom Financial*, 2022 WL 16829371, at *3 (3d Cir. Nov. 9, 2022) ("[t]o the extent that [plaintiff] claims that the investigations were unreasonable because a reasonable investigation would have revealed the inaccuracies alleged, her conclusory assertion is insufficient to defeat summary judgment").

As Plaintiff's cross-motion recognizes, the reasonableness of an investigation is viewed in light of what the furnisher learned about the nature of the dispute from the description of the CRA's notice of dispute. *See* Pl. Br. at 4 (citing *Seamans v. Temple University*, 744 F.3d 853, 864-66 (3d Cir. 2014)); *see also Owoyemi v. Credit Corp Solutions Inc.*, 677 F.Supp.3d 285, 299 (S.D.N.Y. 2023)(citation omitted); *Seamans*, 744 F.3d at 865 (holding that "where a given notice contains only scant or vague allegations of inaccuracy, a more limited investigation may be warranted"); *Johns v. Nelnet*, 2026 WL 914621, at *25 (E.D. Pa. Mar. 31, 2026) (granting summary judgment to defendant furnisher and CRAs, the court held that "[t]he reasonableness of Defendants' investigations and reinvestigations must be grounded in the information they received"); *Esperance v. Diamond Resorts*, 2022 WL 1718039, at *5 (D.N.J. May 27, 2022) ("[w]hen assessing the reasonableness of an investigation, a factfinder should consider the furnisher's investigation 'as it relates

to the content of the notice of dispute sent by the CRA to the furnisher'") (quoting *Seamans*, 744 F.3d at 865).

Here, there is no indication that Chase overlooked any information which would have resulted in its arriving at a different conclusion – *i.e.*, that the charge-off date was reported inaccurately or the date of last payment was not reported at all – because, for the reasons discussed above, the charge-off date was never reported by Chase and the date of last payment was reported at all times. Further, Plaintiff's cross-motion recognizes that Chase "accessed and reviewed [the March 31, 2022 charge-off date] in connection with each investigation." Pl. Br. at 1, 3, 5. The record also demonstrates that Chase reviewed, reasonably investigated and responded to each of Plaintiff's disputes received by Chase from the CRAs, with Chase's C3 account notes and ACDV responses verifying the limited, disputed account information and, following comprehensive research of the 2315 Account's credit data, updating other account information where appropriate.[6] *See* SOMF, at ¶¶19, 21-27, 29, 34-36, 38, 40-46.

---

[6] It is difficult to discern the relevance of Plaintiff's relying on what purports to be excerpted Chase policies which were in effect prior to his earliest, subject disputes and from deposition testimony of a Chase witness who was not involved in this case – with both the policies and deposition transcript excerpts drawn from the docket of an unrelated California federal action. *See* Pl. Br. at 5, and PSOMF, at ¶¶18-19, and Chase's responses thereto. Chase's C3 account notes and ACDV responses relative to Plaintiff's disputes demonstrate that it performed proper investigations and may explain why Plaintiff relies on the record from an entirely unrelated California case.

Plaintiff's cross-motion presents nothing to the contrary, and while he may take issue with the outcome of its repeated investigations of his disputes, such a challenge is distinct from whether Chase accurately verified the 2315 Account's status or Chase's investigation was reasonable. *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1161 (9th Cir. 2009)("[a]n investigation is not necessarily unreasonable because it results in a substantive conclusion unfavorable to the consumer, even if that conclusion turns out to be inaccurate"); *Milgram v. JPMorgan Chase Bank, N.A.*, 2021 WL 6755283, at *11 (S.D. Fl. Dec. 30, 2021)([a]lthough [plaintiff] disagrees with Chase's substantive conclusion as to her responsibility for the debt … that substantive conclusion is not … a basis under the FCRA to conclude that Chase [failed] to conduct a reasonable investigation").

Such results-driven analysis is not the criteria for determining whether a reasonable investigation was performed. *See*, *e.g.*, *Rosenberg v. Equifax Information Services LLC*, 2020 WL 4253063, at *3 (D.N.J. July 16, 2020)(granting motion for summary judgment on FCRA complaint, court found "Chase investigated the matter, as indicated by the C3 account notes"); *Severini v. Pa. Higher Education Assistance Agency*, 2020 WL 1467396, at *5-6 (S.D.N.Y. Mar. 25, 2020)(notwithstanding plaintiff's claim that lender represented that no loan payments were required during pendency of forbearance application, court granted summary judgment to lender-furnisher, finding the furnisher reviewed the dispute and materials plaintiff provided

to the CRAs, in addition to its internal records, in verifying the furnishing data as accurate and that no factfinder could conclude that furnisher's investigation was "objectively unreasonable"); *Huebner v. Olum's of Binghamton, Inc.*, 2008 WL 11504869, at *6 (N.D.N.Y. Feb. 28, 2008)(granting motion for summary judgment, court held that furnisher "reviewed all relevant information that it maintained to verify information in the CDV and, in doing so, conducted a reasonable and thorough investigation" and while plaintiff "may not agree with [the furnisher's] conclusion, he has not raised a material question of fact as to the reasonableness of [furnisher's] actions in reaching that conclusion").

## III. PLAINTIFF DOES NOT DEMONSTRATE THAT HE SUFFERED ANY INJURY AS A RESULT OF THE REPORTING OF THE CHASE ACCOUNT

Plaintiff's cross-motion fails to prove any injury which is attributable to Chase's actions.

Plaintiff claims that the Liberty Savings Federal Credit Union's May 2025 denial of his auto loan application, submitted well after the December 2, 2024 commencement of this action, was the direct result of his Chase account's charge-off reporting as of April 2022 rather than a charge-off date of March 31, 2022. The record belies this claim.

First, while Liberty Savings issued an "adverse action notice," the notice does not indicate that any adverse action occurred as a result of the Chase account; rather,

the notice only reflects that Plaintiff represented to the lender (albeit wrongly) that the subject Chase account was "not his," and Liberty requested necessary proof of this representation from Plaintiff's attorney. Specifically, the "Application Comments," found on the last page of Plaintiff's Exhibit I (LSFCU-000003) note that (i) "UNSECURED DEBTS IS HIGH," (ii) "CHASE ACCT IS NOT HIS AND ON DISPUTE AS PER THE MEMBER" (the "member" being identified at top of page 1 of Exhibit I as "Philip S. Goldson" in a section unnecessarily redacted by Plaintiff), and (iii) "WILL NEED THE PROOF FROM HIS [GOLDSON'S] LAWYER." Hence, the comment's inference is that Plaintiff did not want his Chase account considered in relation to the application, not that it was considered or considered negatively. *See also* Chase's Response No. 17 to PSOMF.

Also, as Plaintiff acknowledged at his deposition, the Liberty Savings adverse action notice, in a section not included in Plaintiff's Exhibit I, provides that its loan decision was based on a credit report obtained from Experian – not the TransUnion reporting exclusively relied upon by Plaintiff in this case. *See* Excerpted Transcript of Philip Goldson dated February 5, 2026 annexed to Turcotte Decl. No. 2 as Ex. 11, at 98:2-100:13. Although the adverse action notice invited him to obtain a free copy of the Experian credit report which factored in Liberty Savings' adverse action notice, Plaintiff "do[es]n't remember" if he obtained a free copy of the Experian report. *Id.* at 100:2-7, 102:7-10. Plaintiff also admitted that the 2025 Liberty

Savings adverse action notice indicated he had a *higher* Experian FICO score (693) at the time of the 2025 loan denial than he did when Liberty Savings *approved* a similar auto loan application in 2018, when his Experian FICO score was 680. *Id.* at 101:4-13, 108:8-109:22.

In sum, Plaintiff has not demonstrated that Chase's credit data furnishing was the reason Liberty Savings issued an adverse action notice in 2025.

## CONCLUSION

For these reasons, as well as those set forth in Chase's motion for summary judgment, judgment should be granted in favor of Chase and against Plaintiff in its entirety.

TURCOTTE LAW, P.C.

By: /s/Christopher B. Turcotte
Christopher B. Turcotte
641 Lexington Avenue, 15th Floor
New York, New York 10022
(212) 937-8499
*Attorneys for Defendant JPMorgan Chase Bank, N.A.*

Dated: November 19, 2026